IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHELLY BENSON and LISA CAPARELLIL, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 19 C 6836 |
| v. | ) ) | Judge Ronald A. Guzmán |
| NEWELL BRANDS, INC. and NUK USA LLC, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to strike under Federal Rule of Civil Procedure 12(f) is granted in part and denied in part for the reasons explained below.

**BACKGROUND**

This is a putative class action for consumer fraud and unjust enrichment. Plaintiffs, Shelly Benson and Lisa Caparellil, allege that defendants, Newell Brands, Inc. and its subsidiary NUK USA LLC, engaged in false and misleading advertising of their NUK brand pacifiers. Specifically, plaintiffs allege that defendants falsely represented that their pacifiers are "orthodontic" and beneficial for dental development and alignment; falsely represented that their pacifiers are beneficial for the dental health of children over the age of 24 months; and failed to disclose in their advertising the material fact that prolonged pacifier use by children over the age of 24 months significantly increases the risk of developing dental malocclusions (misalignments). Plaintiffs assert claims for (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFDBPA"), 815 ILCS 505/1 *et seq.*, on behalf of a class of persons who purchased NUK pacifiers in Illinois and a subclass of persons who purchased the pacifiers for use by a child 24 months or older; (2) violation of the Illinois Deceptive Trade Practices Act (the "DTPA"), 815 ILCS 510/2 *et seq.*, on behalf of the same Illinois class and subclass; (3) violation of the consumer-fraud statutes of Illinois and "any state with similar" consumer-fraud laws, on behalf of a multi-state consumer class and subclass; and (4) "unjust enrichment/quasi-contract," on behalf of a nationwide class and subclass.

Defendants move to dismiss plaintiffs' First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to strike plaintiffs' nationwide-class allegations under Rule 12(f).

**DISCUSSION**

For purposes of a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiffs, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiffs' favor. *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017); *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A Rule 12(b)(1) motion, in contrast, challenges federal jurisdiction, and the plaintiffs bear the burden of establishing that the elements necessary for jurisdiction, including standing, are met. *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).

The Court analyzes plaintiffs' statutory-fraud claims under the heightened pleading standard of Rule 9(b). *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "That means that it must specifically allege the 'who, what, when, where, and how of the fraud.'" *Haywood*, 887 F.3d at 333. Rule 9(b)'s heightened standard does not, however, apply to allegations of states of mind. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Instead, Rule 8's standards govern. *Iqbal*, 556 U.S. at 686-87.

**A.    Rule 12(b)(1)**

Defendants' first argument is that the complaint must be dismissed for lack of subject-matter jurisdiction because plaintiffs fail to allege an injury in fact that confers Article III standing. The "irreducible constitutional minimum of standing" consists of three elements: injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish an injury in fact, plaintiffs must allege that they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation and internal quotation marks omitted).

Defendants contend that plaintiffs lack standing because they do not allege that their children experienced any dental misalignment, much less any dental problems caused by NUK pacifiers; that their children are at an increased risk of developing dental misalignment as a result of using NUK pacifiers; or that NUK pacifiers failed to eliminate or prevent teeth misalignment in their children. This argument misses the mark, under the principles set forth in *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 750-51 (7th Cir. 2011). As one of the court's colleagues noted,

> [t]he plaintiffs in *Aqua Dots* sued the manufacturer and distributors of a children's toy consisting of beads containing a chemical that, when swallowed, could cause severe

illness and even death. The plaintiffs were not physically injured children or their parents, but instead were the parents of children who had suffered no physical injury. The Seventh Circuit held that the plaintiffs had Article III standing, explaining: "[The fact] that members of the class did not suffer physical injury . . . does not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.

*Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013) (citations omitted) (holding that plaintiff established standing where he alleged that had he known the truth about defendant's misrepresentation that its diaper-disposal system was "proven #1 in odor control," he would not have purchased the product and would not have paid a premium price for it). Similarly, Benson and Caparellil allege that if they had known of the falsity of defendants' claims that NUK pacifiers are "orthodontic" and beneficial (or at least not detrimental) to their children's dental health and that the pacifiers are safe for use in children over the age of 24 months, they would not have purchased the pacifiers and would not have paid a premium price. (ECF No. 31, 1st Am. Compl. ¶¶ 8-9, 18, 21, 23, 26, 33-34.) Therefore, plaintiffs have sufficiently alleged standing. *See Aqua Dots*, 654 F.3d at 751; *Muir*, 983 F. Supp. 2d at 986-87; *In re 100% Grated Parmesan Cheese Mtkg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 918-19 (N.D. Ill. 2017) (citing cases).

In their reply brief, defendants deem plaintiffs' injuries "conjectural," attempting to repackage as a standing argument their argument that plaintiffs fail to state fraud claims because they "wildly overstate" the findings of third-party studies cited in the complaint. (ECF No. 45, Defs.' Reply at 3-9.) The Court addresses the substance of that argument below, but it is not a question of standing. *See Grated Parmesan*, 275 F. Supp. 3d at 919 (rejecting similar "merits arguments repackaged as standing arguments"). Defendants also attempt to distinguish *Aqua Dots* on the basis that the product in that case "was highly toxic and dangerous to children" and that many children were actually sickened, leading to a product recall. (Defs.' Reply at 8-9.) But the plaintiffs there were purchasers of Aqua Dots products whose children were not harmed; the Seventh Circuit specifically noted that "none of the plaintiffs (or their children) was injured by swallowing the [product]" and that "[t]his means that members of the class did not suffer physical injury, but it does not mean that they were uninjured." 654 F.3d at 751. Whether plaintiffs' children were physically injured had no bearing on the Seventh Circuit's holding that plaintiffs' financial injury established constitutional standing.

Defendants' next argument is that plaintiffs lack constitutional standing to seek prospective injunctive relief, because they fail to allege facts showing an "actual and imminent" future injury. (ECF No. 38-1, Defs.' Mem. Supp. Mot. Dismiss at 10.) To establish injury in fact when seeking prospective injunctive relief, "a plaintiff must allege a 'real and immediate' threat of future violations of [her] rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *Lyons*, 461 U.S. at 102) (internal punctuation omitted).

3

"Most courts to have considered the issue [conclude] that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice." *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (citing *In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15 C 5070, 2017 WL 2215025, at *7 (N.D. Ill. May 19, 2017) (citing cases)). "The Seventh Circuit seems likely to agree, based on its reasoning in a similar context that a plaintiff who was already aware of the defendant's deceptive sales practices could not obtain injunctive relief because he 'is not likely to be harmed in the future.'" *Id.* (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014)); *Herbal Supplements*, 2017 WL 2215025, at *8 (concluding that *Camasta* "dealt with Article III standing"). The Court agrees with the reasoning of these decisions, and it declines plaintiffs' invitation to follow district court decisions to the contrary (most from outside this district and some of which dismiss *Camasta*'s reasoning as dicta). If plaintiffs are aware of defendants' allegedly deceptive practices in marketing the NUK pacifiers, there is no "real and immediate" threat that this marketing will injure them again. Plaintiffs therefore cannot pursue injunctive relief.

**B.     Rule 12(b)(6)**

Defendants assert that plaintiffs' DTPA claims should be dismissed because the statute allows consumer plaintiffs to recover only injunctive relief, and to obtain such relief, plaintiffs would have to allege facts indicating a likelihood of future injury, *see, e.g., Schiesser v. Ford Motor Co.*, No. 16 C 730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016), which they have failed to do. Plaintiffs do not contest dismissal of these claims, (ECF No. 39, Pls.' Opp'n Defs.' Mot. Dismiss at 25), so the Court will dismiss them without prejudice.

Defendants also maintain that plaintiffs fail to state a claim under the CFDBPA. To state a claim under this statute, plaintiffs must plausibly allege: (1) a deceptive act by defendants; (2) defendants' intent that they rely on the deceptive act; (3) the deceptive act occurred during a course of conduct involving trade or commerce; and (4) actual damage as a result of the deceptive act. *Haywood*, 887 F.3d at 333. Defendants say that plaintiffs fail to adequately allege deceptive conduct under Rule 9(b)'s heightened pleading standard. A statement is deceptive under the CFDBPA if it "creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 938 (7th Cir. 2001). In the complaint, plaintiffs describe and quote from a variety of third-party scientific studies that support their contention that there is no benefit from using an "orthodontic" pacifier over a conventional pacifier, and that prolonged use of a pacifier, no matter the type, results in dental misalignment. (1st Am. Compl. ¶¶ 45-87.) According to defendants, however, "a full and fair examination of these articles reveals the scientific research on this subject is equivocal at best," and plaintiffs thus fail to "plausibly establish" that defendants' marketing of NUK pacifiers is false or misleading. (Defs.' Mem. Supp. Mot. Dismiss at 13.) Defendants attach to their memorandum copies of some of the studies cited by plaintiffs and argue that plaintiffs overstate and mischaracterize the conclusions of the studies. The Court does not see it that way. Defendants rely on selective quotation from a subset of the studies, and the studies address the misrepresentations alleged by plaintiffs regarding pacifier use. Defendants simply delve too far into the merits of plaintiffs' fraud claims. Plaintiffs provide sufficient facts to plausibly state CFDBPA claims; defendants'

4

argument is a premature challenge to the sufficiency of the evidence of the false or misleading nature of defendants' marketing.

Defendants also contend that plaintiffs' claim regarding the use of the term "orthodontic" fails as a matter of law, because no reasonable consumer would interpret that word on the pacifiers' packaging to mean that the pacifier is capable of preventing dental malocclusions. The Court is not persuaded. Defendants point to language on their website for NUK Orthodontic Pacifiers that states that "shape matters" and that the NUK "truly orthodontic pacifier . . . fits baby's mouth better with its unique top and bottom shape." (ECF No. 38-3.) While it is true that an allegedly deceptive act must be considered in light of the totality of the information made available to the plaintiffs, *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005), defendants again engage in selective quotation. The very same web page they cite also warns consumers to "[a]void symmetrical and round pacifiers" because "[t]hey may claim to be orthodontic but they have the same top and bottom shape, which crowds the tongue and *could hamper oral development*." (ECF No. 38-3 (emphasis added).) The clear implication is that defendants' "truly orthodontic" pacifiers do not "hamper oral development." The website further states that the "unique design" of the NUK "truly orthodontic pacifier" "offers room for the tongue to move and promotes the natural development of jaw and teeth." (*Id.*) A reasonable consumer therefore could interpret defendants' use of the term "orthodontic" to refer not merely to the shape of the pacifier, but also as implying positive dental-health outcomes resulting from the use of that shape. And, as plaintiffs point out, defendants' interpretation does not comport with the plain meaning of the term. "Orthodontics" is defined as the "branch of dentistry concerned with the correction and prevention of irregularities and malocclusion of the teeth." Stedman's Medical Dictionary 634370 (2014).

Next, defendants challenge plaintiffs' allegation that defendants' packaging was misleading because it failed to disclose that prolonged pacifier use by children over the age of 24 months is associated with an increased risk of malocclusions. Defendants argue that plaintiffs fail to state a claim for fraudulent omission because the complaint lacks factual allegations "establishing Defendants' knowledge of the so-called 'risk.'" (Defs.' Mem. Supp. Mot. Dismiss at 18.) The Court disagrees. Plaintiffs do not have to "establish" such knowledge; they must set out facts that allow a reasonable inference of it, under Rule 8's standards. Plaintiffs allege that defendants "knew or should have known that their Orthodontic Pacifiers do not promote healthy dental occlusion or provide orthodontic benefit for children of any age" and that they "knew or should have known" that children who use pacifiers past the age of 24 months have an increased risk of dental misalignments. (1st Am. Compl. ¶¶ 90-91.) To support those allegations of false or misleading representations and omissions, plaintiffs have set forth facts drawn from a substantial body of scientific literature, as discussed above. They have also alleged that defendants are "prominent, longtime, and iconic manufacturers and distributors of baby products" such that they "possess specialized knowledge regarding the safety and efficacy of their products" and "are in a superior position to know the risks associated with" the use of their products. (*Id.* ¶ 89.) These allegations, taken together, are sufficient to support a reasonable inference of knowledge on the part of defendants, under the applicable standards of Rule 8.

The next issue concerns plaintiffs' claims for "violation of state consumer protection statutes." (*Id.* at 43-44.) Defendants contend that plaintiffs, as citizens of Illinois, have not

5

suffered an injury in a state other than Illinois and therefore cannot bring a claim under other states' laws. In response, plaintiffs assert that defendants' concern relates to the Rule 23 class-certification analysis and that it does not implicate standing, whether the relevant principle of standing is labeled constitutional, prudential, or statutory. Defendants reply that the Court should not "punt" the issue until a later stage of the case. Courts in this district have taken different approaches. Some view the issue as one of standing, to be addressed at the pleading stage, and others view it as one of plaintiffs' ability under Rule 23 to represent a multi-state class, to be addressed in the context of a class-certification motion. *See City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 757-59 (N.D. Ill. 2019) (citing cases); *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998-1002 (N.D. Ill. 2017); *Herbal Supplements*, 2017 WL 2215025, at *6-7. The Court finds persuasive the reasoning of *Mallinckrodt* and *Herbal Supplements*, in which the courts concluded that this type of challenge is really to the adequacy of the named plaintiffs to represent the putative class members' state-law claims and thus is better addressed at the class-certification stage. Yet the Court also agrees with the observation of the *Liston* court that it may be improper for the parties to engage in "wide-ranging discovery premised on a prospect as to which there is substantial doubt—namely, [plaintiffs'] ability to assert causes of action created by other states for the benefit of other individuals injured in those other states." 254 F. Supp. 3d at 1001-02. That determination, i.e., the proper scope of discovery, will be for the magistrate judge, who is supervising discovery.

Defendants' final argument is that plaintiffs' unjust-enrichment claim must be dismissed because it is "generically pled" on behalf of a nationwide class and does not identify under which states' laws it is asserted. (Defs.' Mem. Supp. Mot. Dismiss at 24.) But plaintiffs, as Illinois citizens, do not generically plead this claim; they invoke Illinois law. (1st Am. Compl. ¶ 157.) Defendants further contend that to the extent plaintiffs seek to assert an unjust-enrichment claim on behalf of a nationwide class, the Court should dismiss or strike such a claim under Rule 12(f) because the law of unjust enrichment varies too much from state to state to be amenable to adjudication on a nationwide basis. Defendants' request is premature and therefore denied. *See Carrol v. S.C. Johnson & Son, Inc.*, No. 17 C 5828, 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018) (denying as premature defendant's motion to strike or dismiss plaintiffs' proposed nationwide unjust-enrichment class where motion was based on variation in states' laws); *Wagner v. Gen. Nutrition Corp.*, No. 16 C 10961, 2017 WL 3070772, at *9 (N.D. Ill. July 19, 2017) ("Given that subclasses potentially could resolve problems arising from differences in state law, it is practical to wait until Plaintiff moves for class certification, proposes subclasses, and the parties provide in-depth analysis of the issues relevant to class certification."); *Rysewyk v. Sears Holdings Corp.*, No. 15 C 4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015) ("Plaintiffs might not carry their burdens at class certification, but nothing in the complaint or defendants' explanation of the law persuades me that it is practicable to resolve the certification question at this stage.").

## CONCLUSION

Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to strike under Federal Rule of Civil Procedure 12(f) [38] is granted in part and denied in part. The Court dismisses without prejudice plaintiffs' claims for injunctive relief for

lack of standing and plaintiffs' claims under the Illinois Deceptive Trade Practices Act. The remainder of defendants' motion is denied.

**DATE:** April 14, 2020

*Ronald A. Guzmán*
**Hon. Ronald A. Guzmán**
**United States District Judge**