**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLIL, individually and on behalf of all others similarly situated, | Case No.: 1:19-cv-06836 (RAG/YBK) |
| Plaintiffs, | The Honorable Ronald A. Guzman |
| vs. | Magistrate Judge Young B. Kim |
| | **PUBLIC REDACTED VERSION** |
| NEWELL BRANDS INC. and NUK USA LLC, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

**Page**

GLOSSARY OF TERMS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iv

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

     A.     Defendants Sold Uniformly-Labeled Orthodontic Pacifiers During the Class Period ..................................................................................................2

     B.     Plaintiffs Will Use Common Proof to Show That Nuk Orthodontic Pacifiers Do Not Promote Healthy Oral Development or Prevent Dental Malocussions ............................................................................................3

     C.     Plaintiffs Can Use Common Proof to Show that Class Members Incurred Pecuniary Injury Because of Defendants' Deceptive Labeling .............4

     D.     Plaintiffs' Purchases Were Typical of Reasonable Consumers ...............5

III.     LEGAL ARGUMENT ............................................................................................6

     A.     The Standard for Class Certification ......................................................6

     B.     The Class is Clearly Defined and Based on Objective Criteria ...............6

     C.     The Proposed Class Satisfies the Requirements of Rule 23(a)................8

          1.     The Class is Sufficiently Numerous ...........................................8

          2.     Questions of Law and Fact are Common to the Proposed Class ................9

          3.     Plaintiffs' Claims are Typical of Those of the Proposed Class Members ..............................................................................10

          4.     Plaintiffs and Counsel will Adequately Represent the Interests of the Class .............................................................................11

     D.     The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ........12

          1.     Common Issues of Law and Fact Predominate Over Individual Issues ....12

               (a)     Defendant's Representations Are Uniform and Susceptible to Classwide Proof ........................................13

               (b)     The Materiality of Defendants' Misrepresentations and Causation Can Be Determined on a Classwide Basis ..................15

               (c)     The Court Should Certify a Multi-State Consumer Protection Class ....................................................16

               (d)     Relief Can be Determined on a Classwide Basis ..........................19

          2.     A Class Action is the Superior Method for Adjudicating the Claims at Issue .................................................................................24

IV.     CONCLUSION.....................................................................................................25

## GLOSSARY OF TERMS

| TERM | DESCRIPTION |
|---|---|
| Plaintiffs | Plaintiffs Shelly Benson and Lisa Caparelli, collectively |
| Defendants | Defendants Newell Brands and Nuk USA, LLC, collectively |
| Orthodontic Pacifiers | Defendants' "orthodontic" pacifiers at issue are sold under the NUK brand name and include the following products, as well as any other NUK-branded "orthodontic" pacifiers: NUK Orthodontic Pacifiers, NUK Space™ Orthodontic Pacifiers, NUK Latex Orthodontic Pacifiers, NUK Sports Orthodontic Pacifiers, NUK Confetti Orthodontic Pacifiers, NUK Fashion Orthodontic Pacifiers, NUK Sensitive™ Orthodontic Pacifiers, and NUK Juicy Orthodontic Pacifiers |
| Complaint | First Amended Complaint, ECF No. 31 (cited as "FAC ¶ ___") |
| Motion | This Motion for Class Certification and supporting documents |
| ICFA | Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* |
| Class, Classes | As defined in Section III.B. Unless otherwise specified, all references to "Classes" or the "Class" refer collectively to the Multi-State Consumer Protection Class, the Multi-State Consumer Protection Subclass, the Illinois Class, and the Illinois Subclass |
| Class Period | As defined in Section III.B. For the Multi-State Class and Subclass, the Class Period is from October 16, 2013 (for Michigan, Minnesota, and New Jersey Class members), from October 16, 2014 (for Missouri Class members), from October 16, 2015 (for California, Florida, Massachusetts, and Washington Class members), and from October 16, 2016 (for Illinois and New York Class members) until the date notice is disseminated. For the Illinois Class and Subclass, the Class Period is from October 16, 2016 until the date notice is disseminated. |
| Weiner Decl. | Declaration of Melissa S. Weiner in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Kilpela Decl. | Declaration of Edwin J. Kilpela, Jr. in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Benson Decl. | Declaration of Plaintiff Shelly Benson in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Caparelli Decl. | Declaration of Plaintiff Lisa Caparelli in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Benson Dep. | Deposition of Plaintiff Shelly Benson taken on September 30, 2020 (excerpts attached as Exhibit 5 to the Kilpela Decl.) |
| Caparelli Dep. | Deposition of Plaintiff Lisa Caparelli taken on September 29, 2020 (excerpts attached as Exhibit 6 to the Kilpela Decl.) |
| Dubé Report | Expert Report of Professor Jean-Pierre H. Dubé (attached as Exhibit 4 to the Kilpela Decl.) |
| Dubé Response | Expert Report of Professor Jean-Pierre H. Dubé (Response) (attached as Exhibit 11 to the Kilpela Decl.) |
| Dennis Report | Expert Report of Dr. Michael Dennis (attached as Exhibit 9 to the Kilpela Decl.) |
| Dennis Response | Reply Expert Report of Dr. Michael Dennis (Response) (attached as Exhibit 10 to the Kilpela Decl.) |

| TERM | DESCRIPTION |
|---|---|
| Martin Report | Expert Report of Dr. Denise Martin (attached as Exhibit 12 to the Kilpela Decl.) |
| Wolf Dep. | Deposition of Melissa Wolf taken on September 11, 2020 (excerpts attached as Exhibit 2 to the Kilpela Decl.) |
| Wolter Dep. | Deposition of Nicholas Wolter taken on September 30, 2020 (excerpts attached as Exhibit 7 to the Kilpela Decl.) |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................12

*Anderson v. New Dimension Fin. Servs., L.P.*,
   No. 00 C 3725, 2001 WL 883700 (N.D. Ill. Aug. 7, 2001)....................18

*In re Arris Cable Modem Consumer Litig.*,
   327 F.R.D. 334 (N.D. Cal. 2018)...........................................21

*Butler v. Sears, Roebuck, and Co.*,
   727 F.3d 796 (7th Cir. 2013) .........................................11, 13, 18, 25

*Buycks-Roberson v. Citibank Fed. Sav. Bank*,
   162 F.R.D. 322 (N.D. Ill. 1995)...........................................19

*Cameron v. E.M. Adams & Co.*,
   547 F.2d 473 (9th Cir. 1976) .............................................18

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).......................................................19

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) .....................................15

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
   No. 17-MD-2785-DDC, 2020 WL 1180550 (D. Kan. Mar. 10, 2020)................21

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018).........................................21

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
   No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)................21

*Flynn v. FCA US LLC*,
   327 F.R.D. 206 (S.D. Ill. 2018) .........................................21

*Fox v. Riverview Realty Partners*,
   No. 12-CV-9350, 2014 WL 1613022 (N.D. Ill. Apr. 22, 2014) ...............13

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..................................21

*In re IKO Roofing Shingle Prod. Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014) ............................................................................18

*Jackson v. Payday Fin., LLC*,
    764 F.3d 765 (7th Cir. 2014) ............................................................................16

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
    702 F.3d 364 (7th Cir. 2012) ............................................................................11

*Khoday v. Symantec Corp.*,
    93 F. Supp. 3d 1067 (D. Minn. 2015) ..............................................................21

*Kleen Prods. LLC v. Int'l Paper Co.*,
    831 F.3d 919 (7th Cir. 2016) ..............................................................13, 15, 25

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ..............................................................11, 12, 18

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) .....................................................................22

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ......................................................................................16

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) ..............................................................................18

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ..............................................................................11

*Mednick v. Precor*,
    320 F.R.D. 140 (N.D. Ill. 2017)..........................................................16, 17, 18

*Mednick v. Precor, Inc.*,
    No. 14 C 3624, 2017 WL 2619139 (N.D. Ill. Jun. 16, 2017) ...........................15, 16

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ............................................................... *passim*

*In re Mexico Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ............................................................................17

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...............................................................7, 19, 20

*Mullins v. Direct Digital, LLC*,
    No. 13 CV 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014).......................17, 18

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
   923 F.3d 779 (10th Cir. 2019) ......................................................................19, 20

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
   231 F.R.D. 280 (N.D. Ill. 2005).............................................................................10

*Palmer v. Combined Ins. Co. of Am.*,
   217 F.R.D. 430 (N.D. Ill. 2003)...............................................................................12

*Payne v. Tri-State CareFlight, LLC*,
   332 F.R.D. 611 (D.N.M. 2019)...............................................................................20

*Ringswald v. Cty. of DuPage*,
   196 F.R.D. 509 (N.D. Ill. 2000).................................................................................8

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................11

*S37 Mgmt., Inc. v. Advance Refrigeration Co.*,
   961 N.E. 2d 6 (Ill. Ct. App. 2011) ..........................................................................16

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) ..................................................................................21

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009)...................................................................... *passim*

*Saltzman v. Pella Corp.*,
   606 F.3d 391 (7th Cir. 2010) ...........................................................................6, 17

*Scholes v. Stone, McGuire & Benjamin*,
   143 F.R.D. 181 (N.D. Ill. 1992).................................................................................9

*Sebo v. Rubenstein*,
   188 F.R.D. 310 (N.D. Ill. 1999).................................................................................18

*Suchanek v. Sturm Foods, Inc.*,
   311 F.R.D. 239 (S.D. Ill. 2015) ..............................................................11, 16, 17

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) .......................................................................... *passim*

*In re Sulfuric Acid Antitrust Litig.*,
   847 F. Supp. 2d 1079 (N.D. Ill. 2011) ..................................................................21

*Szabo v. Bridgeport Machs., Inc.*,
   249 F.3d 672 (7th Cir. 2001) ....................................................................................6

*Tanner v. Jupiter Realty Corp.*,
    433 F.3d 913 (7th Cir. 2006) ...................................................................17

*In re Titanium Dioxide Antitrust Litig.*,
    284 F.R.D. 328 (D. Md. 2012) ................................................................25

*Tylka v. Gerber Prods. Co.*,
    178 F.R.D. 493 (N.D. Ill. 1998) ........................................................15, 16

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...........................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................6, 9

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ..................................................................18

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) ..................................................................22

**Other Authorities**

815 Ill. Comp. Stat. 502/1, *et seq.* .................................................................7

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ....................................................7

Fla. Stat. §§ 501.201, *et seq.* ........................................................................7

Mass. Gen. Laws Ch. 93A, *et seq.* ...............................................................7

Mich. Comp. Laws §§ 445.901, *et seq.* .........................................................7

Minn. Stat. §§ 325F.67, *et seq.* .....................................................................7

Mo. Rev. Stat. §§ 407.010, *et seq.* ...............................................................7

N.J. Stat. §§ 56:8-1, *et seq.* ..........................................................................7

N.Y. Gen. Bus. Law §§ 349, *et seq.* .............................................................7

Wash. Rev. Code §§ 19.86.010, *et seq.* ........................................................7

Federal Rule of Civil Procedure 23(a) ..........................................................8

Federal Rule of Civil Procedure 23(a)(1) ......................................................8

Federal Rule of Civil Procedure 23(a)(2) ......................................................9

Federal Rule of Civil Procedure 23(a)(3) ........................................................................10

Federal Rule of Civil Procedure 23(a)(4) ........................................................................11

Federal Rule of Civil Procedure 23(b)(3) ...................................................................12, 24

## I.    <u>INTRODUCTION</u>

Plaintiffs seek certification of this class action that addresses the mass deception of Nuk Orthodontic Pacifiers marketed and sold by Defendants. Defendants have capitalized on consumers' desire to purchase "orthodontic" pacifiers for their infants and children by inducing reasonable consumers to believe that their Nuk Orthodontic Pacifiers are in some way better than non-orthodontic alternatives. Not only is that not the truth, but quite the opposite; common evidence demonstrates that prolonged pacifier use by children over the age of 24 months can cause significant harm by interfering with the proper development of their teeth and orofacial structures. (*See* FAC ¶ 2.) Children who use pacifiers to continue non-nutritive sucking habits past the age of 24 months have an increased risk of dental malocclusions—deviations from the ideal occlusion (the relation between the upper jaw and teeth and lower jaw and teeth)—of primary teeth, which, in turn, may interfere with a child's chewing, swallowing, speech, and jaw development and function. (*Id.*) As a result of this uniform deceptive misrepresentation and omission of material facts, Plaintiffs and all those similarly situated have been injured insofar as they purchased products that were not, in fact, "orthodontic."

Despite having actual knowledge that the Orthodontic Pacifiers had no orthodontic qualities, Defendants continued to advertise and market them to unsuspecting parents. Plaintiffs brought this lawsuit to require Defendants to compensate the Classes (as defined in Section III.B *infra*) for economic injuries arising out of the purchases of the Orthodontic Pacifiers, including a refund of the price premium paid as a result of Defendants' misleading labeling.

As set forth in this Motion, this lawsuit is appropriate for class adjudication because the case arises from the uniform misrepresentations and omissions made by Defendants on each and every Orthodontic Pacifier, and common evidence demonstrates that reasonable consumers are misled by Defendants' false promises. Plaintiffs proffer the expert opinions of two highly

respected, qualified experts who confirm that reasonable consumers have a common misunderstanding of Defendants' use of "orthodontic"—a material term in consumers' purchase of the Orthodontic Pacifiers, and damages can be calculated on a classwide basis. Therefore, Plaintiffs respectfully request that the Court certify the Classes and appoint them as Class Representatives and their attorneys as Class Counsel.

## II.    FACTUAL BACKGROUND

On October 16, 2019, Plaintiffs filed this suit against Defendants. (ECF Nos. 1, 31.) Plaintiffs' claims for damages under the ICFA, unjust enrichment, both under Illinois law and the law of other similar state statutes, survived Defendants' motion to dismiss and proceeded into discovery. (ECF Nos. 38, 58.)

### A.    Defendants Sold Uniformly-Labeled Orthodontic Pacifiers During the Class Period

Defendants sell pacifiers for children ages 0-36 months and, without exception, describe their pacifiers as "orthodontic" on the product packaging. (Wolf Dep. at 48:15-25.) In particular, Defendants advertise their Orthodontic Pacifiers in three age ranges: 0-6 months, 6-18 months, and 18-36 months. (*Id*. at 61:12-16.) The Orthodontic Pacifiers are similarly shaped in each of these age ranges, but get larger to be more suitable for growing children. (*Id*. at 71:22-25; 72:2-4.)

Defendants developed a uniform and clear marketing campaign with the primary purpose to convey to reasonable consumers that the Orthodontic Pacifiers promote healthy oral and orofacial development in children, including children over the age of 24 months or, at a minimum, prevent the various dental malocclusions caused by prolonged pacifier use. The term "Orthodontic" appears on the front packaging of all of the Orthodontic Pacifiers throughout the Class Period. (*Id*. at 59:24-25; 60:2-18; 60:22-25.) As confirmed by Defendants' corporate designee, Melissa Wolf, and as evidenced in the Orthodontic Pacifier labels, the packaging evolved over time, but the term "orthodontic" was always present on the packaging for Defendants'

Orthodontic Pacifiers. (*Id*. at 48:15-25; *see also* Kilpela Decl., Ex. 3.)

### B.  Plaintiffs Will Use Common Proof to Show That Nuk Orthodontic Pacifiers Do Not Promote Healthy Oral Development or Prevent Dental Malocussions

Plaintiffs will use common scientific evidence—that applies to all Orthodontic Pacifiers—to demonstrate that Defendants' labeling is patently false and misleading to a reasonable consumer. Studies dating back to the 1870s have consistently demonstrated the link between non-nutritive sucking habits and abnormalities in dental development and occlusion. (FAC ¶ 47.) Studies conducted since the 1960s have evaluated the effects of prolonged pacifier usage on children's oral development, affirming the findings of earlier research and establishing the link between prolonged non-nutritive sucking in the form of pacifier usage and the development of malocclusions and impaired development of orofacial structures. (*Id*. at ¶ 48.)

Further, reliable scientific evidence has confirmed that when comparing "orthodontic" pacifiers and conventional pacifiers, there was no "support [for] the purported advantages of functional exercisers over conventional pacifiers." (*Id.* at ¶ 50.) Moreover, a 2018 study concluded that there was no difference in the occurrence of malocclusion between users of orthodontic and conventional pacifiers or that using "orthodontic" pacifiers prevents malocclusion traits when compared to the usage of conventional pacifiers. (*Id*. at ¶¶ 55-56.)

Common evidence will be used to show the impact prolonged pacifier use has on oral development and the associated conditions which include: anterior open bite; posterior crossbite; class II malocclusion; excessive overjet; decreased upper intercanine width; increased mandibular canine arch width; diastema; oral myofunctional alterations; and, negative impacts on psychosocial development. (*Id*. at ¶¶ 58-81.) Besides poor oral development, prolonged pacifier usage is also associated with other psychosocial development which includes negative self-perception resulting from malocclusion and dental appearance. (*Id*. at ¶ 87.)

The studies described above are not specific to any singular Orthodontic Pacifier, rather

applicable to all. Through their advertisement of the Orthodontic Pacifiers, Defendants uniformly conveyed that all Orthodontic Pacifiers help promote healthy oral development and are safe for use for children over 24 months old, despite the common evidence to the contrary. Common evidence can be used to answer the common question as to whether Defendants' Orthodontic Pacifiers perform as promised.

### C. Plaintiffs Can Use Common Proof to Show that Class Members Incurred Pecuniary Injury Because of Defendants' Deceptive Labeling

Plaintiffs will proffer common evidence demonstrating that there are two sources of damages as a result of Defendants' false advertising of the Orthodontic Pacifiers: (1) price premium: Class members overpaid for the Challenged Products[1] because the price would have been lower but for the Challenged Claims on the labels; and (2) willingness to pay: Class members were not delivered the full benefits of the bargain because they never received the consumption (*i.e.*, use) benefits associated with the Challenged Claims on the labels of the Challenged Products. (*See* Dubé Report at Section III.)

To confirm damages can be calculated on a classwide basis, Plaintiffs' expert, Dr. Dubé, will use a conjoint analysis to measure both the price premium associated with Defendants' misleading representations and, separately, consumers' perceived benefits associated with those representations and their willingness to pay for those perceived benefits—that is, the isolated value represented by the benefits conveyed through Defendants' use of the descriptor "orthodontic." (*See generally* Dubé Report.) Under the price premium measure, Dr. Dubé will determine the amount consumers overpaid for the Orthodontic Pacifiers based on the fact that prices would have been lower but for use of the "orthodontic" descriptor. (*Id.* at ¶¶ 21-23.) Dr. Dubé will also use the

---

[1] Dr. Dubé opines on whether a methodology exists to determine economic damages based on certain of Defendants' misrepresentations, which he refers to as the "Challenged Claims," on the Orthodontic Pacifiers, which he refers to as the "Challenged Products." (Dubé Report ¶ 1.)

willingness-to-pay measure of economic damages, "which measures the incremental economic value to Class Members from the benefits they associate with the Challenged Claims on the labels of the Challenged Products. (*Id.* at ¶ 24.) As discussed in more detail in Section III.D.1(d) below, both measures of economic damages are generally accepted economic methods for determining the economic damages consumers incur from particular claims on product labels.

### D. Plaintiffs' Purchases Were Typical of Reasonable Consumers

Both named Plaintiffs—Shelly Benson and Lisa Caparelli—purchased Orthodontic Pacifiers and were exposed to Defendants' misleading and deceptive labeling at issue in this case.

Plaintiff Benson purchased Orthodontic Pacifiers dating back to approximately 2016. (FAC ¶ 18; Benson Decl. ¶ 3; *see also* Benson Dep. at 51:17-19.) Specifically, Plaintiff Benson purchased a Nuk Orthodontic Pacifier labeled "18-36 m" and "orthodontic" because she believed, based on those representations, that the "orthodontic" pacifier would improve dental health outcomes, including oral and orofacial health and development. (FAC ¶ 21; Benson Dep. at 58:9-24; 59:1-24; 60:1-24.) Plaintiff Benson understood Defendants' use of "orthodontic" to mean that the pacifiers were safe and beneficial to her child. (*Id.*) She further understood the age range of "18-36 m" to mean that the Orthodontic Pacifiers were safe for use by her child past 24 months. (*Id.*) Prior to purchasing the Orthodontic Pacifiers, Plaintiff Benson reviewed the label, which stated the Nuk Orthodontic Pacifiers promote oral health development. (*See* Benson Decl. ¶ 4.)

Similarly, Plaintiff Caparelli purchased Nuk Orthodontic Pacifiers and was exposed to Defendants' misleading and deceptive labeling at the point of purchase. (FAC ¶ 26; Caparelli Decl. ¶ 4.) Plaintiff Caparelli had been purchasing the Nuk Orthodontic Pacifiers for approximately four years based upon her reliance on Defendants' orthodontic and age statements, which she understood meant they would improve dental health outcomes and were safe for use by her child past the age of 24 months. (*Id.*; *see also* Caparelli Dep. at 20:8-14; 29:3-11; 34:21-24; 35:1-11.)

Both Plaintiffs reviewed and relied upon Defendants' "orthodontic" statement at the point of purchase and reasonably believed the Nuk Orthodontic Pacifiers would improve dental outcomes and were safe and beneficial for use by their children past the age of 24 months. (FAC ¶¶ 18, 21, 23, 26; Benson Decl. ¶ 2; Caparelli Decl ¶ 2) Had Plaintiffs known the truth about Defendants' misrepresentations, omissions and deceptive conduct, they would not have purchased the "orthodontic" pacifiers for their children over 24 months old or would have paid less for them. (*Id.*) Plaintiffs' purchasing experiences are typical of reasonable consumers and Class members.

## III. LEGAL ARGUMENT

### A. The Standard for Class Certification

The principal inquiry at class certification is whether evidence common to all class members can be used to prove or disprove Plaintiffs' central allegations. If so, those common issues will predominate over any individual issues and, assuming Rule 23's other requirements are met, certification is appropriate. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012); *see also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475 (N.D. Ill. 2009) ("*Pella I*"), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ("*Pella II*"). Plaintiffs need not prove their case on the merits at the class certification stage, *see id.*, but nevertheless courts perform a "rigorous analysis" under Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001). Such an analysis may require courts to "probe beyond the pleadings," scrutinize the record presented (including the expert reports), and determine whether Plaintiffs' claims are susceptible to common proof at trial. *See Szabo*, 249 F.3d at 677. However, "in conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *See Messner*, 669 F.3d at 811.

### B. The Class is Clearly Defined and Based on Objective Criteria

For a class to be certified, a class must be defined clearly and based on objective criteria.

*See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Whether a class is ascertainable depends on "the adequacy of the class definition itself … not [on] whether, given an adequate class definition, it would be difficult to identify particular members of the class." *See id*. Plaintiffs seek certification of a Multi-State Consumer Protection Class and Subclass. Plaintiffs propose, in the alternative, an Illinois-only Class and Subclass.

Plaintiffs assert claims under the ICFA and similar state statutes (Third Cause of Action), on behalf of themselves and the following Multi-State Consumer Protection Class:[2]

> All persons who purchased in the State of Illinois or any state with similar laws any of the NUK-branded Orthodontic Pacifiers, within the applicable statute of limitations, until the date notice is disseminated.

The proposed Multi-State Consumer Protection Subclass is defined as:

> All persons who purchased in the State of Illinois or any state with similar laws any of the NUK-branded Orthodontic Pacifiers, within the applicable statute of limitations, for use by a child 24 months or older until the date notice is disseminated.

As an alternative to the proposed Multi-State Class and Subclass, Plaintiffs propose an Illinois Class defined as:[3]

> All persons who purchased in the State of Illinois any of the NUK-branded Orthodontic Pacifiers, within the applicable statute of limitations, until the date notice is disseminated.

The proposed Illinois Subclass is defined as:

> All persons who purchased in the State of Illinois any of the NUK-branded Orthodontic Pacifiers, within the applicable statute of limitations, for use by a child 24 months or older until the date notice is disseminated.

---

[2] Plaintiffs seek to certify a Multi-State Consumer Protection Class and Subclass consisting of persons in the following states (and implicating the following statutes): California (Cal. Bus. & Prof. Code §§ 17200, *et seq*.); Florida (Fla. Stat. §§ 501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. 502/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §§ 445.901, *et seq*.); Minnesota (Minn. Stat. §§ 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq*.); New Jersey (N.J. Stat. §§ 56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§ 349, *et seq*.); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.).

[3] Plaintiffs assert claims on behalf of the Illinois Class and Subclass under the ICFA only.

These Class definitions are sufficiently precise and are limited to purchasers of NUK-branded Orthodontic Pacifiers.[4] Because ███████████████████████ of the Orthodontic Pacifier sales, Class members cannot be identified using Defendants' records.[5] (Wolter Dep. at 28:12-18; 29:4-7, 14-22; 30:2-9.) In such cases, notice through publication on the Internet and other media is adequate to identify class members. *See Pella I*, 257 F.R.D. at 476. Because all pacifiers sold by Defendants in the United States are marketed or labeled as "Orthodontic Pacifiers," the notice will cover *all* NUK-branded pacifiers purchased during the Class Period in the relevant states (for the Multi-State Consumer Protection Class and Subclass) or, alternatively, in Illinois only (for the Illinois Class and Subclass). The notice, therefore, will be simple and straightforward, thereby further facilitating Class member identification. The proposed Class Period has a clear beginning and ending date. For this reason as well, the Class is properly defined with reference to objective criteria. *See id*.

### C.     The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.     The Class is Sufficiently Numerous

Rule 23(a)(1) requires that the proposed class be so numerous that joinder is "impracticable." "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Ringswald v. Cty. of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000). Based on sales dated provided by Defendants, there are █████████████ of members of the proposed

---

[4] Excluded from the proposed Classes are: (i) Defendants, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their family members; (iv) all persons who make a timely election to be excluded from the class; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

[5] Defendants sell their Orthodontic Pacifiers directly to major retailers, but use distributors to sell to smaller retailers. Defendants do not sell Orthodontic Pacifiers directly to consumers.

Classes making joinder of all members impractical. (Kilpela Decl., Ex. 10.)

2. Questions of Law and Fact are Common to the Proposed Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement. *See Dukes*, 564 U.S. at 359 (internal citation omitted). Commonality is satisfied when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members[.]" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). "The commonality requirement has been characterized as a "low hurdle" easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In this case, Plaintiffs' and Class members' claims are based upon the same common contentions: Defendants' (1) deceptive misrepresentation that their Orthodontic Pacifiers are "orthodontic"; and (2) omission of material facts concerning the risks associated with pacifier use by children over the age of 24 months. (FAC ¶¶ 1, 32-42). Defendants' conduct uniformly impacted Plaintiffs and Class members in that, in purchasing Defendants' "orthodontic" pacifiers, they relied upon Defendants' misrepresentations and omissions. (*Id*. at ¶ 93.) Defendants' unlawful conduct will be proven by common evidence applicable to Plaintiffs and all Class members.

Common questions underlying this litigation focus solely on Defendants' uniform course of conduct rather than the conduct of any individual Plaintiff or Class member. As detailed in the Complaint, common questions include but are not limited to:

- whether Defendants' representations regarding their Orthodontic Pacifiers are misleading and deceptive to a reasonable consumer;

- whether Defendants failed to disclose material information concerning risks associated with prolonged pacifier use by children over the age of 24 months;

- whether Defendants' representations and omissions concerning their Orthodontic Pacifiers involved representations and omissions of material facts;

- whether Defendants' Orthodontic Pacifiers promote or benefit the oral and orofacial health of children of any age, including those 24 months and under;

- whether Defendants' Orthodontic Pacifiers are safe for use in children over 24 months;

- whether Defendants' conduct, as set forth in this Amended Complaint, violates the Illinois Consumer Fraud Act;

- whether Defendants' conduct was unjust and in violation of principles of justice, equity, and good conscience;

- whether Plaintiffs and Class members confer financial benefits on Defendants by purchasing Defendants' Orthodontic Pacifiers;

- whether Defendants' profits resulting from Plaintiffs' and Class members' overpayments are subject to equitable disgorgement; and

- whether Defendants should pay damages or restitution, and in what amount.

(*Id*. at ¶ 112.) These questions and others are common to the Class and predominate over individual issues. All of these issues are central to the Class members' claims, and each establishes commonality under Rule 23(a)(2).

3.    Plaintiffs' Claims are Typical of Those of the Proposed Class Members

Rule 23(a)(3) requires that class representatives' claims be "typical" of the proposed class' claims. Typicality "is closely related to commonality and should be liberally construed." *See Pella I*, 257 F.R.D. at 479. When "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," factual differences among class members do not defeat typicality. *See id.* (citation omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *See Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines*, *Inc*., 231 F.R.D. 280, 282 (N.D. Ill. 2005).

Here, Plaintiffs' claims are typical of the Class because they are based on the same legal theories and the same course of conduct—namely, Defendants uniform misrepresentation and omissions. Defendants' conduct detailed in the Complaint and this Motion was uniform across all Orthodontic Pacifiers. That a particular Plaintiff or Class member purchased a certain style of

Orthodontic Pacifier is of no consequence as all Orthodontic Pacifiers displayed the "orthodontic" claim. "When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012).

Plaintiffs' and the Class members' claims are reasonably coextensive insofar as they involve the purchase of Orthodontic Pacifiers that misleadingly claimed to be "orthodontic," when in fact, they are not. *See Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 255 (S.D. Ill. 2015) (holding that variations in the product brand purchased by the named plaintiffs and proposed class does not defeat typicality because "the class members were all exposed to the exact same course of conduct by Defendants."); *see also Butler v. Sears, Roebuck, and Co.*, 727 F.3d 796, 798, 800 (7th Cir. 2013). Plaintiffs here satisfy the typicality requirement.

4.   Plaintiffs and Counsel will Adequately Represent the Interests of the Class

Finally, Rule 23(a)(4) requires that the class representatives fairly and adequately represent the interests of the class. Adequacy is a two-part test: (i) the named Plaintiffs must not have claims in conflict with other class members, and (ii) the named Plaintiffs and proposed class counsel must be able to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 679 (7th Cir. 2009). "The adequacy of representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009). The mere potential for a conflict of interest is not sufficient to defeat class certification. *See, e.g.*, *Kohen*, 571 F.3d at 679-80 ("At this stage in the litigation, the existence of such conflicts is hypothetical. If and when they become real, the district court can certify subclasses with separate representation of each . . . .") (citing authority); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*,

702 F.3d 364, 372 (7th Cir. 2012). Further, "[t]he class representative must "possess the same interest and suffer the same injury as the class members." *Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 437 (N.D. Ill. 2003).

Here, Plaintiffs have no interests that are antagonistic to that of the proposed Classes, and as alleged, Plaintiffs and Class members were injured by the *same conduct* and in the *same manner* by Defendants. (Benson Decl. ¶ 7; Caparelli Decl. ¶ 7.) Both Plaintiffs and Class members seek damages as a result of Defendants' uniform conduct, and there is no potential for conflicting interests. Further, each Plaintiff is aware of her duties as class representatives, and they have already assumed those duties. (Benson Decl. ¶ 14; Caparelli Decl. ¶ 14.)

Plaintiffs are represented by skilled counsel with extensive experience prosecuting complex commercial and consumer class actions. (*See* Weiner Decl. ¶¶ 3-8; Kilpela Decl. ¶¶ 3-7.) The attorneys involved in this litigation have devoted substantial time and resources necessary to prosecute this action and are adequate counsel. (*See* Weiner Decl. ¶ 9; Kilpela Decl. ¶ 8.)

Plaintiffs, with the assistance of their counsel, will continue to vigorously prosecute this case. Therefore, the adequacy requirement is satisfied. *See Kohen*, 571 F.3d at 679.

### D. The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show that the proposed Class satisfies the predominance and superiority requirements of Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. Proc. 23(b)(3).

#### 1. Common Issues of Law and Fact Predominate Over Individual Issues

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 623 (1997). "Predominance is satisfied when 'common questions represent a significant aspect of a case and ... can be resolved for all members of a class in a single adjudication.'" *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (citing *Messner*, 669 F.3d at 811). While the predominance inquiry is more demanding than commonality under Rule 23(a), "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance." *See Pella I*, 257 F.R.D. at 484. Every issue in the case need not be common; the question is whether substantial common issues predominate. *See Messner*, 669 F.3d at 815; *Butler*, 727 F.3d at 801; *Fox v. Riverview Realty Partners*, No. 12-CV-9350, 2014 WL 1613022, at *5 (N.D. Ill. Apr. 22, 2014) ("[t]he issue for Rule 23(b)(3) purposes is not whether there are individual issues—there are some individual issues in virtually every situation in which class certification is sought—but rather whether common issues predominate over any individual issues.").

Objective questions, or questions focusing on Defendants' conduct, are the driving issues for all of Plaintiffs' claims here. (*See* Section III.C.2 *supra*.) State consumer protection statutes generally impose liability when the defendants' marketing "is likely to mislead a reasonable consumer, even if the statement is literally true." *Suchanek*, 764 F.3d at 762. The predominance inquiry does not permit the Court to conduct an inquiry into the merits to determine who will prevail at trial. *Kleen*, 831 F.3d at 931. Moreover, "it is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *See Messner*, 669 F.3d at 815; *Butler*, 727 F.3d at 801.

This class action satisfies the standard for predominance under Rule 23(b)(3).

        (a)       *Defendant's Representations Are Uniform and Susceptible to Classwide Proof*

The central issue in the case is whether Defendants misrepresented (or omitted) material facts related to the Orthodontic Pacifiers. As detailed in Section II *supra* of this Motion and in the supporting evidence, the allegations by Plaintiffs in this case center on common facts and evidence.

Defendants sell pacifiers for children ages 0-36 months and, without exception, describe their pacifiers as "orthodontic" on the product packaging. (*See* Section II.A *supra.*) Common evidence shows that Defendants' marketing claims misled reasonable consumers into believing the Orthodontic Pacifiers promote healthy oral and orofacial development in children, including children over the age of 24 months or, at a minimum, prevent the various dental malocclusions caused by prolonged pacifier use. (Dennis Report ¶¶ 66-67 (concluding that "over 90% of consumers perceived the "Orthodontic" claim on the Defendants' Products to mean the Products will promote healthy oral development and are safe and beneficial for children over the age of 24 months" and "9 in 10 consumers, the "Orthodontic" claim was material to their purchase decisions of the Defendants' Products.").) Indeed, Dr. Dennis' work—which summarizes the *only* consumer survey conducted in this matter to date—"provides a reliable and accurate measurement of (i) the extent to which class members understand the 'Orthodontic' claim on the Defendants' Products to communicate that the Products promote healthy oral development, help prevent jaw or teeth misalignment, and are safe and beneficial for children over the age of 24 months, and (ii) whether the challenged 'Orthodontic' claim is material to the purchasing decisions of reasonable consumers of the Defendants' Products." (Dennis Response ¶ 58.)

Thus, there is common evidence demonstrating that when comparing "orthodontic" pacifiers and conventional pacifiers, there was no "support [for] the purported advantages of functional exercisers over conventional pacifiers." (*Id.* at ¶ 50.) But because of their reasonable beliefs (based on Defendants' labeling and marketing), consumers suffered a quantifiable economic injury in paying for Orthodontic Pacifiers in the form of (1) a price premium for those attributes, and (2) willingness to pay for those attributes.

In short, the evidence focuses on Defendants' conduct and is common to all Class members. The evidence will apply to all claims to prove objective issues, such as the impact on a

reasonable consumer based on Defendants' uniform labeling and advertising of Orthodontic Pacifiers. There is no need for any Plaintiff or Class member to present evidence regarding their individual circumstances to prove any of the claims. As the Seventh Circuit has cautioned, predominance does not require a showing "that every class member must prove at least some impact." *See Kleen*, 831 F.3d at 927; *see also Suchanek*, 764 F.3d at 757 ("[i]f the [district] court thought that no class can be certified until proof exists that every member has been harmed, it was wrong."). Moreover, district courts should not require a greater showing of common evidence than is contemplated by Rule 23. *See Messner*, 669 F.3d at 808.

These common issues easily will be the focus of trial, and accordingly, predominate over any individualized issues.

      (b)    *The Materiality of Defendants' Misrepresentations and Causation Can Be Determined on a Classwide Basis*

"[T]he ICFA employs an objective standard when determining the materiality of an alleged misrepresentation." *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) (citations omitted); *Mednick v. Precor, Inc.*, No. 14 C 3624, 2017 WL 2619139, *8 (N.D. Ill. Jun. 16, 2017) ("*Mednick II*"). And "[b]ecause proximate cause under the ICFA is inextricably tied to the 'character' of the material misrepresentation…individualized proof of causation cannot be an impediment to class certification if materiality is not." *Tylka*, 178 F.R.D. at 499 n.5 (citations omitted). Indeed, "[i]n cases like this one where the representation being challenged was made to all putative class members, Illinois courts have concluded that causation is susceptible of classwide proof … if plaintiffs are able to adduce sufficient evidence that the representation was material." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 997 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) and 844 F.3d 1121 (9th Cir. 2017).

Here, there is no question that Defendants' packaging and labeling misrepresentations are uniform; Defendants admit that all the pacifiers at issue are marketed and labeled as "orthodontic."

958263 1            15

Class members, therefore, were exposed to Defendants' "standardized conduct." *See Tylka*, 178 F.R.D. at 499. Whether the ubiquitous "orthodontic" representations amount to materially deceptive statements are questions that go to the merits of Plaintiffs' claims under the ICFA and similar state statutes. Critically, these questions are capable of being answered by "classwide proof by assessing whether a reasonable person would find the representations deceptive…." *Mednick v. Precor*, 320 F.R.D. 140, 151-52 (N.D. Ill. 2017) ("*Mednick I*"); *Mednick II*, 2017 WL 2619139, at *8; *see Suchanek*, 311 F.R.D. at 259-60; *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011) ("Simply stated: labels matter."); *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E. 2d 6, 16 (Ill. Ct. App. 2011) (affirming certification of an ICFA class alleging defendant made uniform false representations).

In this case, Plaintiffs have submitted an expert report and response declaration from Dr. Michael Dennis, a recognized expert in consumer perceptions and attitudes. (*See generally* Dennis Report; Dennis Response.) The Dennis Report supports Plaintiffs' claims that the "orthodontic" claim made by Defendants on every package of Orthodontic Pacifiers it sold during the Class Period misleads customers into thinking that the pacifiers in question are beneficial and safe for use as compared to traditional pacifiers. Furthermore, that same report demonstrates that the term "orthodontic" was material to a reasonable consumers' decision to purchase Defendants' Orthodontic Pacifiers. Specifically, Dr. Dennis concludes that "my survey reliably demonstrates that a reasonable consumer interprets Defendants' Orthodontic Pacifiers packaging to communicate the products will promote healthy oral development and that the "Orthodontic" claim is material to consumers' decisions to purchase Nuk branded pacifiers." (Dennis Report ¶ 67.)

(c)    *The Court Should Certify a Multi-State Consumer Protection Class*

The conflicts law of Illinois governs in this case. *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under

Illinois choice-of-law principles, a court should apply the law of the state with most "significant relationship" to a claim. *See, e.g., Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006). Here, both Plaintiffs are Illinois residents, and Illinois law governs their claims. With respect to the Multi-State Consumer Protection Class and Subclass, variations in state law do not preclude certification even though class members are from different states. Where, as here, the applicable state statutes are "sufficiently the same" class treatment is appropriate. *See Mednick I*, 320 F.R.D. at 156; *see also In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001).[6]

Plaintiffs seek to certify a ten-state Multi-State Consumer Protection Class under Illinois law and the laws of California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. As in *Mullins v. Direct Digital, LLC*, No. 13 CV 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015), certification of the ten-state, multi-state class and subclass is appropriate. *See Mednick I*, 320 F.R.D. at 157 ("the consumer protection statutes of California, Illinois, Missouri, New York, and New Jersey share sufficient common characteristics that class certification as to the issue of liability is appropriate"); *Suchanek*, 311 F.R.D. at 259 (certifying an eight-state liability-only consumer protection class and finding that the question of liability was "identical across every class member because all of the applicable consumer protection statutes require proof that Defendants' statement was likely to mislead a reasonable consumer"); *see also Pella II*, 606 F.3d at 396 (affirming certification of six statewide subclasses and noting that "the district court…explicitly [found] that the consumer protection acts of these six states have nearly identical elements").

While the ten consumer protection statutes at issue here are not identical, they are

---

[6] The court in *Suchanek* further noted that, "the proof needed to resolve the question of liability—survey evidence and expert testimony—is common to all class members. It is also costly." 311 F.R.D. at 259.

sufficiently the same,[7] thereby warranting certification of the proposed Multi-State Consumer Protection Class and Subclass. As shown, each statute allows for a private right of action and actual damages. (*See* Weiner Decl., Ex. 2.) None of the states' laws require a showing of reliance, and scienter or wrongful intent is either not required or satisfied where the misrepresentation is objectively material (a common question). (*Id.*) Similarly, all the state statutes set a low bar with respect to causation—it is satisfied where the misrepresentation is materially misleading to a reasonable consumer or as long as the misrepresentation precedes the purchase. (*Id.*)

The only notable differences in the states' laws relate to damages and the applicable statute of limitations, neither of which weighs against certification. *Id.* Differences in applicable statutes of limitations do not bar certification; rather, those differences simply affect class membership. *See Mullins*, 2014 WL 5461903, at *2; *see also Mednick I*, 320 F.R.D. at 143.[8] Similarly, differences in available damages under the various state statutes do not defeat predominance or bar certification. As the Seventh Circuit Court of Appeals keenly noted:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.

*Butler*, 727 F.3d at 801; *see also Kohen*, 571 F.3d at 677; *In re IKO Roofing Shingle Prod. Liab.*

---

[7] Plaintiffs attach to the Weiner Declaration as Exhibit 2 a chart outlining the consumer protection laws of each relevant state.

[8] Courts in this Circuit and others have rejected arguments that differences in statutes of limitations defeat class certification. *See Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999); *Anderson v. New Dimension Fin. Servs., L.P.*, No. 00 C 3725, 2001 WL 883700, at *5 (N.D. Ill. Aug. 7, 2001), *report and recommendation adopted*, 2001 WL 1155251 (N.D. Ill. Sept. 28, 2001); *Pella I*, 257 F.R.D. at 486 ("Due to the predominance of other issues, differences in applicable statutes of limitations do not bar class certification under Rule 23(b)(3)."); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000).

*Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (rejecting the "mistaken belief that 'commonality of damages' is legally indispensable" for class certification); *Suchanek*, 764 F.3d at 757.[9]

In sum, the relevant consumer protection statutes are largely uniform on the key question of liability, and this common question predominates over any individual issues arising in the consumer protection context. The Court, therefore, should certify the ten-state Multi-State Consumer Protection Class and Subclass.[10]

(d) <em>Relief Can be Determined on a Classwide Basis</em>

At class certification, Plaintiffs must show that "damages are capable of measurement on a classwide basis." *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see also Suchanek*, 764 F.3d at 760. Damages must be fit to a plaintiff's theory of liability and be sufficiently reliable. *Mullins*, 795 F.3d at 671. Dr. Dubé's well-reasoned and evidence-based expert opinion, combined with the other evidence presented and relied upon by Plaintiffs, provide relevant, probative and common evidence to assess damages on a classwide basis.

To prove classwide damages, plaintiffs must put forth a damages model seeking to measure the damages attributable to their damages theory. *Comcast*, 569 U.S. at 35. However, damages "[c]alculations need not be exact." *Id.* Nor do individualized questions about damages defeat predominance. *Messner*, 669 F.3d at 815; *see also Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019). This is true even if the district court must "later divide the class into subclasses for purposes of determining damages." *Naylor Farms*, 923 F.3d at 798. The

---

[9] Should the Court deem it necessary, the proposed Multi-State Consumer Protection Class and Subclass can easily be parsed into damages subclasses if necessary. *See, e.g.*, *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 338 (N.D. Ill. 1995) (noting that "Rule 23(c)(4) empowers the Court to divide the class into subclasses" as appropriate).

[10] This Court has discretion to certify Plaintiffs' proposed Multi-State Consumer Protection Class and Subclass as requested or, to satisfy any perceived manageability concerns, create state subclasses to avoid any possible conflicts of law. *See, e.g.*, *Buycks-Roberson*, 162 F.R.D. at 338 (noting that "Rule 23(c)(4) empowers the Court to divide the class into subclasses" as appropriate).

Seventh Circuit has recognized that "the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification." *Mullins*, 795 F.3d at 672. Indeed, predominance may be satisfied even if "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotation omitted).

A damages model may be based on a "representative or statistical sample," even if it is not based on, and does not attempt to prove, each class member's individual damages. *Id.* at 1046. Instead, the question is whether "the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Id.* Representative, statistical evidence can be used in a class proceeding just like it could in an individual proceeding. *Id.* at 1047. Evidence that an expert will be able to determine class-wide damages "through use of a model" is sufficient to satisfy Rule 23(b)(3), at least when the defendant "fails to explain why that model is inaccurate or unworkable." *Naylor Farms*, 923 F.3d at 798.

"The predominance question applies to both macro damages—the total class damages— and to the micro damages—the individual damages." *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 666 (D.N.M. 2019). "A class can have individual damage calculations, but the Court has to look at the issues of individual damage calculations at the class certification stage." *Id*. at 668. The "methodology for all class members needs to be common or, if there are different methodologies for some plaintiffs and class members, the Court must take these differences into account at the class certification state in the predominance analysis." *Id*. Finally, "even if the methodology is common to the class, the Court must decide whether it will operate in a consistent way for each individual class member." *Id*.

Courts across the country routinely certify consumer class actions under Rule 23(b)(3) when the plaintiff presents expert testimony based on conjoint analysis designed to isolate the

portion of the payment attributable to the misrepresented product attribute. *See, e.g.*, *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017) (recognizing acceptance of price premium damages theory utilizing conjoint analysis); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 224-25 (S.D. Ill. 2018) (recognizing that conjoint analysis is often used to calculate damages in class actions); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1103-06 (N.D. Cal. 2018) (discussing proposed conjoint analysis and finding it satisfies *Comcast*); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 601, 614-16 (N.D. Cal. 2018) (discussing price premium survey and choice-based conjoint analysis and finding common issues predominate); *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1082 (D. Minn. 2015) ("The Court finds that Gaskin's conjoint analysis is generally a permissible method for calculating damages."). Generally, a conjoint analysis asks survey respondents to choose between different sets of product attributes, aggregates those responses, and uses statistical methods to determine the value that consumers attach to each specific attribute. *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 367 (N.D. Cal. 2018).

At class certification, an expert need not put forth a final damages analysis that would be admissible at trial. Rather, the question is whether the expert's testimony is helpful for determining whether the requirements of Rule 23 are met. *See In re Sulfuric Acid Antitrust Litig.*, 847 F. Supp. 2d 1079, 1080 (N.D. Ill. 2011) (denying decertification and affirming that "at the class certification stage, Plaintiffs need only establish that they have 'realistic methodologies for establishing damages on a classwide basis.'"); *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC, 2020 WL 1180550, at *24 (D. Kan. Mar. 10, 2020) (certifying class where plaintiffs' experts "proposed a methodology" for determining aggregate damages); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004-06 (9th Cir. 2018) ("[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class

certification" because "admissibility should go to the weight that evidence is given" in determining whether the requirements of Rule 23 are met); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 614 (8th Cir. 2011) (finding "a focused *Daubert* analysis" proper that was limited to determining whether requirements of Rule 23 are met); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017) (finding methodology report proposing to use hedonic regression analysis sufficient for class certification).

In this case, Plaintiffs have submitted an expert report and response declaration from Jean-Pierre H. Dubé, Ph.D. (*See generally* Dubé Report; Dubé Response.) He opines on whether a methodology exists to determine economic damages based on the Challenged Claims. (Dubé Report ¶ 1.) In particular, in Dr. Dubé's opinion, conjoint analysis can be used to determine class-wide economic damages. (*Id.* at ¶ 3.)

Dr. Dubé is qualified in this area. He is the Sigmund E. Edelstone Professor of Marketing at the University of Chicago Booth School of Business, where he has been on the faculty since 2000. (*Id.* at ¶¶ 5-6.) He completed a Ph.D. in economics from Northwestern University in 2000 and a B.S. in quantitative methods in economics from the University of Toronto in 1995. (*Id.* at ¶ 5.) During his teaching career, Dr. Dubé has taught MBA and executive courses in areas including marketing strategies, marketing analytics, and pricing strategies, several of which cover frameworks for modeling and empirically estimating consumer willingness to pay and consumer demand, as well as conjoint analysis and its use for demand estimation. (*Id.* at ¶ 7.) His research focuses broadly on topics related to consumer demand for branded goods, including demand-side and supply-side issues. (*Id.* at ¶ 10.) He has also worked as an expert witness in the area of marketing and packaging claims. (*Id.* at ¶¶ 11.) He has consulted with firms in a variety of industries about consumer preferences and willingness to pay. (*Id.* at ¶ 12.)

Dr. Dubé concluded that a choice-based conjoint analysis is appropriate to measure

consumers' preferences for the Challenged Claims. (*Id.* at ¶ 16.) The conjoint analysis will control for the presence of differentiated competing brands charging different prices on the supply side of the market. (*Id.*) The conjoint analysis's preference estimates can be used to implement a marketplace simulation to measure the price premium paid by consumers, which will account for the oligopoly competition between Defendants and other supply-side competitors. (*Id.*) The conjoint analysis used to measure consumers' willingness to pay, which is "the microeconomic measure of total incremental classwide economic value from the benefits associated with the Challenged Claims on the labels of the Challenged Products." (*Id.* at ¶ 17.)

Dr. Dubé will calculate a price premium, which measures the extent to which all Class members overpaid because of the extent to which Defendants could inflate their market price due to the Challenged Claims. (*Id.* at ¶ 21.) This will include a "marketplace simulation of the oligopoly market in which the Defendants and their main competitors compete on prices," with the assumption that each firm sets its prices to maximize the profits from the sale of its brands. (*Id.* at ¶ 22.) It will also include consideration of each firm's demand and marginal costs, and the use of a conjoint analysis to determine consumer demand in the but-for world. (*Id.* at ¶ 23.)

Dr. Dubé will also calculate willingness to pay, which measures the incremental economic value to Class members from the benefits they associate with the Challenged Claims. (*Id.* at ¶ 24.) This accounts for different ways in which consumers suffer economic harm: (1) they lose the perceived benefits of the Challenged Claims; (2) they might change their purchase decision; and (3) they might not purchase any pacifier product at all. (*Id.*) Again, a conjoint analysis will measure consumer preferences based on survey data and a statistical procedure to estimate consumers' preferences using the survey data. (*Id.* at ¶¶ 25-28.)

Dr. Dubé will employ a choice-based conjoint analysis, which is one of the most widely used conjoint techniques in the world. (*Id.* at ¶ 54.) This mimics the purchase process for

consumers by presenting a set of product profiles and asking which the respondent would purchase and is rooted in "random utility theory," a well-tested theory of choice behavior. (*Id.* at ¶ 65.) This approach will allow Dr. Dubé to estimate consumer preferences and utilize a standard microeconomic approach to calculate economic damages. (*Id.* at ¶ 71.)

Dr. Dubé considered the report of Defendants' expert, Dr. Denise Martin, which criticizes Dr. Dubé's conclusions, and was able to respond to—and in most cases discredit—Dr. Martin's generalized conclusions regarding the appropriateness of the use of conjoint in this context. (Dubé Response, Section B.)

This analysis readily satisfies the requirements of Rule 23 through a qualified expert's use of a methodology to calculate classwide damages that measures the Class members' injuries incurred as a result of paying for the Orthodontic Pacifiers sold not as advertised. Plaintiffs here present a damages model capably of reliably and properly calculating classwide (and individual) damages that tracks their liability theory.

2. <u>A Class Action is the Superior Method for Adjudicating the Claims at Issue</u>

Rule 23(b)(3) provides that certification is warranted if a class-wide trial is "superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). To establish superiority, Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

*See id.*

Class certification is more efficient than any other procedure available for resolving the relevant factual and legal issues raised here. *See Messner*, 669 F.3d at n.5. The record to date—

showing that Plaintiffs can establish their claims on a class-wide basis using predominantly common proof—underscores the manageability of this case. *See Kleen*, 831 F.3d at 929.

In finding the superiority requirement satisfied, courts have explained that an alternative— litigating hundreds or thousands of lawsuits individually—would be wasteful, inefficient and unfeasible for many plaintiffs. *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 349 (D. Md. 2012) ("[T]his Court concludes that because common issues predominate, class action treatment is superior to other available methods of adjudicating the Plaintiffs' claims."). Here, there are no feasible, let alone superior, alternatives to a class action; there are simply too many (██████████████) Class members who purchased relatively inexpensive products (the Orthodontic Pacifiers) that make individualized litigation economically infeasible and practically impossible. Thus, a denial of certification would result in the filing of additional individual actions or, more likely, the abandonment of claims by Class members whose injury, while quite real, is not large enough to economically justify the costs of litigation.

In addition, Class members are dispersed across the country, each with materially identical claims. Certainly, the most feasible and efficient way for these plaintiffs to pursue their claims is by way of a class action. *See Butler*, 727 F.3d at 801 ("[T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). This reasoning applies here and class treatment is the superior way for this case to proceed.

## IV.     <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully submit that the proposed Classes meet all requirements under Rule 23 and that the Court should certify the proposed Classes, appoint the named Plaintiffs as class representatives, appoint Melissa Weiner of Pearson, Simon & Warshaw, LLP and Edwin Kilpela of Carlson Lynch, LLP as Class Counsel.

Dated: June 14, 2021                                Respectfully submitted,

                                                    **CARLSON LYNCH, LLP**

                                            By:     */s/ Edwin J. Kilpela, Jr.*
                                                    EDWIN J. KILPELA, JR.
                                                    ekilpela@carlsonlynch.com
                                                    **CARLSON LYNCH LLP**
                                                    1133 Penn Avenue, 5th Floor
                                                    Pittsburgh, Pennsylvania 15222
                                                    Telephone: (412) 253-4996
                                                    Facsimile: (412) 231-0346

                                                    KATRINA CARROLL
                                                    kcarroll@carlsonlynch.com
                                                    111 W. Washington Street, Suite 1240
                                                    Chicago, Illinois 60602
                                                    Telephone: (312) 750-1265
                                                    Facsimile: (312) 750-1591

                                                    MELISSA S. WEINER
                                                    mweiner@pswlaw.com
                                                    **PEARSON, SIMON & WARSHAW, LLP**
                                                    800 LaSalle Avenue, Suite 2150
                                                    Minneapolis, Minnesota 55402
                                                    Telephone: (612) 389-0600
                                                    Facsimile: (612) 389-0610

                                                    DANIEL L. WARSHAW
                                                    dwarshaw@pswlaw.com
                                                    **PEARSON, SIMON & WARSHAW, LLP**
                                                    15165 Ventura Boulevard, Suite 400
                                                    Sherman Oaks, California 91403
                                                    Telephone: (818) 788-8300
                                                    Facsimile: (818) 788-8104

                                                    *Attorneys for Plaintiffs and the Proposed Class*