**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLIL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>NEWELL BRANDS INC. and NUK USA LLC,<br><br>        Defendants. | Case No.: 1:19-cv-06836 (RAG/YBK)<br><br>The Honorable Ronald A. Guzman<br><br>Magistrate Judge Young B. Kim<br><br>**<u>PUBLIC REDACTED VERSION</u>** |

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS ........................................................................................................ i

GLOSSARY OF TERMS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iv

I.      PLAINTIFFS PRESENT SOUND LEGAL CLAIMS SUPPORTED BY COMMON EVIDENCE ........................................................................................... 1

II.     ARGUMENT .......................................................................................................... 4

      A.     COMMON EVIDENCE DEMONSTRATES THAT DEFENDANTS' ORTHODONTIC PACIFIERS ARE NOT, IN FACT, "ORTHODONTIC" .......... 4

      B.     THE PROPOSED CLASSES ARE READILY IDENTIFIABLE ........................ 6

      C.     PLAINTIFFS' PROPOSED CLASSES ARE SUFFICIENTLY COHESIVE ................................................................................................... 10

      D.     A CLASS ACTION IS THE SUPERIOR METHOD FOR ADJUDICATION ................................................................................................ 15

III.    CONCLUSION ........................................................................................................ 15

## GLOSSARY OF TERMS

| TERM | DESCRIPTION |
|---|---|
| Plaintiffs | Plaintiffs Shelly Benson and Lisa Caparelli, collectively. |
| Defendants | Defendants Newell Brands and Nuk USA, LLC, collectively. |
| Orthodontic Pacifiers or Products | Defendants' "orthodontic" pacifiers at issue are sold under the NUK brand name and include the following products, as well as any other NUK-branded "orthodontic" pacifiers: NUK Orthodontic Pacifiers, NUK Space™ Orthodontic Pacifiers, NUK Latex Orthodontic Pacifiers, NUK Sports Orthodontic Pacifiers, NUK Confetti Orthodontic Pacifiers, NUK Fashion Orthodontic Pacifiers, NUK Sensitive™ Orthodontic Pacifiers, and NUK Juicy Orthodontic Pacifiers. |
| Complaint | First Amended Complaint, ECF No. 31 (cited as "FAC ¶     "). |
| Motion, Mot. | Plaintiffs' Motion for Class Certification (ECF No. 113) and supporting documents. |
| Opposition, Opp'n | Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 116) and supporting documents. |
| Class, Classes | As defined in Section III.B of Plaintiffs Motion. Unless otherwise specified, all references to "Classes" or the "Class" refer collectively to the Multi-State Consumer Protection Class, the Multi-State Consumer Protection Subclass, the Illinois Class, and the Illinois Subclass. |
| Class Period | As defined in Section III.B of Plaintiffs Motion. For the Multi-State Class and Subclass, the Class Period is from October 16, 2013 (for Michigan, Minnesota, and New Jersey Class members), from October 16, 2014 (for Missouri Class members), from October 16, 2015 (for California, Florida, Massachusetts, and Washington Class members), and from October 16, 2016 (for Illinois and New York Class members) until the date notice is disseminated. For the Illinois Class and Subclass, the Class Period is from October 16, 2016 until the date notice is disseminated. |
| Kilpela Decl. | Declaration of Edwin J. Kilpela, Jr. in Support of Plaintiffs' Motion for Class Certification, ECF No. 105-2. |
| Kilpela Suppl. Decl. | Supplemental Declaration of Edwin J. Kilpela, Jr. in Support of Plaintiffs' Motion for Class Certification. |
| Benson Decl. | Declaration of Plaintiff Shelly Benson in Support of Plaintiffs' Motion for Class Certification, ECF No. 105-3. |
| Caparelli Decl. | Declaration of Plaintiff Lisa Caparelli in Support of Plaintiffs' Motion for Class Certification, ECF No. 105-4. |
| Benson Dep. | Deposition of Plaintiff Shelly Benson taken on September 30, 2020 (excerpts attached as Exhibit 5 to the Kilpela Decl.). |
| Caparelli Dep. | Deposition of Plaintiff Lisa Caparelli taken on September 29, 2020 (excerpts attached as Exhibit 6 to the Kilpela Decl.). |
| Dubé Report | Expert Report of Professor Jean-Pierre H. Dubé (attached as Exhibit 4 to the Kilpela Decl.). |
| Dubé Response | Expert Report of Professor Jean-Pierre H. Dubé (Response) (attached as Exhibit 11 to the Kilpela Decl.). |
| Dennis Report | Expert Report of Dr. Michael Dennis (attached as Exhibit 9 to the Kilpela Decl.). |

| TERM | DESCRIPTION |
|---|---|
| Dennis Response | Reply Expert Report of Dr. Michael Dennis (Response) (attached as Exhibit 10 to the Kilpela Decl.). |
| Wolf Dep. | Deposition of Melissa Wolf taken on September 11, 2020 (excerpts attached as Exhibit 2 to the Kilpela Decl.). |
| Wolter Dep. | Deposition of Nicholas Wolter taken on September 30, 2020 (excerpts attached as Exhibit 7 to the Kilpela Decl.). |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ............................................................................9

*Broomfield v. Craft Brew All., Inc.*,
    No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ...................10, 11, 12

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................15

*Clark v. Bumbo Int'l Trust*,
    No. 15 C 2725, 2017 WL 3704825 (N.D. Ill. Aug. 28, 2017) ...................................5

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................................13

*Davidson v. Apple, Inc.*,
    No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018) .................................11

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) ............................................................................13

*Dietrich v. C.H. Robinson Worldwide, Inc.*,
    No. 18 C 4871, 2020 WL 635972 (N.D. Ill. Feb. 11, 2020) ...................................15

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ....................................................................8, 9

*Elkies v. Johnson & Johnson Servs., Inc.*,
    No. CV 17-7320-GW(JEMX), 2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) .....................12

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
    No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ..............................10

*Freeman v. MAM USA Corp.*,
    No. 1:20-cv-01834, 2021 WL 1103350 (N.D. Ill. Mar. 23, 2021) ............................6

*Garner v. Healy*,
    184 F.R.D. 598 (N.D. Ill. 1999) ....................................................................13, 14

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..........................................................12, 14

*Kumar v. Salov N. Am. Corp.*,
    No. 14-cv-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016) ............................8

*Langendorf v. Skinnygirl Cocktails, LLC*,
   306 F.R.D. 574 (N.D. Ill. 2014) ..................................................................................7

*McCrary v. Elations Co., LLC*,
   No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ...................8

*Mednick v. Precor, Inc.*,
   320 F.R.D. 140 (N.D. Ill. 2017) .........................................................................6, 9, 10, 12

*Messner v. Northshore University HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ...........................................................................................6

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) .................................................................................7, 8, 9, 15

*Mullins v. Direct Digital, LLC*,
   No. 13 CV 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014) ......................................9

*Mulvania v. Sheriff of Rock Island Cty.*,
   850 F.3d 849 (7th Cir. 2017) .........................................................................................15

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ...........................................................................................8

*Rikos v. Procter & Gamble Co.*,
   No. 1:11-CV-226, 2014 WL 11370455 (S.D. Ohio June 19, 2014) ...........................1, 12, 13

*S37 Mgmt., Inc. v. Advance Refrigeration Co.*,
   961 N.E.2d 6 (Ill. App. Ct. 2011) ...................................................................................13

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009) .......................................................................................7

*In re Sears, Roebuck & Co. Tools Mktg. and Sales Litig.*,
   Nos. 05 C 4742, 05 C 2623, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ..............................8

*See Kleen Prod. LLC v. Int'l Paper*,
   306 F.R.D. 585 (N.D. Ill. 2015) .....................................................................................12

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) .......................................................................................9, 12

*Zboralski v. Sanders*,
   No. 06 C 3772, 2010 WL 3024885 (N.D. Ill. July 29, 2010) .....................................................6

**Other Authorities**

Federal Rule of Evidence 803 .................................................................................................5

## I.     PLAINTIFFS PRESENT SOUND LEGAL CLAIMS SUPPORTED BY COMMON EVIDENCE

Common evidence supports Plaintiffs' claims that reasonable consumers were misled by Defendants' labeling of the Orthodontic Pacifiers as "orthodontic" and by omission of material facts concerning the risks associated with pacifier use by children over the age of 24 months. (FAC ¶¶ 1, 32-42.) As an initial matter, Defendants have presented no evidence whatsoever to rebut the scientific fact (undisputed in the medical literature evidence since the 1870s and confirmed through the present) that Defendants' Orthodontic Pacifiers fail to promote healthy oral development or prevent dental malocclusion. Indeed, Defendants' internal research concedes that ████████████ ████████████████████████████████████████████████████.[1] (*See* Kilpela Suppl. Decl. Ex. 1, NUK0007243.)

In support of this Motion, Plaintiffs proffered conclusive common evidence demonstrating a common understanding of "orthodontic" and the materiality of that claim. Defendants have presented no evidence to the contrary. Expert evidence in this case confirms that "a reasonable consumer interprets the Nuk product packaging to communicate that the Products will promote healthy oral development and that Defendants' "orthodontic" claim is material to consumers' decisions to purchase Nuk branded pacifiers." (Dennis Report ¶ 67.) Furthermore, expert evidence demonstrates a common understanding of the term "orthodontic." (*See, e.g.*, Dennis Report ¶¶ 9, 24, 48, 125.) Rather than offer any common evidence rebutting Plaintiffs' sound expert testimony,

---

[1] While proving the merits of the case is not required at the certification stage, *all or nearly all* of the evidence already produced in this case from both Plaintiffs *and* Defendants overwhelmingly demonstrates that Defendants knowingly labeled their products falsely and misleadingly. *See, e.g.*, *Rikos v. Procter & Gamble Co.*, No. 1:11-CV-226, 2014 WL 11370455, at *3 (S.D. Ohio June 19, 2014), *aff'd*, 799 F.3d 497 (6th Cir. 2015) ("[i]n determining the propriety of a class action, the question is not whether the … plaintiffs … will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, (1974)) (emphasis in original). In this case, *both* the Rule 23 requirements are met *and* the likelihood is extremely high that Plaintiffs will prevail on the merits in view of *even* Defendants' internal evidence showing that ████████████████████ ██████████████.

961531.7                                         1

Defendants imagine various interpretations of the "orthodontic" claims (*i.e.*, they "promote health" or "prevent problems" when **compared to** thumb-sucking or a different brand's pacifier) that are simply not grounded in any evidence.

In a feeble attempt to distort the very simple legal theory in this case, Defendants' Opposition weaves an irrelevant narrative about why pacifiers exist (they pacify children) and flagrant mischaracterizations of the evidence in the record. Defendants' fictions fail to demonstrate any failure to satisfy the requirements of Rule 23.

*First*, Defendants argue about whether NUK's Orthodontic Pacifiers perform *medically* as labeled and as reasonable consumers expect. Defendants' argument is not for class certification; it is a question for trial. Moreover, Defendants' argument is <u>not</u> based upon *medical* evidence. Rather, Defendants cite to two of their 30(b)(6) non-expert deponents' testimony (ECF Nos. 115-1 and 115-3) and their *product packaging* (ECF No. 115-2). (*See* Opp'n 4.) This evidence is irrelevant to the *medical* question. In truth, Defendants' documents demonstrate that ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████. *See* Section I at 1, *supra*.[2]

*Second*, Defendants cherry-pick incomplete quotations attempting to show that purchasers understand the term "orthodontic" to refer *exclusively* to the *shape* of the baglet of the pacifier. (Opp'n 2-4.) This is a specious fiction. Defendants ignore common evidence and their own internal marketing studies ████████████████████████████████████████████████████

---

[2] Moreover, NUK's survey actually supports Plaintiffs' legal claims. NUK failed to disclose that ███████
████████████████████████████████████████████████████████
██████████████. (NUK0007248, *id.*) ███████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████. (NUK0007257, *id.*)



. (NUK000077, ECF No. 115-10.)

. (NUK000083, 91, *id.*)

*Third*, Defendants mischaracterize the record as to Plaintiffs' experiences, who, like other members of the putative class, made purchasing decisions believing in Defendants' illusory claims of "orthodontic" benefits. The record evidence shows Plaintiffs purchased Defendants' Orthodontic Pacifiers because of their mistaken belief that NUK pacifiers were beneficial or less harmful to their children's oral development as compared to other pacifiers. (Benson Decl., ECF No. 105-3; Caparelli Decl., ECF No. 105-4.) In addition, Plaintiff Caparelli testified she believed that NUK pacifiers would be better for her son's "oral health" and that the term "orthodontic" communicated to her that it would be safe for her son to use as compared to a traditional pacifier. (Caparelli Dep. 38:14-16; 43:12-44:1, ECF No. 115-6 at 9-10.) She further testified that she believed the term "orthodontic" to refer to a preventative quality in Defendants' Products that would help her son's "oral health," "keep his teeth aligned" and "not be damaging," and understood that it "was better for his mouth." (Caparelli Dep. 75:18-80:21, Kilpela Suppl. Decl. Ex. 2, *id.* at 16; Caparelli Dep. 37:11-12, ECF No. 115-6.) Indeed, when pressed on Defendants' contention that the term "orthodontic" refers merely to the shape, Ms. Caparelli was clear that was

---

[3] "Orthodontic Pacifier" is prominently displayed on the front of each pacifier package in the top left corner below the NUK brand name. (Opp'n at Ex. 2, ECF No. 115-2.) Until the end of 2017, the front of the packaging also included a representation about "Healthy Oral Development." Plaintiffs have proffered substantial common evidence as to the meaning of "orthodontic," and the ultimate answer to the question is for the jury.

not the case distinguishing the term "orthodontic" from a "natural fit." (Caparelli Dep. 88:13-19, *id.* at 18.)

Ms. Benson's testimony similarly reflects an understanding of the term "orthodontic" that goes well beyond Defendants' assertions. Specifically, Ms. Benson testified that the term "orthodontic" communicated to her that the pacifier was not going to harm her child's teeth. (Benson Dep. 54:8-13, ECF No. 115-5 at 5.) Ms. Benson also noted that the orthodontic benefits she expected from Defendants' pacifiers were in addition to the soothing benefits she sought. (Benson Dep. 58:5-15, *id.* at 6.) Finally, like Ms. Caparelli, Ms. Benson was clear that the orthodontic benefits were distinct from the mere shape of the pacifier and that the term indicates the product "won't interfere with teeth development or growth." (Caparelli Dep. 59:15-23; 75:17-76:1, *id.* at 14, Kilpela Suppl. Decl. Ex. 2.) Plaintiffs believed, falsely, that the Products provided oral health benefits. As detailed below, class certification is appropriate.

## II.    ARGUMENT

### A.    COMMON EVIDENCE DEMONSTRATES THAT DEFENDANTS' ORTHODONTIC PACIFIERS ARE NOT, IN FACT, "ORTHODONTIC"

Plaintiffs have proffered the requisite expert testimony for class certification regarding the meaning of "orthodontic" to reasonable consumers (they claim it describes the unique shape of their Orthodontic Pacifiers, full stop) (Opp'n 3, 24, 27). Common evidence demonstrates reasonable consumers, including Plaintiffs, understood "orthodontic" means the Orthodontic Pacifiers were safe and beneficial to dental health, oral and orofacial health and development.[4]

Defendants improperly maintain Plaintiffs fail to answer the final merits question as to *whether* the Orthodontic Pacifiers are safe and beneficial to children's dental health, oral and

---

[4] Critically for purposes of the instant motion, the question of whether the Orthodontic Pacifiers provide any orthodontic benefit is capable of classwide proof. This question of fact should not be decided at class certification.

orofacial health and development as Plaintiffs have not proffered an "expert" on the subject. (Opp'n 15-17). Defendants misstate the record and the law.[5]

Though relevant and demonstrative that the issues in this case can be resolved through the use of common evidence, Plaintiffs' claims do not rise or fall on the scientific literature cited in their Complaint.[6] *Clark v. Bumbo Int'l Trust*, No. 15 C 2725, 2017 WL 3704825 (N.D. Ill. Aug. 28, 2017), is inapposite. At issue in *Bumbo* was a 118-word marketing representation (referred to by the court as "the Quote") on the defendant's website conveying numerous, specific developmental benefits of the defendant's floor seat for babies. *Bumbo*, 2017 WL 3704825, at *1. Unlike in *Bumbo*, Plaintiffs here allege that Defendants' use of a particular, prominent term on the principal display panel in marketing pacifiers is misleading to reasonable consumers. Consumers' understanding of that term and Defendants' age-related representations are the crux of this litigation. And unlike in *Bumbo*, *see id.* at *8, Plaintiffs provide ample evidentiary proof relevant to predominance based on that legal theory.[7]

Further, even if Plaintiffs are foreclosed from conducting further discovery in preparation

---

[5] The first reason that Defendants' argument fails is that Plaintiffs have maintained (and every status report submitted with the Court confirms the parties' understanding) that expert discovery has not yet concluded. While the parties have conducted all fact discovery to date, the parties have expressly *only* conducted expert discovery "as to class certification." Plaintiffs' Motion satisfies their burden to demonstrate the existence of common evidence to answer common questions. Upon the Court's decision on class certification, the parties may desire to conduct additional limited trial expert discovery. However, even if no additional expert discovery is conducted, Plaintiffs will be able to proceed to trial upon the evidentiary record as it stands and can call additional witnesses at trial to prove their claims.

[6] That body of scientific literature, much of which predates 1998 and is admissible under Federal Rule of Evidence 803(16), provides an important backdrop to Defendants' misrepresentations. As longtime, leading pacifier manufacturers, Defendants are aware of the well-documented risks of prolonged pacifier use while continuing to falsely market their pacifiers as "orthodontic" products. (FAC ¶¶ 41, 89.)

[7] At the class certification stage, the evidence proffered by the plaintiff in *Bumbo* was scant. *See Bumbo Int'l Trust*, 2017 WL 3704825 at *8 n.12. Notably, with respect to the question of materiality of the misleading marketing, the court found lacking precisely the type of survey evidence produced by Plaintiffs here. *See id.* at *7 ("The most straightforward way for plaintiff to [have submitted evidence showing that the Quote was material to purchasers] would have been to use survey evidence showing that consumers understood the Quote in the way that plaintiff did . . . .").

for trial,[8] all of the record evidence uniformly supports the conclusion that Defendants' Orthodontic Pacifiers are not harmless and provide no orthodontic benefit. Plaintiffs, moreover, can, and will, call witnesses at trial (orthodontists and/or dentists, for example) to testify to the detrimental impact of prolonged pacifier use on the oral and orofacial health and development of children. Plaintiffs, not Defendants, will decide how to prove their claims at trial. At this juncture, Plaintiffs need only establish that those claims will be proven with common evidence.

Lastly, Defendants conflate Plaintiffs' burden on the merits and their burden at class certification. A decision on the merits of any of the common questions at issue is inappropriate. *See Messner v. Northshore University HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012). Plaintiffs may rely on any evidence (fact or expert) including testimony (from lay or expert witnesses) to prove their class claims on summary judgment or at trial.[9] If Defendants want to challenge the admissibility[10] or substance of that evidence, they are welcome to do so when the time comes.

### B. THE PROPOSED CLASSES ARE READILY IDENTIFIABLE

Defendants are not in possession of Orthodontic Pacifier sales records. On this basis, Defendants attempt to evade class certification and, therefore, liability on a class basis. Their

---

[8] The parties jointly submitted expert discovery schedule explicitly referred to deadlines for expert disclosures "as to class certification." (ECF No. 91.) In the Court's November 9, 2020 order setting the expert discovery schedule for class certification, the Court also repeatedly referred to expert disclosures "as to class certification" (ECF No. 92.) In their June 1, 2021 joint status report, which references the November 9, 2020 order, the parties proposed a briefing schedule for class certification. (ECF No. 98.)

[9] Defendants take liberties with the court's dicta in *Freeman v. MAM USA Corp.*, No. 1:20-cv-01834, 2021 WL 1103350 (N.D. Ill. Mar. 23, 2021), a motion-to-dismiss stage decision (where the majority of the plaintiffs' claims survived) involving similar claims against a pacifier manufacturer. In concluding that the plaintiff adequately pled a claim under the ICFA, the court cautioned that any "**debate over the merits of the [pacifier] studies must await summary judgment or trial**," and further noted that "fact or expert discovery [might] undermine [the plaintiff's] allegation about the harm to children over 24 months, but that is **not a pleading-stage debate**." *Id.* at *9 (emphasis added). The court reached no definitive conclusion about the need for expert testimony on pacifier studies, and certainly not at the class certification stage.

[10] Defendants' citation to *Zboralski v. Sanders*, No. 06 C 3772, 2010 WL 3024885 (N.D. Ill. July 29, 2010), a factually distinct Section 1983 case decided on summary judgment, is both off-base and premature. "The Seventh Circuit has not spoken on the issue of whether the rules [of Evidence] apply at the class certification stage." *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 145-46 (N.D. Ill. 2017) (citation omitted).

position is untenable and the perverse incentives to any would-be product manufacturer are obvious. As in *Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009),[11] class certification is appropriate where the end-users purchase the defendant's product from a third-party retailer because "[w]here [a defendant's] records may be insufficient, provision of notice can supplement class identification efforts." *Pella*, 257 F.R.D. at 476.

"For a class to be ascertainable, there must be a showing by plaintiff that **some method** exists to identify the members." *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 579 (N.D. Ill. 2014)*. When a court is conducting a "careful and balanced application of the Rule 23(a) and (b)(3) requirements" it is sufficient and that, "District courts should [] insist that the class definition satisfy the established meaning of ascertainability by defining classes clearly and with objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015). Moreover, it is permissible for class members to identify themselves through affidavits. *Id.* at 669.

Thus, Plaintiffs are simply required to define the Classes clearly and with objective criteria. They have done so.[12] There is no ambiguity in the terminology used in the class definitions. *See Pella*, 257 F.R.D. at 477. Class identification is feasible and permissible through notice by publication[13] and self-identification by plaintiff affidavits. *See Pella*, 257 F.R.D. at 476; *Mullins*, 795 F.3d at 669 ("Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has direction to allow class members to identify themselves with their own

---

[11] Because *Pella* involved a certain variety of defective Pella windows, self-inspection by the homeowner coupled with verification by photograph were deemed appropriate contributors to the class identification process, in addition to the use of available sales records and publication by notice. *Pella*, 257 F.R.D. at 477.

[12] Defendants' argument about consumers who may have received their first Orthodontic Pacifier as a gift or free sample is a red herring. The Classes are defined to include purchasers only. By definition, then, the Classes would not include consumers who did not purchase an Orthodontic Pacifier but instead received one as a gift, but would include consumers (otherwise included in the Classes) who received a first pacifier as gift or sample but then purchased an Orthodontic Pacifier during the Class Period.

[13] When class members' names are unknown, "courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins*, 795 F.3d at 665 (citation omitted).

testimony and to establish mechanisms to test those affidavits as needed."); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).

Class membership is also based on objective criteria—specifically: (i) whether a person purchased one or more Orthodontic Pacifier, (ii) the state in which the person purchased the Orthodontic Pacifier, and (iii) when they purchased the Orthodontic Pacifier. *See, e.g.*, *Kumar v. Salov N. Am. Corp.*, No. 14-cv-2411-YGR, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016). Moreover, identification of Class members in this case can take place at the claims administration stage with self-identification using, *inter alia*, sworn affidavits, claim forms, receipts, and other purchase records. *See, e.g.*, *Mullins*, 795 F.3d at 667; *Kumar*, 2016 WL 3844334, at *7 (certification of class permissible when members certify their purchase by affidavit); *see also McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243, *8 (C.D. Cal. Jan. 13, 2014) ("[T]he class definition clearly defines the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase.").

Erroneously relying on *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006),[14] Defendants argue that the Class is not ascertainable because: (1) Class members' purchase decisions may have had a variety of motivating factors; and (2) Defendants did not receive customer complaints about their deceptive marketing and labeling.[15] (Opp'n 20-21.) Defendants cannot, however, identify a single case where ascertainability was found lacking on these bases.

---

[14] The class in *Oshana* included purchasers of fountain Diet Coke, which contained different ingredients than bottled Diet Coke. The court denied certification because there was no common evidence that class members were deceived—the class included those who knew fountain Diet Coke had saccharin and bought it because of or in spite of that fact and, therefore, were not deceived. *Oshana*, 472 F.3d at 514. Those facts simply do not exist here. *In re Sears, Roebuck & Co. Tools Mktg. and Sales Litig.*, Nos. 05 C 4742, 05 C 2623, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) is also inapposite. Unlike here, that case involved putative class members who never saw the alleged misrepresentations. *Id.* at *5.

[15] While consumer complaints *can* serve as common evidence as class certification, it is certainly not required to certify a class, and it strains credulity to suggest that the alleged *lack* of consumer complaints (on an representation Plaintiffs have alleged was deceptively included on packaging) defeats class certification.

Instead, a class is readily defined where, as here, the alleged misrepresentation appears on all product packaging[16] and, therefore, all class members are exposed to the misrepresentation. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013); *Ebin*, 297 F.R.D. at 569; *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014) (certifying a class where "in-store purchasers that were exposed to the allegedly deceptive packaging could have been injured by it, even if it turns out later that a few were not").[17]

With respect to the proposed ten-state classes, this Court and others have previously found the consumer protection laws of these states to be sufficiently similar to warrant multi-state class treatment despite subtle (inevitable) variations. *See, e.g.*, *Mullins v. Direct Digital, LLC*, No. 13 CV 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015). The State laws are sufficiently similar, and Defendants' arguments fall apart upon closer inspection:

- Defendants assert that a presumption of reliance does not arise under California law if class members are exposed to different information, but provide no explanation as to how that distinction matters in a case such as this one involving uniform packaging and labeling misrepresentations.
- The *Mullins*, *Mednick I*, and *Suchanek* decisions cited in Plaintiffs' Motion demonstrate that any differences related to causation, scienter, or materiality under Illinois, California, Massachusetts, Michigan, or Missouri law do not preclude multi-state class treatment. Where scienter or wrongful intent is required, it is a common question.
- No two state consumer fraud statutes are identical in how they define deceptive conduct, but these subtle differences do not preclude multi-state class treatment.
- Differences in statutes of limitations and allowable damages do not defeat multi-state class certification for the reasons set forth in Plaintiffs' opening brief.

---

[16] Defendants' attempt to dispute this fact (Opp'n 21) is meritless. Defendants' Rule 30(b)(6) witness testified to the uniformity of the "orthodontic" representation on all pacifier packaging, and Defendants did not correct her testimony on an errata sheet. It is also telling that Defendants cannot identify and attach as an exhibit a single exemplar of product packaging where "orthodontic" is not used.

[17] Defendants' single exemplar of a screenshot from a Wal-Mart website (where the product packaging was not displayed) is insufficient to sink certification. (Opp'n 21.) Pacifiers are purchased repeatedly by parent-consumers, so any Class member who purchased an Orthodontic Pacifier online from a website where the product packaging was not displayed would be uninjured only if they made no prior in-store Orthodontic Pacifier purchases during the Class Period, and no subsequent Orthodontic Pacifier purchases (in-store or online) after having viewed the packaged product (initially purchased online) complete with the "orthodontic" misrepresentations. Common sense dictates that there would be few, if any, such class members.

The ten-state Multi-State Consumer Protection Class and Subclass[18] should be certified.

### C.    PLAINTIFFS' PROPOSED CLASSES ARE SUFFICIENTLY COHESIVE

Defendants submit that individualized issues predominate with respect to: (1) exposure to packaging; (2) interpretation of packaging; (3) causation; and (4) actual injury or damages. (Mot. 22-28.) Plaintiffs' litany of hypothetical individualized issues, however, is irrelevant because the question of whether the Orthodontic Pacifiers labeling is misleading is based upon an <u>objective</u> standard. *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *12 (N.D. Cal. Sept. 25, 2018) ("The consumer claims require an *objective* test, asking what the reasonable consumer would believe or think upon exposure to the misleading statement.") (emphasis in original); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *55 (N.D. Ill. Mar. 31, 2017) ("Reliance can be presumed, or at least inferred, when the omission is material, which is based on the **objective reasonable consumer standard**.") (citation and quotation marks omitted) (emphasis added); *Mednick*, 320 F.R.D. at 148 ("[T]he reasonable person standard calls for an **objective analysis**") (emphasis added). Because Defendants ignored the objective reasonable consumer legal standard, each of Defendants four arguments regarding predominance fail, as described below.

*First*, as discussed in Section II (Mot. 2-6), Plaintiffs viewed and relied upon Defendants' false and misleading labeling at the point of purchase. The common evidence confirms Defendants uniformly labeled the Orthodontic Pacifiers as "orthodontic" during the class period and that those claims misled reasonable consumers: "over 90% of consumers perceived the "Orthodontic" claim on the Defendants' Products to mean the Products will promote healthy oral development and are

---

[18] Defendants suggest that alleged overlap in the Classes defeats certification. However, membership is clearly defined by objective criteria: the only difference being the age of the child at the time of purchase—a simple objective inquiry. That Classes may ultimately yield different damage amounts (*i.e.*, those who purchased for a child *over* 24 months may have additional damages) does not defeat certification. The Court can always certify the larger class of "all purchasers" and decline to include a Subclass.

safe and beneficial for children over the age of 24 months," and for "at least 9 in 10 consumers, the "Orthodontic" claim was material to their purchase decisions." (Dennis Report ¶ 66 (emphasis added).) Defendants' arguments to the contrary rely on misleadingly presented citations. Consistent with, and further supportive of, the common evidence, Plaintiffs alleged[19] *and* testified[20] they saw the packaging and relied upon the labeling to make their purchases.

Most critically, ███████████████████████████████████████████████████

███████████████████████████. *See* Wolf Dep. at 59:24-25; 60:2-18; 60:22-25, ECF No.

115-1 at 8 (███████████████████████████████████████████████████

███████████████████████████). *See, e.g.*, *Broomfield*, 2018 WL 4952519, at *11-12

(predominance satisfied where beer packaging conveyed variations of the theme that beer was brewed in Hawaii, when it was not). As a general principle, courts in consumer protection cases will "presume class members who purchased products with misleading packaging . . . were exposed to misleading statements on that packaging." *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 WL 2325426, at *18 (N.D. Cal. May 8, 2018) (collecting cases); *Id.* at *10 ("In the case of allegedly misleading packaging, 'an inference of reliance arises as to the entire class' if each member of the class was exposed to the misleading packaging.").

Plaintiffs present ample common evidence showing that a reasonable consumer's understanding of the "orthodontic" misrepresentation connotes that the pacifier promotes healthy oral development or prevents dental malocclusions, which is false and misleading. Plaintiffs do not need to prove their entire case at class certification. Rather, they need only present evidence to

---

[19] *See, e.g.*, FAC ¶¶ 21, 26. ("Plaintiff Benson purchased the NUK 'orthodontic' pacifier because she believed, based on the representations made by Defendants, that the "orthodontic" pacifier would improve dental health outcomes, including oral and orofacial health and development."); FAC ¶ 26 ("Had Plaintiff Caparelli[] known the truth about Defendants' misrepresentations and omissions at the time of purchase, Plaintiff Caparelli[] would not have purchased Defendants' 'orthodontic' pacifier for her child who was nearly four years old at the time of the purchase or would have paid less for the pacifier.").

[20] *See* Section I, *supra*, at 5; Section II.C. *infra* at 13.

show that these issues can be adjudicated together. *See, e.g.*, *Rikos*, 2014 WL 11370455, at \*3; *Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMX), 2018 WL 11223465, at \*8-9 (C.D. Cal. Oct. 18, 2018). Plaintiffs need only demonstrate with common evidence that Defendants' marketing is *likely* to mislead <u>a reasonable consumer</u>. *See Suchanek*, 764 F.3d at 762.

Defendants cite no law disputing this legal standard and it is improper to conduct the merits inquiry Defendants suggest at class certification. *See Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 594 (N.D. Ill. 2015), *aff'd sub nom.*, 831 F.3d 919 (7th Cir. 2016). Defendants' citation to *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 150 (N.D. Ill. 2017), is unavailing and demonstrates the weakness of their argument. In *Mednick* (and the progeny discussed therein), the plaintiffs indisputably did not view the alleged false advertising. *See id.* Those facts simply do not exist in this case. Instead, the common evidence in the record confirms: (1) Plaintiffs saw and relied upon the "orthodontic" front-of-package labeling at the point of purchase; and (2) ███████████ ████████████████████████. *See* Wolf Dep. at 59:24-25; 60:2-18; 60:22-25, ECF No. 115-1 at 8. Defendants simply cannot cite a single case that requires an understanding of every absent class member's purchasing behavior at class certification—because it does not exist.

*Second*, Defendants blatantly misstate the legal standard for class certification and suggest that each consumer's *interpretation* of NUK's packaging is required. "[E]lements of reliance and materiality in this case do not require individualized proof but rather create common questions of fact and law that predominate." *Broomfield*, 2018 WL 4952519, at \*11; *see also Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1116 (N.D. Cal. 2018) ("Plaintiff has no burden to establish that there is a uniform understanding among putative class members as to the meaning of the challenged health statements, or that all or nearly all of the class members shared any specific belief.") (citation and quotation marks omitted). Defendants stated, "Plaintiffs testified they understood 'orthodontic' refers to the shape of the nipple." (Opp'n 24.) Not only did Defendants

fail to cite to the record, but Defendants also mischaracterized Plaintiff Benson's testimony, *supra*.

*Third*, Defendants incorrectly assert that individualized issues overwhelm as to causation. A showing that there is a uniform material representation seen by class members (materiality being determined by the reasonable consumer standard), and that class members paid more for the product at issue as a result is sufficient. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 996 (C.D. Cal. 2015), *aff'd sub nom.* 674 F. App'x 654, 844 F.3d 1121 (9th Cir. 2017). Numerous courts have certified ICFA classes where, as here, plaintiffs show a material misrepresentation on a product label is capable of misleading reasonable consumers. *See, e.g.*, *id.* at 998; *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 65-66 (D.N.H. 2015) (certifying ICFA class and class-wide causation) (citations omitted); *Rikos*, 799 F.3d at 514-15; *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E.2d 6, 16 (Ill. App. Ct. 2011).

Defendants argue that this is not a "worthless product" case. (Opp'n 16.) It is worse.[21] When deception is perpetrated in a uniform manner against every member of the class, such as when all plaintiffs received virtually identical written materials from the defendants, courts typically hold that individual reliance questions do not predominate. *See Garner v. Healy*, 184 F.R.D. 598, 602 (N.D. Ill. 1999). "To establish proximate cause, Plaintiffs must demonstrate that their purchases occurred after the allegedly fraudulent statements were made, and that the alleged fraud 'directly or indirectly' injured Plaintiffs." *Id.* Again, "For at least 9 in 10 consumers, the "Orthodontic" claim was material to their purchase decisions of the Defendants' Products." (Dennis Report ¶ 66.) Under these circumstances, the "issues of proximate cause [are] relatively

---

[21] *See, e.g.*, FAC ¶ 43 ("Decades of research studies have established the relationship between prolonged non-nutritive oral habits like pacifier sucking and the development of **malocclusion** traits as well as alterations to oral myofunctional structures. More significant, however, are the **numerous studies that consistently demonstrate that there is no scientific evidence "to support the concept that the usage of orthodontic pacifiers is able to prevent malocclusion traits when compared to the usage of conventional pacifiers.**") (emphasis added).

simple to resolve on a classwide basis." *See Garner*, 184 F.R.D. at 602. In *Hadley*, a consumer fraud class action based on product packaging, the court confirmed that:

> deception and materiality . . . are governed by an objective "reasonable consumer" test. . . . Plaintiff "has no burden to establish that there is a uniform understanding among putative class members as to the meaning of" the challenged labeling, "or that all or nearly all of [the class members] shared any specific belief." . . . Plaintiff need only make "an objective showing of a probability that a 'significant portion' of the relevant consumers acting reasonably 'could be misled'" . . .

*Id.,* 324 F. Supp. 3d at 1116-18 (internal citations omitted). Here, Defendants' conduct is particularly egregious because even though Defendants knew that their pacifiers were not "orthodontic" (█████████████████████████████████████████████████████ █████████████, consistent with more than a century of medical literature), Defendants emphasized "oral health" on their labeling because the market research indicated such labeling would cause NUK's Orthodontic Pacifiers to sell better.[22]

*Fourth*, Defendants confusingly assert that "Plaintiffs have no 'evidentiary proof' that 'damages are capable of measurement on a classwide basis." (Opp'n 27.) Plaintiffs have presented expert testimony from Dr. Dubé, who has identified the choice-based conjoint analysis, which is one of the most widely used conjoint techniques in the world. (*See* Mot. at 22-24.) The conjoint analysis is used to measure consumers' willingness to pay, which is "the microeconomic measure

---

[22] The purpose of NUK's market research was stated as, ████████████████████████████ ████████████████████████████████ (NUK0000067, ECF No. 115-10), █████████████████████████████████████████████████ (NUK0007339, ECF No. 115-4). However, in this case, NUK's market research undermines NUK's legal position. ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (NUK0000073, ECF No. 115-10.) █████████████████████████████████████████████████ (NUK0000097, *id.*) ████████████████████████████████████████████████████████████████ █████████ (NUK0000112, *id.* (emphasis in original).)) ████████████████████████████████████████████████████████████████ ████████ (NUK0000125, *id.*)

of total incremental classwide economic value from the benefits associated with the Challenged Claims on the labels of the Challenged Products." (Dubé Report at ¶ 17.) These common issues easily will be the focus of trial, and accordingly, predominate over any individualized issues.

But even if there are any individualized issues regarding damages, which Plaintiffs do not concede, "[i]t has long been recognized that the need for individual damages determinations at a later stage of the litigation does not itself justify the denial of certification." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). "While damages may differ across class members, not every issue must be amenable to common resolution; individual inquiries may be required after the class phase. *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2020 WL 635972, at *5 (N.D. Ill. Feb. 11, 2020) (citation and internal quotation marks omitted).

### D. A CLASS ACTION IS THE SUPERIOR METHOD FOR ADJUDICATION

This is precisely the type of case where the class device is essential. *Mullins*, 795 F.3d at 658 ("These are cases where the class device is often essential 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)). Class members' geographically dispersed purchases of relatively inexpensive products—all bearing identical allegedly misleading labeling—make individualized litigation economically infeasible and practically impossible. See also *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (Emphasis in original).

### III. <u>CONCLUSION</u>

For the reasons set forth in Plaintiffs' Motion for Class Certification and this Reply, Plaintiffs respectfully request the Court grant Plaintiffs' Motion.[23]

---

[23] For the reasons discussed in their opening brief, Plaintiffs are adequate class representatives.

Dated: September 24, 2021                Respectfully submitted,

**CARLSON LYNCH, LLP**

By: */s/ Edwin J. Kilpela, Jr.*
     EDWIN J. KILPELA, JR.
     ekilpela@carlsonlynch.com
     **CARLSON LYNCH LLP**
     1133 Penn Avenue, 5th Floor
     Pittsburgh, Pennsylvania 15222
     Telephone: (412) 253-4996
     Facsimile: (412) 231-0346

     KATRINA CARROLL
     kcarroll@carlsonlynch.com
     111 W. Washington Street, Suite 1240
     Chicago, Illinois 60602
     Telephone: (312) 750-1265
     Facsimile: (312) 750-1591

     MELISSA S. WEINER
     mweiner@pswlaw.com
     **PEARSON, SIMON & WARSHAW, LLP**
     800 LaSalle Avenue, Suite 2150
     Minneapolis, Minnesota 55402
     Telephone: (612) 389-0600
     Facsimile: (612) 389-0610

     DANIEL L. WARSHAW
     dwarshaw@pswlaw.com
     **PEARSON, SIMON & WARSHAW, LLP**
     15165 Ventura Boulevard, Suite 400
     Sherman Oaks, California 91403
     Telephone: (818) 788-8300
     Facsimile: (818) 788-8104

     *Attorneys for Plaintiffs and the Proposed Class*