**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLI, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>NEWELL BRANDS INC. and GRACO CHILDREN'S PRODUCTS INC.,<br><br>              Defendants. | Case No.: 1:19-cv-06836<br><br>The Honorable Nancy L. Maldonado<br><br>Magistrate Judge Young B. Kim |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[REDACTED VERSION FILED ON PUBLIC DOCKET]**

994436.8

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ........................................................................................................ 1

II. THE COURT GRANTED CLASS CERTIFICATION .......................................... 1

III. PLAINTIFFS' EXPERT EVIDENCE CAN PROVE THEIR CASE AT TRIAL ................ 2

    A. Dr. Dennis' Survey ............................................................................................. 2

    B. Dr. Dean's Expert Opinions That the Products Are Not "Orthodontic".............................. 2

    C. Dr. Dubé Reliably Calculates Class-Wide Damages ............................................. 3

IV. PLAINTIFFS PRESENT DISPUTED FACTS FOR A JURY'S CONSIDERATION .......... 3

    A. Defendants' Mission to Create a Pacifier that Promotes Oral Development..................... 3

    B. There is Disputed Evidence as to the Importance of "Orthodontic" .................................. 4

    C. Plaintiffs' Testimony Supports Their Theory that Defendants' "Orthodontic" Claim is Misleading to the Reasonable Consumer .................................................................. 5

V. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER NUK PACIFIERS ARE "ORTHODONTIC" ................................................................... 6

VI. LEGAL STANDARD ................................................................................................. 7

VII. LEGAL ARGUMENT ............................................................................................... 7

    A. A Reasonable Jury Could Find that Defendants' "Orthodontic" Claim is Likely to Mislead a Reasonable Consumer ........................................................................... 8

       1. "Orthodontic" is Misleading on its Face—No Additional Proof is Required .............. 10

       2. There is Material Extrinsic Evidence in Dispute that Supports Plaintiffs' Theory that "Orthodontic" is Likely to Mislead a Reasonable Consumer ....................................... 11

          (a) Publicly Available Information.......................................................................... 12

          (b) Plaintiffs' Testimony ...................................................................................... 12

          (c) Defendants' Testimony ................................................................................... 13

          (d) Defendants' Documents.................................................................................. 13

          (e) Dr. Dean's Scientific Opinions ........................................................................ 13

          (f) Dr. Dennis' Consumer Surveys ....................................................................... 14

            (i) Dr. Dennis' Consumer Perception Survey Presents Material Evidence in Dispute .............................................................................................. 15

       3. Defendants' Hail Mary Attempt to Distinguish "Orthodontic" From "Orthodontic Shape" is Disingenuous at Best and Simply Creates a Genuine Issue of Material Fact ........... 17

    B. There is a Genuine Issue of Material Fact Regarding the Truth of the "Orthodontic" Descriptor on Defendants' Pacifiers ....................................................................... 18

       1. Dr. Dean's Research and Opinions show "Orthodontic" Pacifiers do Not Exist in Any Way Making Dennis's Definition(s) Inapplicable to Dean's Opinions........................ 18

2.     Dr. Dean Relied on Accepted Methods in Reaching his Opinions................................ 19

3.     Plaintiffs and the Class are not Pursuing a "Lack of Substantiation" Theory .............. 21

4.     Dr. Dean Concluded that No Pacifier is "Orthodontic".................................................. 21

C.    There is a Genuine Issue of Material Fact as to Whether the Term "Orthodontic" is Material ........................................................................................................................ 22

D.    Plaintiffs' Expert, Dr. Dubé, has Reliably Calculated the Injury Suffered...................... 24

E.    There is a Genuine Issue of Material Fact Regarding Proximate Cause ......................... 24

F.    Defendants are Not Entitled to Summary Judgment on any State Issues ........................ 26

1.     The Massachusetts 30-Day Letter Requirement Does Not Bar Plaintiffs' Claims........ 26

2.     Plaintiffs' Action Satisfies the Public Benefit Requirement Under Minnesota Law..... 27

3.     Plaintiffs' Are Entitled to Statutory Relief Under N.Y. Gen. Bus. Law §§ 349, *et seq*. 28

G.    Plaintiffs' Unjust Enrichment Claims Should Proceed.................................................... 30

VIII. CONCLUSION ................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
No. ML132438PSGPLAX, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ............................23

*Al Haj v. Pfizer Inc.*,
No. 17 C 6730, 2019 WL 3202807 (N.D. Ill. July 16, 2019) .................................7, 11, 12, 30

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
568 U.S. 455 (2013).................................................................................................................22

*Barclay v. Icon Health & Fitness, Inc.*,
No. 19-CV-2970, 2022 WL 486999 (D. Minn. Feb. 17, 2022) ..............................................28

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (2020).......................................................................................................8, 9, 14, 16

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ..........................................................................................12, 17

*Benson v. Newell Brands, Inc.*,
No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)....................................... *passim*

*Bielskis v. Louisville Ladder, Inc.*,
663 F.3d 887 (7th Cir. 2011) ................................................................................................24

*Connick v. Suzuki Motor Co., Ltd.*,
174 Ill. 2d 482 (Ill. 1996)......................................................................................................23

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....................................................................................................6, 18, 24

*Daugherty v. Page*,
906 F.3d 606 (7th Cir. 2018) ..................................................................................................7

*Diebler v. SanMedica Int'l, LLC*,
488 F. Supp. 3d 169 (D.N.J. 2020) ......................................................................................21

*Empire Today, LLC v. National Floors Direct, Inc.*,
788 F. Supp. 2d 7 (D. Mass. 2011) ......................................................................................21

*Farmer v. DirectSat USA, LLC*,
No. 08 CV 3962, 2013 WL 1195651 (N.D. Ill. Mar. 22, 2013) ............................................20

*Fitzpatrick v. Vital Pharm., Inc.*,
    No. 20-61121-CIV-SINGHAL, 2021 WL 6776238 (S.D. Fla. June 7, 2021).......................21

*Gates v. Bd. of Educ. of Chi.*,
    916 F.3d 631 (7th Cir. 2019) ................................................................................7

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
    191 F.3d 813 (1999)................................................................................8

*Johnson v. Bobcat Co.*,
    175 F. Supp. 3d 1130 (D. Minn. 2016)...................................................27

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ...................23

*Khoday v. Symantec Corp.*,
    858 F. Supp. 2d 1004 (D. Minn. 2012)..................................................27

*In re Kind LLC "Healthy and All Natural" Litig.*,
    No. 15-MD-2645 (NRB), 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022)................19

*Kraft, Inc. v. F.T.C.*,
    970 F.2d 311 (7th Cir. 1992) ...............................................................14

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) .............................................................21

*Lee v. Conagra Brands, Inc.*,
    No. CV 17-11042-NMG, 2021 WL 3131536 (D. Mass. July 23, 2021) ...............27

*In re Levaquin Prod. Liab. Litig.*,
    752 F. Supp. 2d 1071 (D. Minn. 2010)..................................................27

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ...................................................19

*Manpower, Inc. v. Ins. Co. of Penn.*,
    732 F.3D 796 (2013)..............................................................14, 20

*McKenna v. Wells Fargo Bank, N.A.*,
    693 F.3d 207 (1st Cir. 2012).................................................................26

*Mednick v. Precor, Inc.*,
    320 F.R.D. 140 (N.D. Ill. 2017).............................................................9

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) ...............................................................15

*Montera v. Premier Nutrition Corp.*,
No. 16-CV-06980-RS, 2022 WL 1225031 (N.D. Cal. Apr. 26, 2022)...................................15

*Montera v. Premier Nutrition Corp.*,
No. 16-CV-06980-RS, 2022 WL 1465044 (N.D. Cal. May 9, 2022)......................................29

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) ..................................................................................14

*Murrin v. Ford Motor Co.*,
303 A.D. 2d 475 (2d Dep't 2003) .........................................................................................30

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
107 Cal. App. 4th 1336 (2003) .............................................................................................14

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) ................................................................................................29

*Phillips v. Raymond Corp.*,
364 F. Supp. 2d 730 (N.D. Ill. 2005) ....................................................................................20

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013)....................................................................................21

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009)......................................................................................29, 30

*Schering Corp. v. Pfizer Inc.*,
189 F.3d 218 (2d Cir. 1999)..................................................................................................15

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010) ................................................................................................25

*SimplexGrinnell LP v. Integrated Systems & Power, Inc.*,
642 F. Sup. 2d 167 (S.D.N.Y. 2009) .....................................................................................30

*Skiba v. Ill. Cent. R.R. Co.*,
884 F.3d 708 (7th Cir. 2018) ..................................................................................................7

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ....................................................................................21

*State v. Living Essentials, LLC*,
436 P.3d 857 (Wash. Ct. App. 2019).....................................................................................21

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ....................................................................................... *passim*

*Suchanek v. Sturm Foods, Inc.*,
  No. 11-CV-565-NJR, 2018 WL 6617106 (S.D. Ill. July 3, 2018)..........................................23

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) .........................................................................16, 23

*Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*,
  68 F. Supp. 3d 917 (N.D. Ill. 2014) ......................................................................................25

*Weaver v. Champion Petfoods USA, Inc.*,
  3 F.4th 927 (2021)................................................................................................... *passim*

*White v. City of Chi.*,
  829 F.3d 837 (7th Cir. 2016) ..................................................................................................7

*Wiegel v. Stork Craft Mfg., Inc.*,
  780 F. Supp. 2d 691 (N.D. Ill. 2011) ...................................................................................30

*Zarinebaf v. Champions Petfoods USA, Inc.*,
  No. 18-C-6951, 2022 WL 980832 (N.D. Ill., Eastern Div. March 31, 2022).............11, 12, 14

*In re Zimmer Knee Implant Prod. Liab. Litig.*,
  No. 11 C 5468, 2015 WL 5050214 (N.D. Il. Aug. 25, 2015*)* .................................................20

**Statutes**

Mass. Gen. Laws ch. 93A § 9(3) ..............................................................................................26

N.Y. Gen. Bus. Law §§ 349, *et seq*...................................................................................28, 29

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................................................7

Karin Michele Schmid, *et al.*, *The effect of pacifier sucking on orofacial*
  *structures: a systematic literature review*, 19 Prog. Orthod. 1 (2018) ...................................20

**GLOSSARY OF TERMS**

| TERM | DESCRIPTION |
| --- | --- |
| Plaintiffs | Plaintiffs Shelly Benson and Lisa Caparelli, collectively. |
| Defendants | Defendants Newell Brands Inc. and Graco Children's Products Inc., collectively. |
| Orthodontic Pacifiers or Products | Defendants' "orthodontic" pacifiers at issue are sold under the NUK brand name and include the following products, as well as any other NUK-branded "orthodontic" pacifiers: NUK Orthodontic Pacifiers, NUK Space™ Orthodontic Pacifiers, NUK Latex Orthodontic Pacifiers, NUK Sports Orthodontic Pacifiers, NUK Confetti Orthodontic Pacifiers, NUK Fashion Orthodontic Pacifiers, NUK Sensitive™ Orthodontic Pacifiers, and NUK Juicy Orthodontic Pacifiers. |
| Weiner Decl., Ex. | Declaration of Melissa S. Weiner in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Oppositions to Defendants' Motions to Exclude the Testimony and Expert Reports of Professor Jean-Pierre H. Dubé, Dr. Jeffrey A. Dean, and J. Michael Dennis, Ph.D., filed concurrently herewith. Exhibits cited as "Ex. __". |
| Complaint | First Amended Complaint, ECF No. 31 (cited as "FAC ¶ __"). |
| Cert. Order | Memorandum Opinion and Order granting Plaintiffs' Motion for Class Certification, dated November 16, 2021 (ECF No. 126), *Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, at *1 (N.D. Ill. Nov. 16, 2021). |
| Motion, Mot. | Defendants' Motion for Summary Judgment (ECF No. 229) and Memorandum of Law (ECF No. 230). |
| Dean Opposition, Dean Opp. | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony and Expert Report of Dr. Jeffrey A. Dean, filed concurrently herewith. |
| Dennis Opposition, Dennis Opp. | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony and Expert Report of J. Michael Dennis, Ph.D., filed concurrently herewith. |
| Dubé Opposition, Dubé Opp. | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony and Expert Report of Professor Jean-Pierre H. Dubé, filed concurrently herewith. |
| Dennis Report | Declaration and Expert Report of J. Michael Dennis, Ph.D. (ECF No. 235-1). |
| Dennis Reply | Declaration and Expert Report of J. Michael Dennis, Ph.D., attached as Ex. 6. |
| SAMF | Plaintiffs' (Nonmovant) Local Rule 56.1(a)(2) Statement of Additional Material Facts, filed concurrently herewith. |
| Dean Report | Expert Report Dr. Jeffrey Dean (ECF No. 239-1). |
| Dean Rebuttal | Expert Rebuttal Report of Dr. Jeffrey A. Dean (ECF No. 238-5). |
| Schmid Review | Karin Michele Schmid, *et al.*, *The effect of pacifier sucking on orofacial structures: a systematic literature review*, 19 Prog. Orthod. 1 (2018) (ECF No. 237-9). |
| DSMF | Statement of Material Facts in Support of Defendants' Motion for Summary Judgment (ECF No. 232). |
| Dubé Cert. Report | Expert Report of Professor Jean-Pierre H. Dubé in support of Plaintiffs' Motion for Class Certification (ECF No. 108-2). |
| Dubé Merits Report | Expert Report of Professor Jean-Pierre H. Dubé (Merits) (ECF No. 243-5). |

## I.     <u>INTRODUCTION</u>

Summary judgment is a remedy appropriate only where it is *clear*, based on the evidence (or lack thereof), that the moving party cannot lose at trial. As demonstrated herein, the record evidence—including, most notably, Defendants' own documents and testimony—shows that Defendants marketed and labeled their pacifiers as "orthodontic" knowing that consumers, like Plaintiffs, would understand that term to mean that Defendants' pacifiers promoted oral development. Plaintiffs' expert testimony further supports the fact that consumers understood the message Defendants sought to convey, and that message mattered.

In addition, as discussed herein, Defendants knew, and Plaintiffs' expert Dr. Dean confirms, that there are no positive oral health outcomes from using an "orthodontic" pacifier. Instead, Defendants' Products do not promote oral development, and, worse, cause dental malocclusions. Furthermore, Plaintiffs' experts have demonstrated, through sound and accepted economic principles, that consumers were harmed by Defendants' representations and paid far more than they would otherwise have been willing to pay for Defendants' Products.

In short, Plaintiffs' have built an evidentiary record that creates a triable issues of material fact on each and every key issue in this matter and summary judgment is inappropriate given the high bar to achieve such a ruling. Indeed, in many instances, Defendants' motion improperly seeks to relitigate issues previously decided by Judge Guzman. Defendants' Motion must be denied.

## II.     <u>THE COURT GRANTED CLASS CERTIFICATION</u>

In its Order granting class certification, the Court acknowledged that "the central issue in the case is whether defendants' packaging and marketing was likely to mislead a reasonable consumer." Cert. Order at *8. The Court also acknowledged that proof of the key inquiries in this case can be presented with evidence common to the Class. *Id.* at *5. Considering the common evidence presented at class certification, Judge Guzman found the following:

- "Neither Benson nor Caparelli was asked whether she understood that the term "orthodontic" referred *exclusively* to the shape of baglet, and it is clear from the rest of

their testimony that they purchased defendants' pacifiers based on their belief that the term is a claim that NUK pacifiers promote healthy oral development." *Id.* at \*6.

- "The question of whether NUK packaging was likely to mislead a reasonable consumer is an objective question." *Id.*
- Defendants presented undeveloped criticism of Dr. Dennis' survey, and such criticism "goes to the weight at the merits stage and does not alter the Court's conclusion that plaintiffs can use common proof to establish materiality." *Id.*
- Dr. Dubé presented a conjoint analysis with a marketplace simulation that matches plaintiffs' theory of liability. *Id.* at \*4-5.

## III. PLAINTIFFS' EXPERT EVIDENCE CAN PROVE THEIR CASE AT TRIAL

### A. Dr. Dennis' Survey

Dr. Dennis, an expert in survey design, designed and conducted his consumer perception survey in this case using his extensive experience and according to leading scientific principles. Dr. Dennis' survey demonstrated that over 90% of consumers perceived the "orthodontic" claim to mean the Products will promote healthy oral development, help prevent jaw or teeth misalignment, and are safe and beneficial for children over the age of 24 months. Dennis Report ¶¶ 21, 66; Dennis Reply ¶¶ 5, 6. Dr. Dennis also found that perceptions of the "orthodontic" descriptor do not vary statistically by the target market: the survey findings are statistically indistinguishable for the Products marketed for use by babies aged 0-6 months, young children aged 6 to 18 months, and young children aged 18 to 36 months. Dennis Report ¶ 22.

Dr. Dennis also conducted a materiality survey, which—███████████ ██████████—showed that the "Orthodontic" descriptor was material for 91.5% of the consumers and that only 5% of consumers would prefer to purchase the Products without the "Orthodontic" descriptor. *Id.* ¶ 26; Dennis Reply ¶ 44.

### B. Dr. Dean's Expert Opinions That the Products Are Not "Orthodontic"

Dr. Dean, an expert in the field of orthodontics, opined that "[p]acifiers cannot be 'orthodontic' as they are not medical devices and they do not prevent or treat malocclusions or promote oral development." Dean Report ¶ 35. Furthermore, Dr. Dean concluded "pacifiers, including so-called 'orthodontic' pacifiers, have been shown to lead to malocclusions when used frequently and over a prolonged period of time, that is past the age of 18 to 24 months." *Id.* ¶ 18.

Based on his expertise and experience, Dr. Dean is of the firm opinion that "labeling a pacifier as 'orthodontic' is inappropriate, misleading, and not supported by research." *Id*. ¶ 36.

In forming his opinions, Dr. Dean relied on three systematic reviews that examined the health effects of both traditional and "orthodontic" pediatric pacifier use. *Id*. ¶¶ 25-30. Additionally, Dr. Dean reviewed and relied on various policy statements from the leading pediatric healthcare organizations, not to mention his vast experience and expertise. *Id*. ¶¶ 23, 24, Ex. 1.

### C. Dr. Dubé Reliably Calculates Class-Wide Damages

Dr. Dubé, an expert in the fields of marketing and economics, endeavored to "isolate the economic damages associated with the use of the term "orthodontic" on the labels of NUK's pacifier products." Dubé Cert. Report ¶¶ 5-6. █████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████ SAMF 35. As detailed in the concurrently filed opposition to motion to exclude, Dr. Dubé reliably calculated class-wide damages based on Plaintiffs' and the Class members' overpayment for the Products.

## IV. PLAINTIFFS PRESENT DISPUTED FACTS FOR A JURY'S CONSIDERATION

### A. Defendants' Mission to Create a Pacifier that Promotes Oral Development

Since the company's inception, and starting with its name, "NUK," derived from the German words for natural and orthodontic (Natürlich Und Kiefergerecht), DSMF ¶ 1, ███████

███████████████████████████████████████ SAMF 3. Orthodontics is commonly understood as a "branch of dentistry dealing with irregularities of the teeth (such as malocclusion) and their correction (as by braces)." SAMF 2. Indeed, "orthodontic" derives from "ortho," meaning straight or erect, and "dont" meaning teeth. SAMF 1.

Defendants' central message that their Products have a positive impact on oral development was consistently delivered on the Products' packaging during the entire Class period.

The standalone phrase "Orthodontic Pacifier" has appeared in prominent letters at the top of the package during the entire class period. SAMF 34. Moreover, the specific phrase "healthy oral development" appeared on NUK pacifier packaging for at least six years. *Id*.

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Prior to this litigation, █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████   ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

**B.**     <u>**There is Disputed Evidence as to the Importance of "Orthodontic"**</u>

In her testimony on behalf of the company, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[1] ███████████████████████████████████████████████

████████████████████████████     ███████████████████

█ ████████████████████████████████████████████████

████████████████████████████████████████████████████



Defendants thus specifically targeted new mothers' interest in an "orthodontic" pacifier: "(b)eware of those pacifiers with round nipples they use in the hospital. Instead, choose a NUK Orthodontic Pacifier and support your baby's healthy oral development." SAMF 31.

### C. Plaintiffs' Testimony Supports Their Theory that Defendants' "Orthodontic" Claim is Misleading to the Reasonable Consumer

Plaintiffs' testimony confirms that Defendants' labeling was a material driver influencing purchase behavior and was likely to mislead a reasonable consumer. When asked why she chose NUK, Plaintiff Benson stated "on the packaging like it says like helps soothe baby, helps calm baby, orthodontic pacifier. So then I thought orthodontic, dental, its safe for her to use." SAMF 15. In addition, Plaintiff Caparelli testified that as her son got older, she made the switch to a NUK pacifier because she "saw the packaging and it led me to believe that this was the best pacifier.

---

³ ███████████████████████████████████████
███████████████████████████████████████
███████████████

With many different pacifiers and the amounts of money and from what this packaging said, orthodontic and the reasons, that it was orally better for him to have." SAMF 18.

Plaintiffs chose to purchase Defendants' Orthodontic Pacifiers because of their mistaken belief that they were beneficial or less harmful to their children's oral development as compared to other pacifiers. SAMF 15-17 (Plaintiff Benson testified that she understood an orthodontic product to mean "that it is safe for oral development," "and that the shape, it fits in the mouth so that it won't interfere with teeth development or growth."); 18-22 (Plaintiff Caparelli testified that she believed an "orthodontic product" to be both "corrective" and "preventative." And would keep her child's "teeth where they are supposed to be" and "prevent him from having future problems," "keep his teeth aligned" and "not be damaging," and understood that it "was better for his mouth."). Benson confirmed "orthodontic" in reference to shape meant it was safe for oral development. SAMF 14.

## V.    THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER NUK PACIFIERS ARE "ORTHODONTIC"

Dr. Dean provides credible expert opinions regarding the Products' inability to live up to their "orthodontic" label. Dr. Dean concludes that the "the use of the word "orthodontic" is inappropriate and misleading on the packaging and advertising of NUK Orthodontic pacifiers" because "(p)acifiers cannot be "orthodontic" as they are not medical devices and they do not prevent or treat malocclusions or promote oral development." SAMF 23.



SAMF 13. Even Defendants' own expert— whose unfounded conclusions are the subject of a *Daubert* motion for their lack of any scientific foundation, *see* ECF No. 223—does not conclude a pacifier can improve oral health outcomes and

only goes so far to state, an "orthodontic pacifier" is merely *designed* to reduce the likelihood of malocclusions developed from pacifier use. SAMF 24. At a minimum, a genuine issue of material fact exists as to whether Defendants' Products are "orthodontic."

## VI.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). The court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* "At this juncture, the court must assume the truth of those facts, but does not vouch for them." *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2019 WL 3202807, at *1 (N.D. Ill. July 16, 2019); *see also Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

## VII.   LEGAL ARGUMENT

Defendants offer a fictitious standard of proof for this false advertising action at summary judgment. *See* Mot. at 10-12 (suggesting Plaintiffs are required to (1) define the term "orthodontic," and (2) prove that reasonable consumers were deceived). The Seventh Circuit has made clear: "A label is deceptive if it is *likely to mislead a reasonable consumer in a material*

*respect*, even if it is not literally false."[5] *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (2020) (citing *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014) (emphasis added)). Thus, "summary judgment is appropriate 'if no reasonable jury could find that defendants' labels are likely to mislead reasonable consumers.'" *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 934-35 (2021) (citing *Beardsall*, 953 F.3d at 976). If "the representations at issue are not misleading on their face when taken in context, to survive summary judgment [Plaintiff] must [] offer[] evidence that a reasonable consumer would be materially misled." *Id.* at 939.

Thus, Defendants face a high burden to establish that summary judgment is an appropriate remedy where, like here, there is a dense disputed record of material facts. "In light of [any] conflicting testimony, and because we must draw all inferences against the moving party, we find that the disposition of [an] issue is properly left to the trier of fact." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 825 (1999).

## A. A Reasonable Jury Could Find that Defendants' "Orthodontic" Claim is Likely to Mislead a Reasonable Consumer

This is a consumer protection class action arising out of Defendants' false and misleading advertising of their "orthodontic" pacifiers. FAC ¶¶ 1, 32-42; Cert. Order at *2. The key question for the jury, as confirmed by Judge Guzman, is whether Defendants' uniformly presented claim that their pacifiers are "orthodontic" was likely to mislead the reasonable consumer. *See* Cert. Order at *11 (quoting *Suchanek*, 764 F.3d at 758); *see also Id.* at *9.[6] Contrary to Defendants' representations, there is no requirement that a plaintiff in a false advertising case such as this both *define* a reasonable consumer's understanding of a term and, then, *prove* the alleged deception.

Thus, a jury will only need to determine whether Defendants' claim that their pacifiers are "orthodontic" was misleading to a "reasonable consumer," which is defined as "a significant

---

[5] Plaintiffs contend that materiality is a second step in the analysis. *See* Section VII.C below.
[6] Defendants, of course, deny the allegations. As there is a disputed issue of material fact, their Motion must fail. *See* Section IV above.

portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances …" *Weaver*, 3 F.4th at 937 (citing *Beardsall*, 953 F.3d at 973 and *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). That central question for the jury is virtually identical in the ten states that comprise the certified Multi-State Consumer Protection Class, Cert. Order at *16, requiring proof that the defendant's conduct could deceive a reasonable consumer. *See Suchanek*, 764 F.3d at 756 (stating that the "same legal standards govern every class member's claim"). This burden of proof has been affirmed and applied by federal courts consistently under each state statute. *See* Plaintiffs' Motion for Approval of Trial Plan, ECF No. 169 at 9. The reasonable consumer question is undeniably for the jury,[7] and the standard is not in dispute. *See* Mot. at 11 (confirming the reasonable consumer per *Beardsall*).[8]

As detailed in Section VII.B below, there is significant disputed evidence in the record for a jury to conclude that Defendants' uniform "orthodontic" descriptor was likely to mislead the reasonable consumer because pacifiers do not promote oral development or prevent bite problems, and, rather, have been shown to lead to dental malocclusions—the true inquiry for the jury. *See* Dean Report ¶¶ 35-36.

Even if Defendants are correct that Plaintiffs must present the existence of disputed evidence on the *objective definition* of "orthodontic" to survive summary judgment (they are not), the record contains substantial evidence—outside of, and including, Dr. Dennis' survey— demonstrating the common understanding of "orthodontic" by reasonable consumers.[9] That

---

[7] *See Beardsall*, 953 F.3d at 973 ("This determination of the likelihood of deception "is an impressionistic one more closely akin to a finding of fact than a conclusion of law."") (citing *Suchanek*, 764 F.3d at 762); *see also* ECF No. 169 at pp. 6, 9-10.

[8] At a minimum, a genuine issue of material fact exists regarding a reasonable consumer's understanding, which must be left to the factfinder. *See Mednick v. Precor, Inc.*, 320 F.R.D. 140, 152 (N.D. Ill. 2017) (citing *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239 (S.D. Ill. 2015)).

[9] Defendants argue that because there is no FDA-approved definition of "orthodontic" it somehow makes it impossible for Plaintiffs to prove the understanding of a reasonable consumer, but this makes no sense. The fact that there is no definition actually creates a genuine issue of material fact that only a jury can resolve. *See Mednick*, 320 F.R.D. at 152 (citing *Suchanek*, 311 F.R.D. 239). Defendants cannot have their cake and eat it too—they cannot claim that there is no generally accepted meaning of the term "orthodontic" to escape liability in court (Mot. at 12), ███████

evidence starts with the objective etymology and dictionary definitions. SAMF 1, 2. Additionally, Plaintiffs present the testimony of Benson and Caparelli, as individuals and Class Representatives of the Certified Class, confirming they understood "orthodontic" to mean beneficial to oral health. *See* Section IV.C above; SAMF 15-17, 19-21. Finally, the obvious meaning of "orthodontic" is found in Defendants' documents and testimony. *See* Section VII.A.1 below.

Defendants' manufactured confusion around the alleged lack of an objective definition for "orthodontic" runs contrary to Defendants' stated purpose— ███████████████████ ████████████████████████████████████ which is communicated uniformly through their Product labels. SAMF 6, 34. To that end, "Orthodontic Pacifier" is prominently displayed on the front of each pacifier package in the top left corner below the NUK brand name. SAMF 34. And, until the end of 2017, the front of the packaging also included a representation about "Healthy Oral Development." SAMF 34; *see also* SAMF 4, 5, 29. ████████████████ ████████████████████████████████████████████████████ █████████████████ █████████ Accordingly, disputed evidence exists as to the common question of whether a reasonable consumer could be misled by "orthodontic."

    1.    <u>"Orthodontic" is Misleading on its Face—No Additional Proof is Required</u>

When advertising is "clearly misleading on its face[,]" no extrinsic evidence is required to substantiate the allegation. *Weaver*, 3 F.4th at 935. Because orthodontic has a facially obvious understanding, calling a pacifier "orthodontic" is false and misleading on its face. "The derivative of the term "orthodontic" is from "ortho," meaning straight or erect, and "dont," meaning teeth." SAMF 1. A dictionary defines orthodontics, as read into the record at Melissa Wolf's 30(b)(6) deposition, as a "branch of dentistry dealing with irregularities of the teeth (such as malocclusion) and their correction (as by braces)." SAMF 2. Thus, the reasonable consumer purchasing a pacifier

---

████████████████████████████████████████████████████████████████████ ██████████████████████

SAMF 7-12, 25-30.

could be misled by orthodontic on its face given the disputed evidence regarding pacifiers' impact on oral development (*see* Section III.B above).[11]

        2.      <u>There is Material Extrinsic Evidence in Dispute that Supports Plaintiffs' Theory that "Orthodontic" is Likely to Mislead a Reasonable Consumer</u>

To the extent that the "orthodontic" claim is not misleading on its face, extrinsic evidence must be offered to support the claim that a reasonable consumer would be misled. *See Weaver*, 3 F.4th at 939. At summary judgment, courts in the Seventh Circuit have allowed various categories of extrinsic evidence, including testimony, data, understanding of the challenged term, definitions of the challenged term, surveys, expert opinions, and copy tests of advertisements. *See, e.g.*, *Suchanek*, 764 F.3d at 762; *Zarinebaf v. Champions Petfoods USA, Inc.*, No. 18-C-6951, 2022 WL 980832, at *8 (N.D. Ill., Eastern Div. March 31, 2022).

In *Suchanek*, the plaintiffs "offered three surveys showing that consumers expected one product (roasted and ground coffee beans) and received something different that they viewed as inferior (instant coffee)." *Suchanek*, 764 F.3d at 753-54. The court "reversed summary judgment because the surveys created a genuine issue of material fact as to whether the defendant's packaging was likely to mislead reasonable consumers." *Id.* at 762.

*Al Haj* is likewise instructive. In *Al Haj*, the court found that "to be deceptive . . . a package need 'not contain literal falsehoods'; rather, it need only be 'likely to mislead a reasonable consumer.' *Id.*, at *5 (quoting *Suchanek*, 764 F.3d at 761-62). In further holding that "a jury should decid[e] the question whether the packaging was likely to mislead reasonable consumers,'" *id.*, at *9, the court considered evidence such as defendant's own market research that indicated that "quite a few" customers would be willing to spend more money on the allegedly mislabeled product because they perceived it to work better and to provide more value. *Id.*, at *3. Like in

---

[11] *See* Cert. Order at *11 n.8 ("plaintiffs' claims in the instant case are straightforward—that **defendants' representations are misleading on their face**—and based on specific uniform product labeling that NUK pacifiers are "orthodontic" and suitable for the age range stated on the packaging." (emphasis added)).

*Suckanek* and *Al Haj*, where many categories of disputed evidence exist as to common questions, the Court should deny summary judgment.

(a)    *Publicly Available Information*

As stated above, Plaintiffs have offered the etymology (SAMF 1) of the term "orthodontic," as well as the dictionary definition (SAMF 2) in support of the meaning of "orthodontic" to a reasonable consumer. *See also* Section VII.A.1 above. This objective evidence will be of high importance to a jury in making the final determination on whether a reasonable consumer could be misled by Defendants' labeling.

(b)    *Plaintiffs' Testimony*

Plaintiffs' testimony further supports the record of evidence demonstrating that Defendants' "orthodontic" labeling is likely to mislead a reasonable consumer. Here, Plaintiffs offer the sworn testimony of Plaintiffs Benson (SAMF 15-17) and Caparelli (SAMF 18-22) as Class Representatives of the Certified Class as yet another piece of the holistic puzzle. Plaintiffs contend that their testimony is indicative and representative of "what a reasonable consumer would actually understand." *Zarinebaf*, 2022 WL 980832, at *8. And, when viewed as a whole and in a light most favorable to the non-moving party, substantiates the claims sufficient to withstand the Motion and raise the genuine issues of material fact with the jury.

That evidence includes Plaintiffs' decision to purchase Defendants' Orthodontic Pacifiers because of their mistaken belief that they promote healthy oral development. SAMF 15-17 (Benson); SAMF 18-22 (Caparelli). Plaintiffs contend that all Class members had the same or similar understanding,[12] which was reasonable under the circumstances. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) ("What matters most is how real consumers

---

[12] This case is not analogous to *Weaver*, where the only evidence regarding representations that <u>were not</u> misleading on their face was the plaintiff's own testimony. *See Weaver*, 3 F.4th at 936. Here, Plaintiffs offer far more evidence than is required in the form of publicly available information, Defendants' documents, Defendants' 30(b)(6) representative's deposition testimony, and three highly qualified experts. *See also* Section II above.

understand and react to the advertising.").

(c)     *Defendants' Testimony*

Melissa Wolf, Defendants' corporate witness, ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Thus,

if the pacifiers cannot deliver as promised (as the common evidence alleges), reasonable

consumers could have been misled.

(d)     *Defendants' Documents*

Defendants' own documents provide the concrete proof that the term "orthodontic" is

misleading to a reasonable consumer. Since the beginning and starting with its name, "NUK,"

which derives from the German words for natural and orthodontic Natürlich Und Kiefergerecht,

DSMF ¶ 1, Defendants set out to create and sell pacifiers ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

(e)     *Dr. Dean's Scientific Opinions*

Dr. Dean's expert opinions provide the final link between the record factual evidence and

the fact that, in his expert opinion, the Products are not "orthodontic." *See* Section III.B above;

SAMF 23 (Dr. Dean concluded that "the use of the word "orthodontic" is inappropriate and

misleading on the packaging and advertising of NUK Orthodontic pacifiers" because "(p)acifiers

cannot be "orthodontic" as they are not medical devices and they do not prevent or treat

malocclusions or promote oral development."). Furthermore, Dr. Dean concluded "pacifiers,

including so-called 'orthodontic' pacifiers, have been shown to lead to malocclusions when used

frequently and over a prolonged period of time, that is past the age of 18 to 24 months."

Accordingly, based on his expertise and experience, Dr. Dean is of the firm opinion that "labeling

a pacifier as 'orthodontic' is inappropriate, misleading, and not supported by research." *Id.*

(f)    *Dr. Dennis' Consumer Surveys*

"[E]xtrinsic evidence, as explained in Weaver and Beardsall, can include consumer surveys or market research." *Zarinebaf*, 2022 WL 980832, at *8 (citing *Weaver*, 3 F.4th at 938, and *Beardsall*, 953 F.3d at 976). The most convincing extrinsic evidence is a survey "of what consumers thought upon reading the advertisement in question," *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 314 (7th Cir. 1992) (citing Thompson Medical Co., 104 F.T.C. 648, 788 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1986)). However, "[a] district court usurps the role of the jury … if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology of the expert employed." *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3D 796, 806 (2013). "This is not to say that extrinsic evidence in the form of consumer surveys or market research is *always* needed for a plaintiff to survive summary judgment or judgment as a matter of law on a deceptive advertising claim." *Beardsall*, 953 F.3d at 976. (citing *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009) (emphasis original)).

Dr. Dennis' consumer perception survey evaluates a reasonable consumer's perception of Defendants' orthodontic descriptor. As discussed below and in Plaintiffs' concurrently filed Dennis Opposition, Ph.D., Dr. Dennis' survey is scientifically reliable and will assist the trier of fact.[13] And, the results of the survey are particularly relevant to the issues raised by Defendants in their Motion. Specifically, Dr. Dennis found the following:

- "In my expert opinion, my consumer survey provides a reliable and accurate measurement of (i) the extent to which class members understand the "Orthodontic" claim on the Defendants' Products to communicate that the Products promote

---

[13] While Plaintiffs have produced evidence in the form of a consumer survey, Plaintiffs do not need survey evidence to demonstrate a reasonable consumer may be misled. *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 890 (N.D. Cal. 2016); *see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1348 (2003) ("The falsity . . . of advertising claims may be established by testing, scientific literature, or anecdotal evidence.") (emphasis added)).

healthy oral development and are safe and beneficial for children over the age of 24 months, and (ii) whether the challenged "Orthodontic" claim is material to the purchasing decisions of reasonable consumers of the Defendants' Products."

- "My survey found that over 90% of consumers perceived the "Orthodontic" claim on the Defendants' Products to mean the Products will promote healthy oral development and are safe and beneficial for children over the age of 24 months. For at least 9 in 10 consumers, the "Orthodontic" claim was material to their purchase decisions of the Defendants' Products."

- "Accordingly, my survey reliably demonstrates that a reasonable consumer interprets the Nuk product packaging to communicate the Products will promote healthy oral development and that the "Orthodontic" claim is material to consumers' decisions to purchase Nuk branded pacifiers."

Dennis Report ¶¶ 65-67. Dr. Dennis' survey and the results thereof are especially helpful to the trier of fact, and should be for the jury to weigh at the appropriate time.

(i)      Dr. Dennis' Consumer Perception Survey Presents Material Evidence in Dispute

As explained fully in Plaintiff's concurrently filed Dennis Opposition, Dr. Dennis' consumer perception survey is relevant, reliable, and will assist the trier of fact in determining whether a reasonable consumer could be misled by Defendants use of "orthodontic." Dr. Dennis' sought to measure consumers' perceptions of the "orthodontic" descriptor as displayed on Defendants' Products. Dennis Report ¶ 17; Dennis Reply ¶ 5. Specifically, Dr. Dennis sought to determine whether consumers understand the Product's packaging to communicate that the Products help promote healthy oral development. *Id*. Defendants argue that Dr. Dennis failed to determine how reasonable consumers understand the term "orthodontic" and criticize Dr. Dennis' survey design and methodology. Not only do Defendants' arguments lack merit, but all of their criticisms go to the weight of the evidence, not its admissibility. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 228 (2d Cir. 1999); *Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1225031, at *5 (N.D. Cal. Apr. 26, 2022).

Defendants' main criticisms of Dr. Dennis' survey are: (1) his use of closed-ended questions, and (2) the survey design, including the presentation of "orthodontic" and his alleged

failure to test additional packaging language. These arguments are all without merit, as fully briefed in the Dennis Opposition. Thus, Dr. Dennis' survey is admissible and presents yet another category of evidence regarding the misleading nature of Defendants' "orthodontic" claim.

*Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1022-23 (C.D. Cal. 2018), is unhelpful. In *Townsend*, the court determined that where an expert used non-label statements (*e.g.*, "safe consumption" v. "consumer responsibly") as the tested language in a survey, the results were irrelevant and unreliable. Here, Dr. Dennis showed survey respondents the identical packaging language at issue with near identical overall package design, with the exception of the brand, which was intentionally omitted to avoid bias. *See* Dennis Report at p. 14; *see also* Dennis Opp. at 6-8.

Defendants' argument that Dr. Dennis failed to meet the standard in *Beardsall* is likewise unavailing. Mot. at 15. Dr. Dennis designed his survey to simulate consumers' real-world shopping experience. This was accomplished by Dr. Dennis' extensive use of packaging images from the actual Products to replicate consumers' real-world experience, but with slight modifications to prevent respondents from associating the survey images with the Defendants' Products. Dennis Report ¶ 44; Dennis Reply ¶¶ 53-55. For example, Dr. Dennis removed the "NUK" brand logo, and changed the color of the packaging. *Id*. Dr. Dennis included other attributes from the packaging of Defendants' Products including, but not limited to, the same shape of the packaging, design of the age descriptor, and a clear window showing the pacifiers. *Id*. Had Dr. Dennis used actual, unmodified images of Defendants' Products' packaging, survey responses would have pre-conceived beliefs which would bias the survey.

Defendants' reliance on *Weaver* is also misplaced. In *Weaver*, the court did not have a consumer survey or any expert opinion to consider. Here, Dr. Dennis' consumer perception survey and expert opinions show that over 90% of consumers perceived the "orthodontic" claim on Defendants' Products to mean the Products will promote healthy oral development or prevent teeth misalignment. Again, Defendants raise the red herring argument that Dr. Dennis failed to use the

word "shape" in his questioning. Mot. at 18. However, not only does this argument completely misinterpret Plaintiffs' theory of the case, but it is further undercut by disputed evidence. *See* Section VII.A.3 below.

Based on the foregoing, Plaintiffs have presented significant record evidence that will aid a jury in determining whether Defendants descriptor "orthodontic" misled reasonable consumers.

### 3. Defendants' Hail Mary Attempt to Distinguish "Orthodontic" From "Orthodontic Shape" is Disingenuous at Best and Simply Creates a Genuine Issue of Material Fact

In an apparent Hail Mary attempt, Defendants suggest the insertion of the noun "shape" in place of "pacifier" somehow materially alters a reasonable consumers' understanding that the pacifiers promote oral development.[14] This circular argument is non-sensical. The court in *Bell*, rejected a similar argument where the court was tasked with reviewing whether the claim that "100% Grated Parmesan Cheese" was deceptive. The court held that "'100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." 982 F.3d at 477. The court highlighted the very sort of conduct Defendants attempt here: "Deceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning." *Id.* Here, the pacifiers are advertised and marketed as "orthodontic." That specialized, scientific term has been applied to all of Defendants Products. Defendants cannot cherry pick label representations and claim they further define "orthodontic shape" while at the same time disputing that other label representations (supported by their own internal documents), such as promotes healthy oral development, *do not* define "orthodontic."

More problematic for Defendants' argument, however, is the fact that Defendants' own documents demonstrate that "orthodontic shape" simply describes the manner by which the pacifiers promote oral development (*i.e.*, the shape). *See* SAMF 36 ("Orthodontic nipple shape…to

---

[14] It runs contrary to common sense that "orthodontic" has multiple meanings or "orthodontic pacifier" holds a wholly different meaning from "orthodontic shape," as Defendants use the term "orthodontic" in various places on the same label.

help prevent teeth misalignment"). At a minimum, which is more than enough to survive summary judgment, Plaintiffs have presented disputed evidence for a jury to consider. *Id.*

B. **There is a Genuine Issue of Material Fact Regarding the Truth of the "Orthodontic" Descriptor on Defendants' Pacifiers**

Defendants use a combination of factual distortion and inapplicable legal theory to argue that summary judgment is appropriate in this case. Defendants primarily reiterate their arguments against the admission of the Plaintiffs' pediatric dental expert Dr. Jeffrey A. Dean's opinions from their *Daubert* Motion. *See* ECF No. 237. For a more thorough recitation of Defendants' ill-founded logic refer to the contemporaneously filed Dean Opposition.

As an initial matter, Defendants inaccurately state that "Plaintiffs must still clear the second hurdle of showing that the 'orthodontic pacifier' description on NUK's packaging was actually false under either of Dennis' proposed definitions of that descriptions." Mot. at 20. This, however, is not the standard as Plaintiffs must present reliable evidence (*i.e.*, the expert opinions of Dr. Dean) to support their theory. They do.

1. Dr. Dean's Research and Opinions show "Orthodontic" Pacifiers do Not Exist in Any Way Making Dennis's Definition(s) Inapplicable to Dean's Opinions

Through the submission of Dr. Dean's expert opinions, Plaintiffs delivered on the instructions in the Court's class certification order, presenting scientific evidence "about the effects of pacifiers on oral development . . ." Cert. Order at *4; *see also* *10 ("Proving plaintiffs' allegations … will require expert testimony on the effect of pacifier use on children's oral development."), *11.

In his report, Dr. Dean examined numerous academic sources in concluding "that no pacifier is orthodontic because they do not promote oral development or prevent bite problems . . . ." Dean Report ¶ 3. Dr. Dean further concluded that "[p]acifiers cannot be 'orthodontic' as they are not medical devices and they do not prevent or treat malocclusions or promote oral

development." *Id.* ¶ 35. Dr. Dean's Rebuttal Report was equally resolute—"prolonged pacifier use indisputably increases the rise of malocclusion in children, and, thus, they are not 'orthodontic.'" Dean Rebuttal ¶ 17; *see also* ¶¶ 43, 54. Dr. Dean concluded that "the use of the term 'orthodontic' in association with NUK pacifiers is unfounded, misleading, and inconsistent with everything known about the negative impact of pacifier use by children." *Id.* ¶ 58.

Defendants rely, again, on *In re Kind LLC "Healthy and All Natural" Litigation*, No. 15-MD-2645 (NRB), 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022). That decision is unhelpful. The *In re Kind* court criticized the plaintiff's liability expert for failing to consult the survey expert's definition of "All Natural," when <u>there was no commonly understood definition for "All Natural" and the record was devoid of evidence of either expert's purported definition</u>. As further support for its exclusion of plaintiff's liability expert, the court explained, "[n]ot only does Dr. Toutov apply an irrelevant standard, but large portions of his report apply that standard to irrelevant ingredients." *Id.*, at *16.

Here, Dr. Dean, after reviewing the established literature on a single topic (orthodontic pacifiers) and, additionally, bringing his considerable experience to bear on the question, concluded that no pacifier should be labeled "orthodontic," as pacifiers do not prevent or treat malocclusions or promote oral development. This conclusion precisely matches Plaintiffs' theory of deception. Also unlike *In re Kind*, the record here contains the link between Defendants' "orthodontic" label and the obvious consumer understanding—oral health benefits.

2.     <u>Dr. Dean Relied on Accepted Methods in Reaching his Opinions</u>

Defendants argue that "Dean's opinions cannot show that NUK orthodontic pacifier packaging is deceptive, because Dean did not study NUK pacifiers at all." Mot. at 21. This is not a ground to grant summary judgment, because "exact correlation is not necessary but the samples must be fair congeners." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005). Here, Dr. Dean used systematic reviews, policy statements from national groups,

and his decades of pediatric dental experience to opine regarding the impossibility of an orthodontic pacifier.

"[A] systematic literature review uses formal search methods to allow a researcher to obtain a neutral 'snapshot' of the existing research on a particular question." *In re Zimmer Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2015 WL 5050214, *3 (N.D. Il. Aug. 25, 2015*); see also Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 1195651, *9-10 n.6 (N.D. Ill. Mar. 22, 2013) (noting an expert's failure to "systematically or scientifically review" data as a rationale for excluding expert's report). The use of systematic reviews in forming an opinion is permitted and does not diminish the reliability of the opinions rendered. "[T]he process of analyzing assembled data while using experience to interpret the data is not illicit; an expert need not actively conduct his or her own tests to have a valid methodology." *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 743 (N.D. Ill. 2005) (citing *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999)).

As Dr. Dean explained, "[h]igh quality and low risk of research bias is extremely valuable in any scientific undertaking." Dean Report ¶ 19. Dr. Dean relied on systematic reviews in crafting his report because "they are a form of research that provides a summary report on a specific question, using explicit methods to search critical appraisals and synthesizes the world's literature systematically." *Id.* ¶ 20; *see also* Dean Report ¶ 20; Dean Rebuttal ¶¶ 53-57 (explaining use of systematic reviews to eliminate bias). Systematic reviews are a powerful tool because they aggregate all rigorous scholarly work in an area—the particular underlying studies delve into the granular data Defendants seek to require. Second, at least one of the systematic studies directly includes information regarding NUK pacifiers. *See* Schmid Review, 5-6.

Defendants attempt to have the Court "usurp[] the role of the jury. . .[by] unduly scrutiniz[ing] the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc.*, 732 F.3d at 806. Here, as explained in Plaintiffs' Opposition to Dean Daubert, Defendants attempt to have the Court leave its role of trier

of law and invade the province of the trier of fact. Once the Court determines Dr. Dean used proper methodology under Rule 702, any issues regarding the underlying data used in the opinion is an issue for cross examination, not summary judgment.

### 3.    Plaintiffs and the Class are not Pursuing a "Lack of Substantiation" Theory

Defendants struggle to craft a colorable argument that this is a "lack of substantiation" case since it is so clearly not. *See* Mot. at 22-23. Tellingly, Defendants do not include a single citation to Plaintiffs' Complaint or the record to show where this argument was allegedly asserted.

"A plaintiff can 'show that an advertisement is deceptive either by proving its falsity or by showing that its proponent lacked a reasonable basis for asserting its truth.'" *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 666 (N.D. Ill. 2016) (quoting *F.T.C. v. Sabal*, 32 F. Supp. 2d 1004, 1007 (N.D. Ill. 1998)). If establishing deception under the second method, a plaintiff must show the claim implies there is substantiation. *See Spector*, 178 F. Supp. 3d at 666. Dr. Dean's opinions clearly state Defendants' "orthodontic" representation is deceptive <u>because no pacifier is orthodontic</u> (*i.e.*, providing its falsity). This is *not* a case where Plaintiffs allege Defendants' use of "orthodontic" is misleading because they cannot substantiate the claim. Rather, Dr. Dean opines that the relevant scientific evidence—that specifically examines and discusses "orthodontic" pacifiers—confirms that no pacifier should be labeled "orthodontic," as pacifiers do not prevent or treat malocclusions or promote oral development. Thus, this argument should be ignored.[15]

### 4.    Dr. Dean Concluded that No Pacifier is "Orthodontic"

---

[15] Defendants' case law for the other states in the multi-state class regarding "lack of substantiation" is equally inapplicable as every state that has meaningfully considered the issue differentiates between completely false representations and representations that do not have substantiation. *See, e.g.*, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1094 (9th Cir. 2017); *Fitzpatrick v. Vital Pharm., Inc.*, No. 20-61121-CIV-SINGHAL, 2021 WL 6776238, at *5 (S.D. Fla. June 7, 2021); *Diebler v. SanMedica Int'l, LLC*, 488 F. Supp. 3d 169, 180 (D.N.J. 2020); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (denying motion to dismiss under a "lack of substantiation" theory because "plaintiffs allege the . . . statement is affirmatively false because, as a matter of scientific fact, it is impossible"); *Empire Today, LLC v. National Floors Direct, Inc.*, 788 F. Supp. 2d 7, 27 (D. Mass. 2011); *State v. Living Essentials, LLC*, 436 P.3d 857, 865-68 (Wash. Ct. App. 2019).

Defendants attempt to improperly limit Dr. Dean's opinions as applying only to children aged 18 to 24 months. *See* Mot. § II.C. This grossly distorts Dr. Dean's expert opinions, which address the central question of whether any pacifier can be "orthodontic." *See* Dean Rebuttal ¶ 2 ("**no pacifier is orthodontic** because they do not promote oral development or prevent bite problems . . . use of the term orthodontic wrongly implies they will assist with or promote healthy oral development or prevent dental malocclusions" (emphasis added)). The fact that Dr. Dean's conclusions in that regard are based on the proven fact that prolonged use of *any* pacifier past 18 to 24 months increases the risk of malocclusions (which Defendants do not dispute) does not mean his opinions are limited to that age range (they are not). Rather, that conclusion forms the basis that calling any pacifier "orthodontic" is false and misleading because *all* pacifiers can and will cause harm, in precisely the same way.

### C. There is a Genuine Issue of Material Fact as to Whether the Term "Orthodontic" is Material

Defendants ignore the common evidence described above and submitted to this Court (Cert. Order at *3) ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ [16] While Plaintiffs must simply present evidence in dispute sufficient to establish their claim at summary judgment, they could even prove materiality at this stage if required. Judge Guzman has already found that materiality will naturally follow the jury question as to a reasonable consumer's likely deception as "the claims of every class member will rise or fall on the resolution of the question of whether defendants' packaging was likely to deceive a reasonable consumer." Cert Order at *6; *see also Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455 (2013). Because all of the consumer protection statutes at issue rely upon an objective, reasonable consumer standard, this is a question capable of class-wide resolution on class-wide evidence.

---

[16] SAMF 7-12, 25-30.

The law is clear that "a challenged statement need not be the sole or even dominant factor in consumers' purchasing decisions" *Townsend*, 303 F. Supp. 3d at 1045 (C.D. Cal. 2018).[17] In *Suchanek*, the district acknowledged that where the deception was made in a uniform manner, class-wide evidence was permitted to determine "whether the deception was crucial to the purchasing decision." *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR, 2018 WL 6617106, at *12 (S.D. Ill. July 3, 2018) (quoting *Ackerman v. Coca-Cola Co.*, No. 09 CV 395(DLI), 2013 WL 7044866, at *20 n.30 (E.D.N.Y. July 18, 2013)).

Defendants incorrectly state that Dr. Dennis' survey is the only evidence in dispute with respect to materiality. Rather, there is a mountain of evidence—discussed in Sections III, IV and VII.A.2 above— ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████ Additionally, Plaintiffs have submitted qualified and scientifically reliable opinions from two experts. Dr. Dubé—for the purpose of validating the use of conjoint analysis—confirmed that the term "orthodontic" is important to consumers. ████████████ ████████████████████████████████████████████ ████████████████████████████ This is precisely what is required, (Mot. at 27, citing *Townsend*, 303 F. Supp. 3d at 1045).[18]

Defendants' citation to *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 505 (Ill. 1996), fares no better. Plaintiffs have clearly and consistently alleged that they would not have purchased the Orthodontic Pacifiers, or would have paid less for them, but for the "orthodontic" claim. *See, e.g.*, TAC ¶¶ 18, 21, 26, 95. And Dr. Dubé used scientifically reliable methodologies to figure out

---

[17] Defendants cite to this California case, but conveniently leave out this important statement by the court.

[18] Defendants' citations to *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014), and *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML132438PSGPLAX, 2017 WL 2559615, at *5 (C.D. Cal. June 7, 2017), support the same rule of law, which Plaintiffs have clearly met here.

just how important (material) the "orthodontic" claim was to Class members (reasonable consumers, *see* Section IV.A.1 above), even calculating the price premium attributable to the challenged claim. *See* Dubé Merits Report ¶ 19.

Dr. Dennis's survey also overwhelmingly demonstrated consumers' preference to purchase the products with the term "orthodontic." Dennis Report ¶ 26 ("I conclude that the 'Orthodontic' descriptor was material for 91.5% of the consumers (n-201)."). Dr. Dennis concluded that the "survey reliably demonstrates that a reasonable consumer interprets the Nuk product packaging to communicate the Products will promote healthy oral development and that the 'Orthodontic' claim is material to consumers' decisions to purchase Nuk branded pacifiers." *Id*. at ¶ 67.

Based on the foregoing, as well as the evidence set forth herein and in the contemporaneously filed documents, Plaintiffs have established that the "orthodontic" claim was material to reasonable consumers. At a minimum, a disputed issue of material fact exists as to this issue and, therefore, it should be left to the jury to decide.

### D.      Plaintiffs' Expert, Dr. Dubé, has Reliably Calculated the Injury Suffered

Defendants' entire argument challenging Plaintiffs' evidence of injury is a brief restatement of the Motion to Exclude Testimony and Expert Report of Professor Jean-Pierre H. Dubé. ECF No. 241. As more fully set forth in the concurrently filed opposition thereto, Dr. Dubé, an indisputably qualified expert in conjoint analysis and econometric who offered scientifically reliable opinions that match Plaintiffs' theory of liability and will assist the trier of fact. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 588 (1993); *Bielskis v. Louisville Ladder, Inc*., 663 F.3d 887, 893 (7th Cir. 2011). His methodology is well-reasoned and widely accepted. For the reasons more fully set forth in the opposition, Dr. Dubé should not be excluded and, therefore, Plaintiffs have satisfied the injury requirements to survive summary judgment.

### E.      There is a Genuine Issue of Material Fact Regarding Proximate Cause

This is Defendants' third time attempting to argue the issue of proximate cause in this case.

First, Defendants unsuccessfully raised the issue at class certification. Judge Guzman found the causation issue simple: "plaintiffs' claims in the instant case are straightforward—that defendants' representations are misleading on their face—and based on specific uniform product labeling that NUK pacifiers are 'orthodontic' . . . ." Cert. Order at *11, n.8. Judge Guzman further found that, "[h]ere, plaintiffs acknowledge that NUK pacifiers were effective in pacifying their children, but they allege that defendants' marketing misled them into believing that the pacifiers promote healthy oral development," *id*., at *12, and likened this matter to *Suchanek*, 764 F.3d 750, 761, because both cases concerned deception as to the nature of the product. *Id*., at **12-13.

Second, in their opposition to Plaintiffs' proposed trial plan, Defendants again raised the proximate cause issue. This second attempt was even less persuasive than the first—they relied on older, out of district cases even though the Court clearly followed the Seventh Circuit authority. *See* Defendants' Opposition to Plaintiff's Motion for Approval of Trial Plan, ECF No. 172 at 22-25 (citing *Siegel v. Shell Oil Co*., 612 F.3d 932 (7th Cir. 2010), and *Boulet v. Nat'l Presto Indus., Inc*., No. 11-cv-840-slc, 2012 WL 12996298, at *5 (W.D. Wis. Dec. 21, 2012)).

Now, Defendants attempt to litigate this issue for a third time.[19] Again, Defendants rely on *the same case* that pre-dates *Suchanek*; *Siegel v. Shell Oil Co*., 612 F.3d 932 (7th Cir. 2010). As previously discussed, *Siegel* is entirely factually distinguishable. In *Siegel*, the court found the plaintiff failed to satisfy proximate causation because he "[could not] show that the defendants' conduct caused him to purchase their gasoline . . ." 612 F.3d 932 at 937. Here, in stark contrast, Plaintiffs have alleged and have evidence supporting the fact that they (and Class members) were induced to pay a premium price for the Products due to Defendants' misleading use of the term "orthodontic." That harm is intrinsically tied to Plaintiffs' theory of liability, and they have

---

[19] Defendants' conduct is impermissible Defendants had a full opportunity to thoroughly brief the issues at class certification. *See generally Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc*., 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) ("However, denial of a motion to file a surreply is appropriate when the movant has had the opportunity to thoroughly brief the issues."). For this reason alone, the Court should reject Defendants' tardy argument.

(through Dr. Dubé) calculated the significant price premium associated with Defendants' misleading use of the term. Dr. Dubé's findings also support Plaintiffs' claim that Defendants' use of the term orthodontic was incredibly meaningful in inducing purchase of the Products.

Although Plaintiffs have established causation through the work of Dr. Dubé, Defendants argue that Dr. Dennis is the reason that proximate cause cannot be established. Mot. at 28-29. The arguments presented against Dr. Dennis are wrong for the reasons set forth herein (VII.A.2(f) above), as well as in the Dennis Opposition.

Plaintiffs have alleged since the outset of this litigation that the "orthodontic" descriptor was the proximate cause of their injury. Dr. Dubé confirmed this and calculated the price premium attributed thereto using a scientifically reliable methodology. Plaintiffs have established causation and any further question on this issue is one for the trier of fact. *See Suchanek*, 764 F.3d at 759.

**F.**     **Defendants are Not Entitled to Summary Judgment on any State Issues**

        1.     The Massachusetts 30-Day Letter Requirement Does Not Bar Plaintiffs' Claims

Defendants contend that they are entitled to summary judgment, because Mass. Gen. Laws ch. 93A § 9(3) requires a written demand letter to be served on prospective defendants at least 30 days prior to filing suit. Nonetheless, pursuant to its clear statutory language, the 30-day demand letter requirement "*shall not apply* if the claim is asserted by way of counterclaim or cross-claim, or *if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth* . . ." Mass. Gen. Laws ch. 93A § 9(3) (emphasis added); *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 218 (1st Cir. 2012). Defendants make no argument and present no evidence that they maintain a place of business or keep assets within the commonwealth. That is unsurprising, because Plaintiffs allege that Defendants' principal place of business is in New Jersey and Wisconsin. *See* FAC ¶¶ 27-28. Therefore, Defendants cannot avail themselves of

the 30-day demand letter requirement, they have failed to satisfy their burden,[20] and they are not entitled to summary judgment on Plaintiffs' Massachusetts claims. *See, e.g.*, *Lee v. Conagra Brands, Inc.*, No. CV 17-11042-NMG, 2021 WL 3131536 (D. Mass. July 23, 2021).[21]

      2.    <u>Plaintiffs' Action Satisfies the Public Benefit Requirement Under Minnesota Law</u>

While Minnesota's consumer protection statute requires that a plaintiff demonstrate that his or her action benefits the public interest, examining the requested relief is but one consideration, and is not dispositive to the inquiry. *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1142 (D. Minn. 2016); *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012). Courts may also look to "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged representation; . . . and whether the alleged misrepresentations are ongoing." *Id.*

In *Johnson*, for example, the district court held that the plaintiff satisfied the public benefit requirement, despite previously finding that plaintiff was not entitled to injunctive relief, as this Court previously determined here. 175 F. Supp. at 1142. Specifically, the court found significant that (i) the alleged misrepresentations by defendant "were disseminated to the public at large"; (ii) the misrepresentations were ongoing; and (iii) "if [plaintiff] and the purported class eventually prevail[ed] on the merits, money damages w[ould] 'benefit consumers through providing compensation and a deterrent effect.'" *Id.* at 1142-43; *see also In re Levaquin Prod. Liab. Litig.*, 752 F. Supp. 2d 1071, 1077-79 (D. Minn. 2010).

Here too, Plaintiffs have adequately shown this action satisfies the public benefit requirement. Plaintiffs have not only alleged that Defendants broadcast their misrepresentations to

---

[20] Defendants should be precluded from any attempt to introduce into the record via their reply brief any purported documentation or evidence showing assets in Massachusetts.

[21] In any event, notice and demand letters sent in May 2019—which is multiple months before the initial complaint was filed in this matter—put Defendants on notice of consumer protection claims regarding their "Orthodontic Pacifiers."

the public at large on the Product labels and through their marketing practices, *see* FAC ¶¶ 3, 30, 32, 36, but they also obtained certification of a multi-state class of hundreds of thousands of consumers who purchased NUK-branded Orthodontic Pacifiers. *See* Cert. Order at *3, *16. Defendants' misrepresentations are similarly ongoing, as they still promote their NUK-branded Orthodontic Pacifiers on their own website.[22] Most importantly, however, if Plaintiffs prevail on the merits, money damages will benefit Plaintiffs and the Class by providing compensation and may also have a deterrent effect by causing Defendants to redress the public safety hazard that results from use of the NUK Orthodontic Pacifiers. Thus, the fact that this Court previously found that Plaintiffs lacked standing to pursue injunctive does not preclude a finding that Plaintiffs have satisfied the public benefit requirement under Minnesota law. *See Barclay v. Icon Health & Fitness, Inc.*, No. 19-CV-2970 (ECT/DTS), 2022 WL 486999, at *13 (D. Minn. Feb. 17, 2022) (rejecting arguments that recovery of monetary damages for past harm (without prospective relief) coupled with advertisements disseminated to the general public insufficient to establish a public benefit). Defendants are not entitled to summary judgment on Plaintiffs' Minnesota claims.

3.     <u>Plaintiffs' Are Entitled to Statutory Relief Under N.Y. Gen. Bus. Law §§ 349, *et seq.*</u>

Plaintiffs have not waived their right to pursue statutory damages under N.Y. Gen. Bus. Law §§ 349, *et seq.* ("Section 349"). From the outset, Plaintiffs did not limit the relief they sought under any of the state consumer protection statutes, including Section 349, in the initial or operative complaints. *See* FAC ¶ 154; *see also* Compl., ECF No. 1 ¶ 148. Rather, statutory damages under Section 349 falls squarely within the requests for relief contained therein. Defendants are acutely aware of that reality, as they noted in their Chart of Consumer Protection Laws of Relevant States submitted as an exhibit in opposition to class certification that "actual damages or fifty

---

[22] *Orthodontic Pacifiers*, NUK, https://www.nuk-usa.com/pacifiers-oral-care/pacifier-collections/classic-orthodontic/ (last visited June 13, 2023).

dollars, whichever is greater" is available as a remedy under Section 349. *See* ECF No. 115-14; *Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1465044, at *2 (N.D. Cal. May 9, 2022) ("As a threshold matter, Plaintiff is required to prove actual damages at trial . . . . A determination of the amount of actual damages is necessary to ensure that the amount of statutory damages is indeed higher."). Having discussed actual economic damages in opposition to Defendants' motion to dismiss, *see* ECF No. 39 at 8-9, and having Dr. Dubé set forth a methodology capable of reliably and properly calculating classwide damages, *see* Section III.C above Plaintiffs are entitled to statutory relief under Section 349 because the actual damages are less than the fifty-dollars relief provided by Section 349.

Furthermore, Plaintiffs Benson and Caparelli are adequate to seek statutory damages on behalf of New York consumers who purchased Defendants' product. In addition to the fact that this Court previously certified a Multi-State Class and Subclass that included New York consumers, *see* Cert. Order at *4-5, 16, this Circuit permits multi-state consumer fraud classes to proceed, even without a class representative from each state in which a subclass is certified. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010). There, plaintiffs—citizens of Illinois, Iowa, Florida, New Jersey, California (and notably, not of New York)—moved to certify a statutory consumer fraud class[23] consisting of six state subclasses. *Saltzman*, 257 F.R.D. at 475. Even without a plaintiff from New York, the district concluded certification was appropriate because the consumer protection acts of the six states, including Section 349, had nearly identical elements. *Id.* at 392, 396. Importantly, the Seventh Circuit affirmed, noting that class treatment was appropriate where "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

---

[23] In *Saltzman*, plaintiffs alleged claims under the Illinois Consumer Fraud and Deceptive Businesses Practices Act and Substantially Similar Laws of Certain Other states, which included N.Y. Gen. Bus. Law §§ 349 *et seq*. *See Saltzman*, Dkt. No. 20 at 16 n.2.

The same applies here. This Court has already found that the elements underlying the consumer fraud statutes in this case, including Section 349, have sufficient common characteristics. *See* Cert. Order at *15. Akin to the out-of-state plaintiffs in *Saltzman*, Plaintiffs Benson and Carparelli are adequate to seek statutory damages under Section 349 on behalf of consumers who purchased Defendants' Products in New York.

Moreover, the cases cited by Defendants are distinguishable. *SimplexGrinnell LP v. Integrated Systems & Power, Inc.*, involved violations of the Lanham Act for false advertising. 642 F. Sup. 2d 167, 203 (S.D.N.Y. 2009). Specifically, defendant's representation, which was "not broadly made" and only reached "a single potential customer in New Jersey," was insufficient to support a false advertising claim under the Lanham Act, and as a subsidiary point, a claim under Section 349. *Id. Murrin v. Ford Motor Co.*, on the other hand, did not involve a class action lawsuit where an out-of-state plaintiff sought remedies on behalf of a class of New York consumers. *See* 303 A.D. 2d 475 (2d Dep't 2003). Rather, the lawsuit stemmed from a single plaintiff's injury who failed to allege the deceptive acts took place within the State of New York. *Id.* at 477. These cases cannot preclude Plaintiffs from seeking statutory damages.

### G.   Plaintiffs' Unjust Enrichment Claims Should Proceed

Defendants proffer only one basis for requesting summary judgment on Plaintiffs' unjust enrichment claims: that they fail for the same reasons as Plaintiffs' statutory claims. For all of the foregoing reasons, summary judgment is inappropriate and should be denied for Plaintiffs' statutory claims; therefore, for the same reasons, Plaintiffs unjust enrichment claims should proceed. *Al Haj*, 2019 WL 3202807, at *9 ("because Al Haj's ICFA claim survives summary judgment, so does her unjust enrichment claim"); *Wiegel v. Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 695 (N.D. Ill. 2011) (denying summary judgment on ICFA and unjust enrichment claims).

### VIII.   CONCLUSION

For the reasons set forth herein, Defendants' Motion should be denied in its entirety.

Dated: June 29, 2023

Respectfully submitted,

By: */s/ Melissa S. Weiner*
MELISSA S. WEINER
   *mweiner@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

EDWIN J. KILPELA, JR.
   *ekilpela@lcllp.com*
JAMES M. LAMARCA
   *james@lcllp.com*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

KATRINA CARROLL
   *kcarroll@lcllp.com*
**LYNCH CARPENTER LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265
Facsimile: (312) 750-1591

DANIEL L. WARSHAW
   *dwarshaw@pwfirm.com*
MICHAEL H. PEARSON
   *mpearson@pwfirm.com*
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

AMY KELLER
   *akeller@dicellolevitt.com*
**DICELLO LEVITT GUTZLER, LLC**
Ten North Dearborn Street, 11th Floor
Chicago, IL 60602
Telephone: (312) 214-7900

CHRISTOPHER D. STROMBAUGH
*cstombaugh@dicellolevitt.com*
**DICELLO LEVITT GUTZLER, LLC**
P.O. Box 437
Platteville, WI 53818
Telephone: (608) 348-7400

*Attorneys for Plaintiffs and the Certified Class*