**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLI, individually and on behalf of all others similarly situated, | Case No.: 1:19-cv-06836 |
| | The Honorable Nancy L. Maldonado |
| Plaintiffs, | |
| | Magistrate Judge Young B. Kim |
| vs. | |
| NEWELL BRANDS INC. and GRACO CHILDREN'S PRODUCTS INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE EXPERT TESTIMONY OF DR. JEFFREY A. DEAN**

994686.2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..........................................................................................................1

II.  BACKGROUND ...........................................................................................................1

III.  ARGUMENT ................................................................................................................2

    A.  Legal Standard ...................................................................................................2

    B.  Dr. Dean's Opinions Regarding the Effects of "Orthodontic" Pacifiers on Oral Development is Highly Relevant to the Issue the Jury will be Asked to Consider ..............................................................................................................3

        1.  Opinions Regarding the Effects of an "Orthodontic" Pacifier on Oral Development are Relevant to the Question of Whether Reasonable Consumers Were Likely to Be Misled ..........................................................3

        2.  Dr. Dean's Opinions Regarding Prolonged Pacifier Use are Relevant to this Litigation Because Those Purchasers were Consumers Allegedly Misled by the "Orthodontic" Claim .......................5

    C.  Dean's Opinions are Reliable and Admissible Under Rule 702 ............................6

        1.  Dr. Dean Used the Highest Form of Research, Systemic Reviews, and Decades of Pediatric Dentistry Experience in Shaping his Opinions ...............................................................................................6

            (a)  Dr. Dean utilized a scientifically sound methodology as the systemic reviews cited are the leading scientific authority regarding oral health effects of pacifier use....................................7

            (b)  Dr. Dean's opinions clearly state the authority relied on in coming to his conclusions and thus are not *Ipse Dixit.* .................10

        2.  Dr. Dean's Decision to Ignore Low-Quality, Unsubstantiated, Articles is an Issue for Cross-Examination, Not a *Daubert* Motion..........12

        3.  There is No "Analytical Gap" Between the Information Dr. Dean Considered and the Opinions Offered—Dr. Dean Relied on Studies Examining Pacifiers in Offering Opinions Regarding Pacifiers ...............13

        4.  Dr. Dean is One of the Foremost Pediatric Dental Experts in the Country, and His Opinions and Experience are Relevant to Forming His Opinions ......................................................................................14

IV.  CONCLUSION............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benson v. Newell Brands, Inc.*,
No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)...................................................5

*Bielskis v. Louisville Ladder, Inc.*,
663 F.3d 887 (7th Cir. 2011) .....................................................................................................3

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2022 WL 1720468 (N.D. Ill. May 27, 2022) ...................................................6

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
581 F. Supp. 3d 1029 (N.D. Ill. 2022) ......................................................................................6

*Farmer v. DirectSat USA, LLC*,
No. 08 CV 3962, 2013 WL 1195651 (N.D. Il. Mar. 22, 2013) .................................................7

*In re Fluidmaster, Inc., Water Connector Components Liab. Litig.*,
No. 14-cv-5696, 2017 WL 1196990 (N.D. Il. Mar. 31, 2017) ................................................14

*In re KIND LLC "Healthy & All Natural" Litig.*,
No. 15-MC-2645 (NRB), 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022)...................................4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).....................................................................................................................9

*Lapsley v. Xtek, Inc.*,
689 F.3d 802 (7th Cir. 2012) ...................................................................................................12

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) ........................................................................................7

*Manpower, Inc. v. Ins. Co. of Pennsylvania*,
732 F.3d 796 (7th Cir. 2013) ...................................................................................................13

*Mednick v. Precor, Inc.*,
No. 14 C 3624, 2016 WL 3213400 (N.D. Ill. June 10, 2016) ...................................................9

*Metavante Corp. v. Emigrant Sav. Bank*,
619 F.3d 748 (7th Cir. 2010) ...................................................................................................14

*Phillips v. Raymond Corp.*,
364 F. Supp. 2d 730 (N.D. Ill. 2005) ........................................................................................7

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
    244 F. Supp. 3d 716 (N.D. Ill. 2017) ........................................................3

*Premium Plus Partners, L.P. v. Davis*,
    653 F. Supp. 2d 855 (N.D. Ill. 2009) ..............................................9, 13

*Schultz v. Akzo Nobel Paints, LLC*,
    721 F.3d 426 (7th Cir. 2013) ........................................................7

*Smith v. Ford Motor Co.*,
    215 F.3d 713 (7th Cir. 2000) .....................................................3, 6

*Stollings v. Ryobi Tech., Inc.*,
    725 F.3d 753 (7th Cir. 2013) ....................................................4, 13

*Sys. Dev. Integration, LLC v. Computer Scis. Corp.*,
    886 F. Supp. 2d 873 (N.D. Ill. 2012) ..............................................6

*U.S. v. Boros*,
    668 F.3d 901 (7th Cir. 2012) ........................................................3

*U.S. v. Moore*,
    521 F.3d 681 (7th Cir. 2008) ........................................................6

*U.S. v. Owens*,
    18 F.4th 928 (7th Cir. 2021) .......................................................10

*U.S. v. Pansier*,
    576 F.3d 726 (7th Cir.2009) ........................................................7

*Walker v. Soo Line R. Co.*,
    298 F.3d 581 (7th Cir. 2000) ......................................................12

*Zarinebaf v. Champion Petfoods USA Inc.*,
    No. 18 C 6951, 2022 WL 910638 (N.D. Ill. Mar. 29, 2022) ...........................10, 11

*In re Zimmer Knee Implant Prod. Liab. Litig.*,
    No. 11 C 5468, 2015 WL 5050214 (N.D. Il. Aug. 25, 2015) .................................7

**Other Authorities**

*Black's Law Dictionary* 905 (9th ed. 2009)................................................10

Fed. R. Evid. 401 ........................................................................3

Fed. R. Evid. 401(b).....................................................................4

Fed. R. Evid 702 ..................................................................*passim*

## GLOSSARY OF TERMS

| TERM | DESCRIPTION |
| --- | --- |
| Plaintiffs | Plaintiffs Shelly Benson and Lisa Caparelli, collectively. |
| Defendants | Defendants Newell Brands Inc. and Graco Children's Products Inc., collectively. |
| Orthodontic Pacifiers or Products | Defendants' "orthodontic" pacifiers at issue are sold under the NUK brand name and include the following products, as well as any other NUK-branded "orthodontic" pacifiers: NUK Orthodontic Pacifiers, NUK Space™ Orthodontic Pacifiers, NUK Latex Orthodontic Pacifiers, NUK Sports Orthodontic Pacifiers, NUK Confetti Orthodontic Pacifiers, NUK Fashion Orthodontic Pacifiers, NUK Sensitive™ Orthodontic Pacifiers, and NUK Juicy Orthodontic Pacifiers. |
| Weiner Decl., Ex. | Declaration of Declaration of Melissa S. Weiner in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Oppositions to Defendants' Motions to Exclude the Testimony and Expert Reports of Professor Jean-Pierre H. Dubé, Dr. Jeffrey A. Dean, and J. Michael Dennis, Ph.D., filed concurrently herewith. Exhibits cited as "Ex.    ". |
| Complaint | First Amended Complaint, ECF No. 31 (cited as "FAC ¶    "). |
| Cert. Order | Memorandum Opinion and Order granting Plaintiffs' Motion for Class Certification, dated November 16, 2021 (ECF No. 126), *Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, at *1 (N.D. Ill. Nov. 16, 2021). |
| Motion, Mot. | Defendants' Motion to Exclude Testimony and Expert Report of Dr. Jeffrey A. Dean (ECF No. 236) and Memorandum of Law (ECF No. 237). |
| Dean Report | Expert Report Dr. Jeffrey Dean (ECF No. 239-1). |
| Dean Rebuttal | Expert Rebuttal Report of Dr. Jeffrey A. Dean (ECF No. 238-5). |
| Dean Reports | Dean Report and Dean Rebuttal, collectively. |
| Kohles Rebuttal | Expert Rebuttal Report of Sean S. Kohles (ECF No. 227-1). |
| Correa Review | Camila de Castro Correa, *et al.*, *Interference of conventional and orthodontic nipples in stomatognatic system: systematic review*, 28 CoDAS 182 (2016) (ECF No. 237-7). |
| Medeiros Review | R. Medeiros, *et al.*, *Malocclusion prevention through the usage of an orthodontic pacifier compared to a conventional pacifier: a systematic review*, 19 Eur. Arch. Paediatr. Dent. 287 (2018) (ECF No. 237-8). |
| Schmid Review | Karin Michele Schmid, *et al.*, *The effect of pacifier sucking on orofacial structures: a systematic literature review*, 19 Prog. Orthod. 1 (2018) (ECF No. 237-9). |
| SAMF | Plaintiffs' (Nonmovant) Local Rule 56.1(a)(2) Statement of Additional Material Facts, filed concurrently herewith. |

## I. <u>INTRODUCTION</u>

The Court should deny Defendants' Motion in its entirety because Dr. Dean is an internationally recognized expert in the fields of pediatric dentistry and orthodontics and relied on the foremost scholarly systematic reviews in reaching his opinions regarding the nonexistence of an "orthodontic" pacifier.

## II. <u>BACKGROUND</u>

This litigation concerns Defendants' labeling of their pacifier Products as "orthodontic" and whether that claim constitutes deceptive and/or misleading conduct under the laws of multiple states. *See* FAC. Central to Plaintiffs' allegations is the assertion that the use of the term "orthodontic" on Defendants' pacifier products would likely mislead a reasonable consumer. *See* Motion for Approval of Trial Plan (ECF No. 169), at pp. 6, 8-10. Plaintiffs proffer the expert opinions and testimony of Dr. Dean to establish that no pacifier is "orthodontic"—a key finding that will assist the trier of fact in determining if Defendants' marketing of "orthodontic" pacifiers is misleading to a reasonable consumer. Plaintiffs served the expert report of Dr. Dean on September 28, 2022. *See* Dean Report. On February 1, 2023, Plaintiffs offered the Rebuttal Reports of Dr. Sean S. Kohles, *see* Kohles Rebuttal, and Dr. Dean, *see* Dean Rebuttal.

Dr. Dean plainly has the experience and credentials necessary to provide the scientific expert evidence underlying Plaintiffs' theory regarding whether or not an "orthodontic" pacifier exists. Dr. Dean holds multiple relevant degrees and is the Ralph E. McDonald Endowed Professor of Pediatric Dentistry and a Professor of Orthodontics and Dentofacial Orthopedics at the Indiana University School of Dentistry and Riley Hospital for Children at IU Health in Indianapolis. Dean Report ¶ 7-8. Dean has served as Board Director and President of the American Board of Pediatric Dentistry, CEO of the American Board of Pediatric Dentistry, and has authored a widely used

textbook and numerous articles. *Id.* ¶ 10-11, Ex. 2. In addition to his academic credentials, Dr. Dean has, for more than 40 years, maintained an active clinical pediatric dental practice, advising parents on proper care for the oral health of their children.

In forming his opinions, Dr. Dean relied primarily on three systematic reviews that examined the health effects of both traditional and "orthodontic" pediatric pacifier use. *Id.* ¶¶ 25-30. These systematic reviews (1) screened the individual studies and papers on the topic to remove non-academically-rigorous data and (2) provided an aggregation of the relevant data. *See id.* ¶¶ 19-22; Correa Review at pp. 183-85; Medeiros Review at pp. 288-93; Schmid Review at pp. 2-8. Additionally, Dr. Dean reviewed and relied on various policy statements from the leading pediatric healthcare organizations, not to mention his vast experience and expertise. *See* Dean Report ¶¶ 23, 24, Ex. 1.

After conducting his research, Dr. Dean expressed his expert opinion that "[p]acifiers cannot be 'orthodontic' as they are not medical devices and they do not prevent or treat malocclusions or promote oral development." *Id.* ¶ 35. Furthermore, Dr. Dean concluded "pacifiers, including so-called 'orthodontic' pacifiers, have been shown to lead to malocclusions when used frequently and over a prolonged period of time, that is past the age of 18 to 24 months." *Id.* ¶ 18. Accordingly, based on his expertise and experience, Dr. Dean is of the firm opinion that "labeling a pacifier as 'orthodontic' is inappropriate, misleading, and not supported by research." *Id.* ¶ 36.

## III. ARGUMENT

### A. Legal Standard

There are three requirements for expert testimony admissibility: (1) the expert must be qualified, (2) his or her methodology(ies) must be scientifically reliable, and (3) the proffered testimony must "'assist the trier of fact to understand the evidence or to determine a fact in issue,'"

an inquiry sometimes referred to as relevance or fit. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (citation omitted). Ultimately, "it is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

### B. Dr. Dean's Opinions Regarding the Effects of "Orthodontic" Pacifiers on Oral Development is Highly Relevant to the Issue the Jury will be Asked to Consider

Defendants assert that Dr. Dean should be excluded on relevance grounds and suggest that "Dean's opinions are only relevant if they will assist the trier of fact in determining whether the word 'orthodontic,' as it is used on the NUK pacifier packaging, was deceptive to a reasonable consumer." Mot. at 4. This, however, is not the relevant standard or inquiry. Instead, "[t]he question is not whether the disputed evidence has great probative weight, but whether it has any." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 244 F. Supp. 3d 716, 719 (N.D. Ill. 2017). Indeed, the Federal Rules of Evidence expressly note that relevancy is a low barrier and that "[e]vidence is relevant if: it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. In fact, "[t]he Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *U.S. v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 285 (2004)).

### 1. Opinions Regarding the Effects of an "Orthodontic" Pacifier on Oral Development are Relevant to the Question of Whether Reasonable Consumers Were Likely to Be Misled

Defendants' relevance argument is essentially an attack on whether a reasonable consumer may be misled by Defendants' use of "orthodontic." But that is *not* a question for *Daubert*. Given Plaintiffs' theory—that a reasonable consumer would likely be misled by Defendants' prominent

and uniform use of "orthodontic" on the NUK Orthodontic Pacifier labels because the pacifiers do not promote oral development or prevent bite problems—Dr. Dean's testimony is relevant. Testimony from a world-recognized expert about what is and is not "orthodontic," as that word is commonly understood by practitioners in the relevant field, is plainly relevant to the inquiry of whether reasonable consumers were misled given Defendants Orthodontic Pacifiers failure to perform as promised. Moreover, Dr. Dean's opinion that there is no such thing as an "orthodontic" pacifier is, obviously, a "fact . . . of consequence in determining the action," Fed. R. Evid. 401(b), because that impossibility, coupled with the fact that "orthodontic" is a word with a single definition, is relevant to a jury's determination.[1] As such, Dean's expert opinions and testimony should be found relevant and admitted under Rule 401. *See generally Stollings v. Ryobi Tech., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013) (reversing district court that excluded expert report as irrelevant because it only addressed a portion of the considerations at issue in the case).

Defendants' passing reference to *In re KIND LLC "Healthy & All Natural" Litig.*, No. 15-MC-2645 (NRB), 2022 WL 4125065, at *15 (S.D.N.Y. Sept. 9, 2022), is unavailing. As discussed in Plaintiffs' concurrently filed Opposition to Defendants' Motion to Exclude the Testimony and Expert Report of J. Michael Dennis, Ph.D., *In re KIND* is entirely inapposite to the present case, and any arguments that flow therefrom are thus unpersuasive. Here, a world-renowned expert on the subject, after reviewing the weight of the scientific literature on his own accord, has concluded that "orthodontic" pacifiers do not promote oral development or prevent teeth misalignment, and thus, does not and cannot apply to Defendants' Products. Dean Report ¶¶ 3, 35; Dean Rebuttal ¶¶

---

[1] At a minimum, there is a genuine issue of material fact as to whether a reasonable consumer would be misled—which underpins Defendants' relevance arguments—including a robust record of Defendants' documents and testimony, Plaintiffs' testimony, and Defendants' expert reliance materials.

12, 16, 17, 58. Therefore, its use is improper as likely misleading on *every product* in the defined class.

      2.    <u>Dr. Dean's Opinions Regarding Prolonged Pacifier Use are Relevant to this Litigation Because Those Purchasers were Consumers Allegedly Misled by the "Orthodontic" Claim</u>

Defendants argue that the de-certification of the sub-class (pacifiers purchased for children over 24-months of age) "means that whether pacifier use by children over the age of 24 months significantly increases the risk of developing malocclusions is no longer at issue in this case," and, therefore, any discussion of the long-term impact of pacifier use by children over that age are irrelevant to this case. Mot. at 15. This argument is premised on a flawed understanding of Dr. Dean's Reports and a misunderstanding of the issues at play.

To the contrary, Dr. Dean's discussion of long-term oral health effects on children that use any type of pacifier beyond twenty-four (24) months is highly relevant. While the sub-class addressed Defendants' marketing of their pacifiers for **use** by children over twenty-four (24) months, *see* Cert. Order at **2-3, *16, Dr. Dean discusses the health impact of prolonged pacifier use to underscore his conclusion that because pacifiers, in fact, have negative long-term oral health impact, they necessarily can *never* be called "orthodontic."

Defendants admit that their usage of the "orthodontic" intends to convey to consumers that "it's going to do potentially less damage to their teeth and jaw than an other [sic]shaped pacifier." SAMF 4. Dr. Dean's Reports demonstrate that that assertion is false and, which thus supports Plaintiffs' theory that the "orthodontic" descriptor is misleading because study after study have shown that prolonged pacifier use—of any type—leads to long-term oral health problems. Thus, Dr. Dean's opinions that highlight the harm caused by pacifiers are relevant.

Defendants' cursory citation to case law does not compel a different result as each case addressed the unrelated issue of whether a damages theory should be excluded due to it being

untethered from the remaining claims at issue. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1042-45 (N.D. Ill. 2022); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 886 F. Supp. 2d 873, 877-78 (N.D. Ill. 2012). Here, Dr. Dean's opinions are directly related to Plaintiffs' theory of liability, and this Court should permit the trier of fact to hear and weigh them for itself.[2]

### C. Dean's Opinions are Reliable and Admissible Under Rule 702

"For [an] expert opinion to be admissible . . . (1) the expert must be qualified; (2) the expert must apply a scientifically reliable methodology; and (3) the proffered testimony must 'assist the trier of fact with a fact at issue.'" *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 1720468, at *7 (N.D. Ill. May 27, 2022) (citing *Smith*, 215 F.3d at 718, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)); *U.S. v. Moore*, 521 F.3d 681, 683 (7th Cir. 2008). "[T]he role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith*, 215 F.3d at 718 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

An examination of Dr. Dean's expertise, methodology, and the connection between the two demonstrates that Dr. Dean is qualified and his opinions are well supported by a sound methodology as well as impeccable credentials and expertise. Accordingly, his opinions will assist the trier of fact and must be admitted.

### 1. Dr. Dean Used the Highest Form of Research, Systemic Reviews, and Decades of Pediatric Dentistry Experience in Shaping his Opinions

"To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."

---

[2] Defendants mistakenly list paragraphs for exclusion that either do not reference an age range, *see* Dean Rebuttal ¶¶ 37, 56, or reference an age range that starts at eighteen (18) months, *see* Dean Report ¶¶ 18, 29, 37; Dean Rebuttal, ¶¶ 2, 9, 16, 29, 40. Even if the Court finds any discussion of children over twenty-four (24) months not relevant, these sections apply to oral harm that begins well before that mark at eighteen (18) months and should not be stricken.

*U.S. v. Pansier*, 576 F.3d 726, 737 (7th Cir.2009). "[E]xact correlation is not necessary but the samples must be fair congeners." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005). Defendants argue that since "Dean does not know—and cannot know— which pacifiers were used in any of the underlying studies" his opinions are irrelevant. Mot. at 5. This then, they argue, results in Dr. Dean's opinions being *Ipse Dixit. See id.* at 813-14. However, "the key to the gate [referring to the "gatekeeping" function under Rule 702] is not the ultimate correctness of the expert's conclusions . . . it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). Both of Defendants' arguments are defeated when examining the three systematic reviews that form the backbone of Dr. Dean's rationale.

   (a)  Dr. Dean utilized a scientifically sound methodology as the systemic reviews cited are the leading scientific authority regarding oral health effects of pacifier use.

  "[A] systematic literature review uses formal search methods to allow a researcher to obtain a neutral 'snapshot' of the existing research on a particular question*." In re Zimmer Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2015 WL 5050214, *3 (N.D. Il. Aug. 25, 2015*); see also Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 1195651, *9-10 n.6 (N.D. Il. Mar. 22, 2013) (noting an expert's failure to "systematically or scientifically review" data as a rationale for excluding expert's report). The use of systematic reviews in forming an opinion is permitted under Rule 702 and does not diminish the reliability of the opinions rendered. "[T]he process of analyzing assembled data while using experience to interpret the data is not illicit; an expert need not actively conduct his or her own tests to have a valid methodology." *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 743 (N.D. Ill. 2005) (citing *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999)).

  Defendants attempt to portray the systematic reviews Dr. Dean relied on as "providing no support for Dean's opinions regarding NUK pacifiers." Mot. at 5. This is simply not true. As Dr.

Dean explained, "[h]igh quality and low risk of research bias is extremely valuable in any scientific undertaking." Dean Report ¶ 19. Dr. Dean relied on systematic reviews in crafting his Reports because "they are a form of research that provides a summary report on a specific question, using explicit methods to search critical appraisals and synthesizes the world's literature systematically." *Id*. ¶ 20. The purpose of using systematic reviews is to ensure the expert themselves is not doing the screening of articles, instead relying on non-interested third parties to develop their own objective screening criteria that filter out non-rigorous works. *See Id.* ¶ 20; Dean Rebuttal ¶¶ 53-57.

Defendants criticize Dr. Dean's reliance on the systematic reviews because "it is undisputed that none of the systematic reviews mention NUK pacifiers." Mot. at 5. This argument highlights Defendants' lack of understanding regarding systematic reviews and is factually untrue. The whole reason systematic reviews are such a powerful tool is that it is an aggregation of all rigorous scholarly work in an area—the particular underlying studies delve into the granular data Defendants seek to require. *See* Dean Report ¶ 20; *see also* Ex. 5 (A.K. Akobeng, *Understanding systematic reviews and meta-analysis*, Arch. Dis. Child 90(8) 845-48 (Aug. 2005), 848 ("Systematic reviews apply scientific strategies to provide in an explicit fashion a summary of all studies addressing a specific question, thereby allowing an account to be taken of the whole range of relevant findings on a particular topic.")). Second, at least one of the systematic studies directly includes information regarding NUK pacifiers. *See* Schmid Review at pp. 5-6 (providing NUK specific results from selected studies).

Moreover, the lack of studies specifically examining Defendants' pacifiers is not uncommon. As the Supreme Court has noted, "[i]t might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for

the particular application at issue may never previously have interested any scientist." *Kumho Tire*, 526 U.S. at 151. Dr. Dean overcame this issue by applying the data that was available regarding "orthodontic" pacifiers, combined with his clinical experience in pediatric dentistry, and other policy statements regarding pacifier use to reliably offer the opinions in the Reports. *See* Dean Report ¶¶ 23, 24, Ex. 1.

Defendants' reliance on *Mednick v. Precor, Inc.*, No. 14 C 3624, 2016 WL 3213400 (N.D. Ill. June 10, 2016), and *Premium Plus Partners, L.P. v. Davis*, 653 F. Supp. 2d 855, 868 (N.D. Ill. 2009), *aff'd sub nom. Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533 (7th Cir. 2011), are misplaced. The expert in *Mednick* conducted a limited and flawed study of the defendant's products and freely admitted that his "opinion did not grow naturally out of research he had conducted independent of this litigation" and that he did not have time to develop "a broader test of his theory . . . ." 2016 WL 3213400 at *5. In *Premium Plus*, the expert in question made unsupported and indefensible assumptions and comparisons which resulted in the court excluding him because he "ha[d] failed to provide an adequate explanation for his assertion that other instruments compared by him . . . are sufficiently similar . . . to offer a meaningful comparison. 653 F. Supp. 2d at 868.

Dr. Dean's Reports do not suffer from any such infirmities. First, Dr. Dean did not design or run his own experiment for his Reports and instead relied on peer-reviewed, published, systematic reviews that are considered the very highest quality of scientific literature. Second, Dr. Dean did not solely develop his opinions for the litigation and instead frequently works in the field of pediatric dentistry, which in part requires counseling parents on pacifier use and correcting the deformities such use causes. *See* Dean Report ¶¶ 14, 31-32; Dean Rebuttal ¶¶ 8, 58. Third, there is no gap between the reviews relied on in shaping Dr. Dean's opinions and the data used—both

concern children using pacifiers, whereas the *Mednick* expert attempted to impute data from different heart rate apparatuses. Since Dr. Dean relied on independently screened data via three different systematic reviews that directly relate to the topic of the litigation his methodology is reliable and the opinions should be admitted.

> (b)    Dr. Dean's opinions clearly state the authority relied on in coming to his conclusions and thus are not *Ipse Dixit.*

The Seventh Circuit recently clarified when an expert's opinion goes from being an admissible statement based in fact and supported by scholarly work to an impermissible "asserted but not proved" statement. *Black's Law Dictionary* 905 (9th ed. 2009) (defining *ipse dixit*). "To identify improper *ipse dixit*, **'[t]he critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data 'only by the *ipse dixit* of the expert** that is properly excluded under Rule 702.'" *U.S. v. Owens*, 18 F.4th 928, 941 n.5 (7th Cir. 2021) (emphasis in original) (citing *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017), and *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013)).

Here, as explained Section III.C.1 above, Dr. Dean employed data from three systematic reviews that examined "orthodontic" pacifier use in children to render an opinion concerning the ability of a pacifier to be "orthodontic." This establishes, as the Seventh Circuit requires, a plain and evident "connection between the data employed and the opinion offered;" thus, there is no *ipse dixit* in Dr. Dean's opinions. Dean also takes great care to explain how the systematic reviews' data and findings relate directly to his opinions. *Compare* Dean Report ¶¶ 25-30 (summarizing the systematic reviews) *with* ¶¶ 33-37 (final conclusions). Further, unlike Defendants' claim, *see* Mot. at 13, at least one of the systematic reviews specifically mentions NUK pacifiers. *See* Schmid Review at pp. 5-6.

Defendants' attempt to bolster their argument by relying on *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 910638 (N.D. Ill. Mar. 29, 2022), rather supports admittance of Dr. Dean's opinions. In *Zarinebaf*, an expert attempted to show that pet food marketed as "nutritious and fresh" actually contained "metals and unnatural ingredients." 2022 WL 910638, at *1. The expert submitted a report that stated "pentobarbital is 'likely present'" in the petfood. *Id*. at *7. The expert supported his opinion by pointing to evidence that despite testing of the pet food at issue showing no pentobarbital, it was likely present because the pet food manufacturer's tallow supplier supplied tallow to other companies that had pentobarbital in it, and the substance was not destroyed in the production methods employed by defendant. *Id*.

The court excluded the expert's testimony on two grounds. First, the court noted that the expert "has not offered a verifiable scientific methodology, but rather a series of unscientific leaps," such as examining tallow lots provided to other companies by the supplier made to "different specifications" as the pet food maker in the case. *Id*. Second, in dismissing the test results of the product at issue the court noted the expert "lacks factual support and once again draws conclusions without proving sufficient support for those conclusions." *Id*.

Here, Dr. Dean does not make any leaps in rendering his opinions—he relies on studies examining "orthodontic" pacifier use to opine that there is no such thing as an "orthodontic" pacifier and, therefore, that term is falsely applied to Defendants' Products. Further, Dr. Dean did not exclude any evidence or data on his own, instead relying on the independent authors of each of the systematic reviews to cull the data. This provides an additional layer of reliability by taking the issue of discounting or not considering data out of the expert's discretion. Thus, it is clear that none of the issues presented in *Zarinebaf* are present here. Since Dr. Dean relies on data from systematic reviews that (1) directly aligns with the topic and opinions presented in his Reports; (2)

11

explains how the findings relate to his opinions throughout the Reports; and (3) relied on those systematic reviews to cull the relevant data for him, there are no *ipse dixit* concerns present.

2. Dr. Dean's Decision to Ignore Low-Quality, Unsubstantiated, Articles is an Issue for Cross-Examination, Not a *Daubert* Motion

"That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible." *Walker v. Soo Line R. Co.*, 298 F.3d 581, 589 (7th Cir. 2000) (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1341 (S.D. Fla. 1999)). In examining contrary sources that an expert did not consider, the Seventh Circuit has cautioned that "[a] Daubert inquiry is not designed to have the district judge take the place of the jury to decide ultimate issue of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).

Defendants argue that "Dean ignores various pieces of evidence that indicate orthodontic-shaped pacifiers actually have positive effects on oral development." Mot. at 11. Defendants then go on to cherry-pick quotes from three papers. *See id.*; *see also* ECF Nos. 238-10; 238-11; 238-12. Notably, one article Dr. Dean is accused of ignoring is cited in Exhibit 1 (End Note Library) to his opening report. *See* Dean Report Ex. 1.[3] The second "source" Defendants criticize Dr. Dean for not relying upon is a study that has been roundly criticized by Plaintiffs' unchallenged expert Sean Kohles. *See* Kohles Rebuttal ¶¶ 6, 7, 23-26, 29-34. Finally, the remaining "ignored" study by L. Levrini, *et al*., is a laboratory study involving computer simulations of limited value that does not address the central question of whether Defendants' or any pacifiers are "orthodontic." *Different*

---

[3] The article in question, however, is not supportive of Defendants' arguments as it expressly states that "[t]he use of an orthodontic pacifier seems not to be related to the development malocclusions in primary dentition differently from what previously reported in literature for conventional pacifiers." Silvia Caruso, *et al*., *Poor oral habits and malocclusions after usage of orthodontic pacifiers: an observational study on 3-5 years old children*, 19 BMC Pediatr. 1 (2018) (ECF No. 238-10), p. 8.

*geometric patterns of pacifiers compared on the basis of finite element analysis*, 8 Eur. Arch. Pediatric Dent. 173 (2007) (ECF No. 238-11), 173.

Defendants' arguments do not support exclusion and, instead, can form the basis of their cross-examination of Dr. Dean at trial. As one District Court stated when confronted with a similar issue remarked:

> [Defendant] can question [Expert] on cross examination at trial . . . about that academic source or [Defendant] could offer testimony by [Defendant's] own expert on that point. However, a difference in opinions does not necessarily show that [Expert's] opinions are unreliable and inadmissible. . . . disagreements between experts are not an admissibility issue, but rather are matters that can be considered by the trier of fact when determining the weight that should be given to the expert opinions.

*Premium Plus Partners, L.P.*, 653 F. Supp. at 866. Plaintiffs encourage this Court to apply similar reasoning here.

3.    There is No "Analytical Gap" Between the Information Dr. Dean Considered and the Opinions Offered—Dr. Dean Relied on Studies Examining Pacifiers in Offering Opinions Regarding Pacifiers

"Rule 702's reliability elements require the district judge to determine only that the expert is providing testimony that is based on a correct application of a reliable methodology and that the expert considered sufficient data to employ the methodology." *Stollings*, 725 F.3d at 766. "The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc.*, 732 F.3d at 806.

Here Defendants justify the exclusion of Dr. Dean's opinions because "two of the three systematic reviews were inconclusive, and one of them came to the opposite conclusion from Dean's opinion." Mot. at 9. However, Defendants' ability to selectively quote from the three systematic reviews does not justify finding exclusion due to too large of an "analytical gap," rather, the Court needs to examine the *methodology* employed by Dr. Dean. As discussed *supra*, Dr. Dean

used a uniform, scholarly screening process based on the hierarchy of research to screen the data he considered. Further, Dr. Dean's reliance on systematic reviews that studied "orthodontic" pacifier use in children does not present any analytical gap that needs to be bridged—each of the studies (1) examine the effects of "orthodontic" pacifiers; (2) in children—the exact premise of this litigation. *See* Correa Review at pp. 183-84; Medeiros Review at p. 288; Schmid Review at p. 2.

Since there is no analytical gap that needs to be bridged between Dr. Dean's reliance on studies that examined "orthodontic" pacifier use in children to Dr. Dean's Reports regarding the possibility of the existence of an "orthodontic" pacifier for children to use, Dr. Dean's Reports nor testimony should be excluded.

        4.      <u>Dr. Dean is One of the Foremost Pediatric Dental Experts in the Country, and His Opinions and Experience are Relevant to Forming His Opinions</u>

"An expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience*, training, or education.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting Fed. R. Evid. 702) (emphasis in original). As one district court remarked, "[a]n expert may be qualified based on experience alone." *In re Fluidmaster, Inc., Water Connector Components Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990 (N.D. Il. Mar. 31, 2017) (citing *Trustees of Chi. Painters & Decorators Pension, Health & Welfare v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007)).

Here, Defendants' correctly point out that Dean's "opinions are . . . influenced and confirmed by [his] work . . . ." Mot. at 12. They then go on to state that Dr. Dean's work in pediatric dentistry is a "red herring" in this case concerning the effect on oral health caused by Defendants' Orthodontic Pacifiers. *Id*. This argument is almost nonsensical—how can experience concerning

994686.2          14

the treatment of the exact age group at issue in this litigation—particularly when the case law clearly states that an expert's experience is grounds to support an opinion—be a rationale for exclusion. *See* Dean Report ¶¶ 7-14 (noting Dr. Dean's pediatric dentistry qualifications), 31-32 (noting Dr. Dean's experience in pediatric dentistry).

Since Dr. Dean's experience in pediatric dentistry is directly applicable to this case concerning the effect on pediatric dental development of Defendants' Orthodontic Pacifiers, it should not be struck from his Reports.

## IV.   **CONCLUSION**

For the reasons set forth herein, the Court should deny Defendants' request to exclude or strike any of Dr. Dean's opinions.

Dated: June 29, 2023

Respectfully submitted,

By: */s/ Melissa S. Weiner*
MELISSA S. WEINER
   *mweiner@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

EDWIN J. KILPELA, JR.
   *ekilpela@lcllp.com*
JAMES M. LAMARCA
   *james@lcllp.com*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

KATRINA CARROLL
   *kcarroll@lcllp.com*
**LYNCH CARPENTER LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265
Facsimile: (312) 750-1591

DANIEL L. WARSHAW
   *dwarshaw@pwfirm.com*
MICHAEL H. PEARSON
   *mpearson@pwfirm.com*
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

AMY KELLER
akeller@dicellolevitt.com
ADAM J. LEVITT
alevitt@dicellolevitt.com
CHRISTOPHER STOMBAUGH
cstombaugh@dicellolevitt.com
**DICELLO LEVITT LLC**
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
Telephone: (312) 214-7900

*Attorneys for Plaintiffs and the Certified Class*