**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLI, individually and on behalf of all others similarly situated, | Case No.: 1:19-cv-06836 |
| Plaintiffs, | The Honorable Nancy L. Maldonado |
| vs. | Magistrate Judge Young B. Kim |
| NEWELL BRANDS INC. and GRACO CHILDREN'S PRODUCTS INC., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO EXCLUDE THE TESTIMONY AND EXPERT REPORT OF**
**J. MICHAEL DENNIS, PH.D.**

**[UNREDACTED VERSION FILED UNDER SEAL]**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ....................................................................................2

     A.    Dr. Dennis' Consumer Perception Survey ...............................................2

     B.    Dr. Dennis' Materiality Survey .................................................................3

III.    ARGUMENT ............................................................................................................3

     A.    Legal Standard ...........................................................................................4

     B.    Dr. Dennis is Qualified .............................................................................4

     C.    Dr. Dennis Designed the Consumer Perception Survey According to Best Practices, and is Scientifically Reliable ..................................................4

          1.    *KIND* is Distinguishable ...............................................................6

          2.    Defendants' Arguments as to Design are Flawed and Go to Weight, Not Admissibility ...........................................................................8

     D.    Dr. Dennis' Materiality Survey is Scientifically Reliable .....................12

     E.    Dr. Dennis' Opinions Will Assist the Trier of Fact ...............................15

IV.    CONCLUSION .......................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benson v. Newell Brands, Inc.*,
   No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)..............................................1, 9

*Bielskis v. Louisville Ladder, Inc.*,
   663 F.3d 887 (7th Cir. 2011) .......................................................................................................4

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*,
   No. 07 C 4718, 2010 WL 1687883 (N.D. Ill. Apr. 26, 2010)....................................................11

*Bowling v. Johnson & Johnson*,
   No. 1:17-cv-03982 (S.D.N.Y) ....................................................................................................10

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) .........................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)....................................................................................................4, 11, 12, 15

*Ebin v. Kangadis Food Inc.*,
   No. 1:13-cv-02311 (S.D.N.Y)....................................................................................................10

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
   744 F. Supp. 2d 870 (E.D. Wisc. 2010) .......................................................................................4

*Fed. Trade Comm'n v. On Point Glob. LLC*,
   No. 19-25046-CIV, 2021 WL 4891334 (S.D. Fla. Sept. 23, 2021)............................................10

*Fishon v. Premier Nutritionals*,
   No. 3:16-cv-06980-RS (N.D. Cal.)...............................................................................................6

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018)................................................................................................14

*Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*,
   258 F. Supp. 2d 1197 (D. Kan. 2003).........................................................................................11

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ....................................................................................................12

*In re KIND LLC "Healthy & All Natural" Litig.*,
   No. 15-MC-2645 (NRB), 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022).......................1, 6, 7, 8

*Krueger v. Wyeth, Inc.*,
    No. 03CV2496-JAH, 2016 WL 3981125 (S.D. Cal. Apr. 4, 2016)........................12

*L & F Prod., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*,
    845 F. Supp. 984 (S.D.N.Y. 1994) .......................................................................13

*Lucent Techs., Inc. v. Microsoft Corp.*,
    No. 07-CV-2000 H (CAB), 2011 WL 13101230 (S.D. Cal. Feb. 4, 2011) ........9, 14

*Maeda v. Kennedy Endeavors, Inc.*,
    No. CV 18-00459 JAO (D. Haw.) ..........................................................................6

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) ..................................................................................4

*Montera v. Premier Nutrition Corp.*,
    No. 16-CV-06980-RS, 2022 WL 1225031 (N.D. Cal. Apr. 26, 2022)....................6

*Nat'l Basketball Ass'n. v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)..................................................................................12

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
    7 F. Supp. 3d 955 (N.D. Cal. 2014) ......................................................................11

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
    No. C-09-3329-CW, 2014 WL 6862783 (N.D. Cal. 2014) ...................................11

*Pinder v. 4716 Inc.*,
    No. CV-18-02503-RCC, 2020 WL 6081498 (D. Ariz. Oct. 15, 2020) ..............9, 14

*Procter & Gamble Co. v. Ultreo, Inc.*,
    574 F. Supp. 2d 339 (S.D.N.Y. 2008).............................................................11, 12

*Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*,
    No. 06 CIV. 0034 (PAC), 2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006) ...............14

*Rexall Sundown, Inc. v. Perrigo Co.*,
    651 F. Supp. 2d 9 (E.D.N.Y. 2009) ......................................................................12

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
    241 F.3d 232 (2d Cir. 2001)..................................................................................12

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999)....................................................................................3

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................12

*In re Scotts EZ Seed Litig.*,
    No. 12-CV-4727, 2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ............................................ 14

*In re Scotts EZ Seed Litig.*,
    No. 12-CV-4727 (S.D.N.Y.) ........................................................................................................ 10

*Sharpe v. A&W Concentrate Co.*,
    No. 19-cv-768 (BMC), (E.D.N.Y.) ........................................................................................... 6

*Smith v. Ford Motor Co.*,
    215 F.3d 713 (7th Cir. 2000) ..................................................................................................... 4

*Strumlauf v. Starbucks Corp.*,
    No. 16-CV-01306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ..................................... 11

*Takeda Pharms. USA, Inc. v. Spireas*,
    No. CV 17-0452, 2019 WL 9596536 (E.D. Pa. Sept. 4, 2019) ............................................... 15

*THOIP v. Walt Disney Co.*,
    690 F. Supp. 2d 218 (S.D.N.Y. 2010) ..................................................................................... 14

*U.S. v. Lindsey*,
    850 F.3d 1009 (9th Cir. 2017) ................................................................................................. 12

*U.S. v. Pansier*,
    576 F.3d 726 (7th Cir. 2009) ..................................................................................................... 4

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
    No. 07 CIV. 5804 (GEL), 2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ..................................... 9

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*,
    661 F.2d 272 (2d Cir. 1981) ..................................................................................................... 12

*Zarinebaf v. Champion Petfoods USA Inc.*,
    No. 18 C 6951, 2022 WL 910638 (N.D. Ill. Mar. 29, 2022) ..................................................... 8

**Other Authorities**

Bradburn, N. M., Sudman, S., & Wansink, B. 2004. *Asking Questions: A Practical Guide to Questionnaire Design* .......................................................................... 8

Reference Manual on Sci. Evid. Ch. 359 (3d ed.), Federal Judicial Center, *Reference Guide on Survey Research* (Shari Seidman Diamond), 2011 WL 7724258 .................................................................................................................... 8, 10

# GLOSSARY OF TERMS

| TERM | DESCRIPTION |
|------|-------------|
| Plaintiffs | Plaintiffs Shelly Benson and Lisa Caparelli, collectively. |
| Defendants | Defendants Newell Brands Inc. and Graco Children's Products Inc., collectively. |
| Orthodontic Pacifiers or Products | Defendants' "orthodontic" pacifiers at issue are sold under the NUK brand name and include the following products, as well as any other NUK-branded "orthodontic" pacifiers: NUK Orthodontic Pacifiers, NUK Space™ Orthodontic Pacifiers, NUK Latex Orthodontic Pacifiers, NUK Sports Orthodontic Pacifiers, NUK Confetti Orthodontic Pacifiers, NUK Fashion Orthodontic Pacifiers, NUK Sensitive™ Orthodontic Pacifiers, and NUK Juicy Orthodontic Pacifiers. |
| Weiner Decl., Ex. | Declaration of Declaration of Melissa S. Weiner in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Oppositions to Defendants' Motions to Exclude the Testimony and Expert Reports of Professor Jean-Pierre H. Dubé, Dr. Jeffrey A. Dean, and J. Michael Dennis, Ph.D., filed concurrently herewith. Exhibits cited as "Ex.    ". |
| Complaint | First Amended Complaint, ECF No. 31 (cited as "FAC ¶    "). |
| Cert. Order | Memorandum Opinion and Order granting Plaintiffs' Motion for Class Certification, dated November 16, 2021 (ECF No. 126), *Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, at *1 (N.D. Ill. Nov. 16, 2021). |
| Motion, Mot. | Defendants' Motion to Exclude Testimony and Expert Report of J. Michael Dennis, Ph.D. (ECF No. 233) and Memorandum of Law (ECF No. 234). |
| Butler Report | Expert Report of Sarah Butler (ECF No. 235-2). |
| Dennis Report | Declaration and Expert Report of J. Michael Dennis, Ph.D. (ECF No. 235-1). |
| Dennis Reply | Declaration and Expert Report of J. Michael Dennis, Ph.D., attached as Ex. 6. |
| SAMF | Plaintiffs' (Nonmovant) Local Rule 56.1(a)(2) Statement of Additional Material Facts, filed concurrently herewith. |

## I. __INTRODUCTION__

Since Judge Guzman granted Plaintiffs' Motion for Class Certification—which rejected the recycled arguments in Defendants' Motion—Defendants have not advanced their undeveloped criticisms of Dr. Dennis' survey, which supports the extensive evidentiary record that reasonable consumers perceive Defendants' prominent "orthodontic" descriptor to convey a message of healthy oral development or prevention of teeth misalignment. As at class certification, the Motion again seeks to exclude Dr. Dennis' expert opinions based on his survey design and methodology, design details that Judge Guzman found "go to its **weight** at the merits stage." Cert. Order at *12 (emphasis added). In their Motion, Defendants present an incomplete record as they completely ignore Dr. Dennis' Reply report and only reference the Expert Report of Sarah Butler twice.[1] The Dennis Reply—coupled with the Dennis Report, both considered by the Court in granting class certification—addresses all of Defendants' failed criticisms and provides unambiguous support for Dr. Dennis' survey design and methodology. Defendants' arguments go to weight for a jury.

Defendants' strategy is clear. Given Judge Guzman's consideration and rejection of each main criticism of Dr. Dennis' survey, they attempt to piggyback off of *In re KIND LLC "Healthy & All Natural" Litig.*, No. 15-MC-2645 (NRB), 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022) ("*KIND*")[2]. Other than relating to Dr. Dennis, *KIND*—an outlier—bears no resemblance to the present matter. As explained in Section III.C.1 below, *KIND* is entirely distinguishable: (1) the phrasing used in Dr. Dennis's survey comes directly from Defendants' own documents[3]; (2) Dr. Dennis presents "orthodontic" in the exact manner it has always been on the Product packaging;

---

[1] Defendants and Dr. Butler failed to run their own survey in the merits phase. Defendants cite the Butler Report to merely reference scientific literature concerning trademark cases, which is a *completely different standard* than a consumer false advertising case. *See* Butler Report ¶¶ 56-58.
[2] Pearson Warshaw, LLP attorneys are co-lead counsel in *KIND* and disagree with the district court's decision. The matter is currently on appeal before the Second Circuit.
[3] It is rather remarkable that Defendants' strategy on *Daubert* and summary judgment is to run from their mission in creating the ███████████████████ *See* Ex. 8 (NUK0007337-7442).

and (3) Dr. Dennis included all necessary language in his survey design to accurately determine what reasonable consumers perceive by Defendants' prominent labeling.

However, even if the Court considers matters of weight (*i.e.*, the design of Dr. Dennis' survey), Dr. Dennis' survey appropriately measured whether consumers perceived Defendants' Products to help promote healthy oral development or prevent teeth misalignment in light of Plaintiffs' claims in this suit. Dr. Dennis—following applicable scientific principles—implemented controls such as using an unbranded product and using closed-ended questions to avoid various biases, which would have rendered his survey unreliable. Defendants' arguments are simply repackaged and should be met with the same fate as they had at class certification.

Defendants' arguments pertaining to Dr. Dennis' materiality survey also go to the weight of his opinions, not admissibility. The materiality survey was based on leading scientific principles to ensure that it was reliable and would assist the trier of fact. Dr. Dennis' materiality survey confirmed that the "orthodontic" descriptor was material to consumers' purchasing decision. Indeed, an overwhelming 91.5% of the survey respondents stated a preference to purchase the product with the "Orthodontic Pacifier" label claim. Dennis Report ¶ 26; Dennis Reply ¶ 44. Defendants' Motion should be denied in its entirety.

## II.   FACTUAL BACKGROUND

### A.   Dr. Dennis' Consumer Perception Survey

Dr. Dennis designed and conducted his consumer perception survey in this case using his extensive experience and according to leading scientific principles. The results from Dr. Dennis' consumer perception survey were significant, showing that over 90% of consumers perceived the "orthodontic" claim on Defendants' Products to mean the Products will promote healthy oral development, help prevent jaw or teeth misalignment, and are safe and beneficial for children over the age of 24 months. Dennis Report ¶¶ 21, 66; Dennis Reply ¶¶ 5, 6. Dr. Dennis also found that consumers' perceptions of the "orthodontic" descriptor do not vary statistically by the target

market for Defendants' Products: the survey findings are statistically indistinguishable for the Products marketed for use by babies aged 0-6 months, young children aged 6 to 18 months, and young children aged 18 to 36 months. Dennis Report ¶ 22. Dr. Dennis created a "disguised" version of Defendants' Products by removing the NUK branding from the images shown to the respondent. Dr. Dennis did this for a legitimate purpose: to ensure that respondents would answer his questions without bias based on their preconceived beliefs about the Products. Dennis Report ¶¶ 37, 44; Dennis Reply ¶ 35. Dr. Dennis provided the "Not sure/No expectation" response option so that that respondents having "non-attitudes" would have an appropriate mechanism to record a no-opinion response. Dennis Report ¶ 55; *see also* Dennis Reply ¶ 13.

### B.    Dr. Dennis' Materiality Survey

Dr. Dennis' materiality survey showed that the "Orthodontic" descriptor was material for 91.5% of the consumers and that only 5% of consumers would prefer to purchase the Products without the "Orthodontic" descriptor. Dennis Report ¶ 26; Dennis Reply ¶ 44. Dr. Dennis implemented controls to ensure the accuracy of his materiality survey. He used an unbranded and fictitious product to determine the materiality of the "orthodontic" descriptor. Dennis Report ¶¶ 37, 44. The omission of the NUK brand ensured that consumers' responses were not distorted by pre-existing beliefs and brand loyalties. *Id*. Further, Dr. Dennis included an option for survey respondents to select "Don't Know" as a control option to avoid bias. *Id*. ¶ 59; Dennis Reply ¶ 44.

## III.    ARGUMENT

Defendants' Motion is based on various methodological challenges to Dr. Dennis' design and implementation of his consumer perception and materiality surveys. However, *all* of Defendants' challenges go to the weight of the evidence, not its admissibility. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 228 (2d Cir. 1999) (purported errors in methodology of consumer surveys go only to the weight, not the admissibility, of the evidence).

A.    <u>**Legal Standard**</u>

There are three requirements for expert testimony admissibility: (1) the expert must be qualified; (2) his or her methodology(ies) must be scientifically reliable; and (3) the proffered testimony must "'assist the trier of fact to understand the evidence or to determine a fact in issue,'" an inquiry sometimes referred to as relevance or fit. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (citation omitted). Ultimately, "it is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

B.    <u>**Dr. Dennis is Qualified**</u>

Plaintiffs contend, and Defendants do not argue to the contrary, that Dr. Dennis is qualified to opine with regard to survey research. *See* Dennis Report ¶¶ 3-15 (citing his Curriculum Vitae).

C.    <u>**Dr. Dennis Designed the Consumer Perception Survey According to Best Practices, and is Scientifically Reliable**</u>

When evaluating the reliability of an expert's opinions, the Seventh Circuit has noted that district courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *U.S. v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (emphasis in original). "Where an expert's hypothetical explanation of an issue in litigation would 'aid the jury in its deliberations, that testimony satisfies Daubert's relevancy requirements.'" *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887 (E.D. Wisc. 2010) (quoting *Smith*, 215 F.3d at 718-19). As explained herein, Dr. Dennis' opinions satisfy the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), standard as he is indisputably qualified (*see* Section III.B above), his survey is scientifically reliable, and the results of the survey will assist the trier of fact (*see* Section III.E below). *See Bielskis*, 663 F.3d at 893. Furthermore, Defendants' criticisms of Dr. Dennis' opinions go to weight, rather than

admissibility. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010).

Dr. Dennis was tasked to design, conduct, and report on a reliable consumer survey to address issues relevant to this litigation. Dennis Report ¶ 17. He accomplished this in two steps. First, Dr. Dennis was asked to measure the extent to which (if at all) consumers understand the Products' packaging to communicate that the Products help promote healthy oral development and/or prevented jaw or teeth misalignment. *Id*.; Dennis Reply ¶ 5. Second, Dr. Dennis was asked to measure the extent to which (if at all) the aforementioned dental health benefits were material to a reasonable consumer's purchase decision. *Id*.

Here, Dr. Dennis' consumer perception survey employed a sound methodology and was designed and conducted taking into consideration leading scientific literature including, Robert Groves, *et al*., in their survey research textbook, *Survey Methodology* (Second Edition), and Peter Marsden and James Wright in the *Handbook of Survey Research* (Second Edition). *See* Dennis Report ¶ 19; *see also* Dennis Reply ¶ 10 n.2 and n.3. Further, Dr. Dennis took several steps to ensure that his consumer perception survey was reliable by selecting a representative sample of consumers (Dennis Report ¶¶ 61-63), instituting screening questions and quality control checks (*id*. ¶ 28), and conducting cognitive interviews (*id*. ¶¶ 33-37).

Dr. Dennis' consumer perception survey accurately and reliably tested Plaintiffs' theory that consumers understand the term "orthodontic" to mean that Defendants' Products help promote healthy oral development or help prevent jaw or teeth misalignment because it followed applicable scientific principles and included appropriate controls. The survey was not to designed to determine a consumers' definition of "orthodontic." Rather, it was to determine whether or not consumers understood the "orthodontic" descriptor to mean Defendants' Products promote healthy oral development. Dennis Report ¶ 16.

Dr. Dennis designed his survey with the actual real-world Product packaging save the brand name, which was omitted removed for bias elimination purposes. Dennis Report ¶ 16, n.1.

Dr. Dennis relied on Defendants' Rule 30(b)(6) testimony that confirmed all Product packaging was essentially the same, except for minor variations like color and font. *Id.* Defendants agree that the "orthodontic pacifier" statement—as shown to the survey participants—has always appeared prominently on the Products' packaging. *See* ECF No. 230-6 at ¶ 10.

Dr. Dennis' survey goes to the heart of Plaintiffs' theory of liability and directly advances the primary issue in Plaintiffs' case—whether reasonable consumers were misled by the "orthodontic" descriptor on Defendants' Products. The results of Dr. Dennis' consumer perception survey speak for themselves, as over 90% of survey respondents indicated that they perceived the "orthodontic" descriptor on Defendants' Products to mean the Products will promote healthy oral development. Dennis Report ¶ 66. Defendants' criticisms about Dr. Dennis' methodology of the survey go to weight, not admissibility. *See Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1225031, at *5 (N.D. Cal. Apr. 26, 2022) (Rejecting defendant's arguments that Dr. Dennis' consumer perception survey should be excluded and holding that "[a]ny concerns about the methodology of the survey go to weight, not admissibility, and [defendant] may explore these issues on cross-examination.").

### 1.    <u>*KIND* is Distinguishable</u>

Defendants attempt to repackage rejected arguments by drawing comparisons to one outlier decision, *KIND*. The design and methodology employed by Dr. Dennis in this matter has been accepted by courts across the country. *See* Dennis Report ¶¶ 10-13 (citing authority); *see also Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), (E.D.N.Y.); *Fishon v. Premier Nutritionals*, No. 3:16-cv-06980-RS, (N.D. Cal.); *Maeda v. Kennedy Endeavors, Inc.*, No. CV 18-00459 JAO (D. Haw.).

However, even if the Court were to agree with the *KIND* court's reasoning, the holding is not applicable to the facts here. At issue in the *KIND* survey was the <u>undefined</u> phrase "All Natural," which appeared on snack bar products. Fatal to the claims for the *KIND* plaintiffs was

the lack of record evidence demonstrating that a reasonable consumer could be misled by the "All Natural" claim. *KIND*, 2022 WL 4125065, at *13 ("plaintiffs must show that evidence [sic] would allow a trier of fact to determine that a reasonable consumer actually would hold the proposed understanding of the term 'All Natural.'"). Additionally, the *KIND* court identified possible "competing" theories regarding the definition of "All Natural." *Id.* at *3 n.8.

Here, no such competing theories exist, as there is a single plausible definition of "orthodontic." In contrast, "orthodontic" has a facially obvious meaning that only relates to a single concept: oral development. Defendants' documents and testimony as well as Plaintiffs' testimony supports such a finding. Assuming arguendo the meaning of "orthodontic" is not patently obvious—unlike the court's finding in *KIND*—here, there is record evidence to support a common understanding of orthodontic *and* that a reasonable consumer could be misled. The record of evidence includes Plaintiffs' testimony (confirming they purchased Defendants' pacifiers based on their belief that NUK pacifiers promote oral development, SAMF 15-22), Defendants' documents and testimony (highlighting the importance of the "orthodontic" label, Defendants' intent behind the "orthodontic" feature, and consumers' preference for an "orthodontic" pacifier, SAMF 3-13, 25-31, 34), and Defendants' expert reliance materials (confirming that "orthodontic shape" is nothing more than a description of a pacifier that promotes oral development, SAMF 36). Thus, the *KIND* court's conclusion that: <u>no evidence</u> existed to support that a reasonable consumer would hold the understanding of "All Natural" plaintiffs advanced is a far cry from the record before this Court. *See* 2022 WL 4125065, at *11.

Defendants distort Dr. Dennis' survey question in this case to try to fit *KIND*, where the court noted that "All Natural" never appeared in isolation and <u>always</u> appeared in the context of the "All Natural/Non GMO" statement. 2022 WL 4125065, at *7. In *KIND*, Dr. Dennis did not include the "Non GMO" phrase in his survey. *Id*. at *9. Here, "orthodontic" always appeared on the label of the Products without "shape," just as in Dr. Dennis' survey. In fact, Dr. Dennis' survey

included the language Defendants claim is critically missing (100% baby approved orthodontic shape"). Dennis Report ¶¶ 44, 53, 56. There is no similarity to *KIND*. "Orthodontic" appears without "shape" across Defendants' marketing and is the tagline on Defendants' website.

2. Defendants' Arguments as to Design are Flawed and Go to Weight, Not Admissibility

Arguments that the design of a survey is flawed go to weight, not admissibility. *See Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 910638, at *4 (N.D. Ill. Mar. 29, 2022).

(a) Use of closed-ended questions is appropriate.

Defendants take issue with Dr. Dennis' alleged failure to design a survey with open-ended questions. *See* Mot. at 5. However, Dr. Dennis relied on his extensive experience in designing his survey with closed-ended questions. Dennis Reply ¶¶ 10-13, 16-24 (citing authority); *see also* Section III.B above.

Utilizing an open-ended question format for a consumer perception survey like the one Dr. Dennis conducted is contrary to scientific literature. *See, e.g.*, Bradburn, N. M., Sudman, S., & Wansink, B. 2004. *Asking Questions: A Practical Guide to Questionnaire Design*, p. 167; Dennis Rebuttal ¶¶ 20-24. Open-ended questions can provide biased responses because lesser-educated or less literate subpopulations are less likely to answer them or answer them with the bare minimum of completeness to permit proper coding of the responses. Dennis Reply ¶¶ 21-22. Moreover, using open-ended survey questions would have been inappropriate for a consumer perception survey in this case leads to non-response bias and coding issues, which can be easily criticized as a subjective exercise. *Id*. Neither Defendants nor Defendants' expert, Sarah Butler, address or make mention of these *significant* biases.

Additionally, the *Reference Guide on Survey Research* implies that closed-ended questions may be better to "remind respondents of options that they would not otherwise consider or which

simply do not come to mind as easily." Reference Manual on Sci. Evid. Ch. 359 (3d ed.), Federal Judicial Center, *Reference Guide on Survey Research* (Shari Seidman Diamond), 2011 WL 7724258, at *22. Nonetheless, Defendants' arguments regarding Dr. Dennis' utilization of open-ended versus close-ended questions in such a survey go to the weight of the evidence, not admissibility.

(b)    Dr. Dennis' survey had proper control groups.

Defendants' argument that Dr. Dennis' perception survey had no control group fails and is an attempt to relitigate issues already litigated at class certification. Cert Order at *6. Moreover, Defendants' argument that Dr. Dennis' perception survey had no control group is a methodological challenge that goes to the weight of the evidence, not its admissibility. *See Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 CIV. 5804 (GEL), 2009 WL 959775, at *11 (S.D.N.Y. Apr. 8, 2009) (holding that criticism that consumer survey "failed to incorporate a control group," bore "exclusively on the weight to be given the survey rather than bearing on an admissibility determination"). Disputes over the strength of control questions likewise go to weight, not admissibility. *See, e.g.*, *Pinder v. 4716 Inc.*, No. CV-18-02503-RCC, 2020 WL 6081498, at *5 (D. Ariz. Oct. 15, 2020) (adequacy of control questions "goes to the weight given the survey"); *Lucent Techs., Inc. v. Microsoft Corp.*, No. 07-CV-2000 H (CAB), 2011 WL 13101230, at *15 (S.D. Cal. Feb. 4, 2011) (declining to exclude survey when the parties disagreed whether survey employed proper control questions).

Defendants' argument that Dr. Dennis' survey was flawed because it contained no control group ignores a multitude of factors. Dr. Dennis relied on his more than 20 years of experience and pertinent scientific literature to support his use of direct-questioning method, which does not rely on control groups. *See* Dennis Report ¶ 56; Dennis Reply ¶ 34 (citing Bradburn, N. M., Sudman, S., & Wansink, B. 2004. *Asking Questions: A Practical Guide to Questionnaire Design*. San Francisco: Jossey-Bass). Further, as the *Reference Manual on Scientific Evidence* discusses,

controls are often needed in business versus business disputes like trademark and Lanham Act cases because the factual question at issue is whether some specific element of advertising causes confusion between two competitor products or the competitor's false advertising causes consumers to choose one competitor product over another.[4] In Lanham Act cases that test such a causal proposition, it is not enough for a survey "simply to describe attitudes or beliefs or reported behaviors, but to determine the source of those attitudes or beliefs or behaviors."[5]

Here, however, that was not Dr. Dennis' assignment, nor is it a relevant issue. With respect to Dr. Dennis' consumer perceptions survey, his assignment was to measure consumers' perceptions of the "orthodontic" descriptor as displayed on Defendants' Products with respect to the Plaintiffs' theory of liability. A survey in a consumer false advertising case need only measure the consumer's perceptions of the alleged misrepresentations, not isolate the source of those perceptions. In contrast, a control group is recommended in trademark and Lanham Act cases challenging the conduct of a competitor where a causal link was required to prove that another organization was harmed.[6]

Dr. Dennis did, in fact, implement certain controls to address respondents' pre-existing beliefs. Indeed, Dr. Dennis used an unbranded product in his survey to avoid preconceived notions consumers may have had for Defendants' Products and brand. Dennis Report ¶¶ 37, 44. Dr. Dennis prominently labeled the *unbranded* product as "orthodontic" in order to replicate the part of the product package that is subject to this litigation. *Id*. ¶ 44. Dr. Dennis employed this same technique in several other cases including, but not limited to: *Ebin v. Kangadis Food Inc.*, No. 1:13-cv-02311,

---

[4] Shari S. Diamond, *Reference Guide on Survey Research*, p. 397.
[5] *Ibid.*
[6] *See Fed. Trade Comm'n v. On Point Glob. LLC*, No. 19-25046-CIV, 2021 WL 4891334, at *8 (S.D. Fla. Sept. 23, 2021) ("The failure to use a control group was not necessary, as it is unclear what would be controlled. While the Defendants cite to case law concerning the use of control groups in trademark infringement cases, under Section 5(a) [of the FTC Act] courts look to the 'net impression' created when determining whether a representation was likely to mislead."); *see also Reference Guide on Survey Research*, pp. 397-98 (discussion of control groups used in trademark infringement and Lanham Act cases).

(S.D.N.Y); *In re Scotts EZ Seed Litig.*, No. 12-CV-4727, (S.D.N.Y.); *Bowling v. Johnson & Johnson*, No. 1:17-cv-03982, (S.D.N.Y). Dr. Dennis' testimony and report in each of these cases was **not excluded** despite *Daubert* challenges by the defendants. In addition, Dr. Dennis included a "Not sure/No expectation" control response in his survey to avoid bias. Dennis Report ¶ 55. Lastly, as discussed above in Section III.C.2(a) above, Dr. Dennis designed his survey with closed-ended questions rather than open-ended to avoid *significant* bias concerns with the latter.

(c)    Defendants' cases are distinguishable.

*Strumlauf v. Starbucks Corp.* supports Plaintiffs' arguments here, where the court— acknowledging alleged flaws in Dr. Dennis' survey, **did not exclude** the survey, following the Ninth Circuit's guidance that challenges to a survey based on "bias" go to weight, not admissibility. No. 16-CV-01306-YGR, 2018 WL 306715, at * 6 (N.D. Cal. Jan. 5, 2018). Defendants' reliance on *O'Bannon v. National Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 975, 1000 (N.D. Cal. 2014), is likewise unavailing. There, the court took issue with the first question of the survey, which could have "primed" respondents and affected the questions that followed. *Id.* No such concern exists here as the response sections in Dr. Dennis' survey were clear and did not influence respondents' responses. More importantly, the court **did not exclude the report**, and Dr. Dennis testified at trial. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C-09-3329-CW, 2014 WL 6862783 (N.D. Cal. 2014).

Defendants' reliance on *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 949-50 (C.D. Cal. 2015), is distinguishable. In *ConAgra*, the court found that the expert was not qualified to opine on survey design. *Id*. at 951-52. This is not the case here where Dr. Dennis' expertise is not being challenged as he has more than 20 years' experience designing and conducting surveys.

Lastly, *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 351-52 (S.D.N.Y. 2008), *Hill's Pet Nutrition, Inc. v. Nutro Products, Inc.*, 258 F. Supp. 2d 1197, 1201 (D. Kan. 2003), and *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, No. 07 C 4718, 2010 WL 1687883,

at *7 (N.D. Ill. Apr. 26, 2010), are easily distinguishable as they are trademark cases, which require use of a vastly different standard, the likelihood of confusion between two competing products such that consumers would mistakenly believe they come from the same source. Further, in *Ultreo*, the court did not conduct a Rule 702 or *Daubert* analysis and instead assessed the weight and credibility of survey evidence at the preliminary injunction stage.

### D. Dr. Dennis' Materiality Survey is Scientifically Reliable

Dr. Dennis' materiality survey reliably tested the materiality of the "orthodontic" descriptor, and Defendants' criticisms go to the weight of the evidence, not admissibility. The Supreme Court has held that materiality "is a question common to all members of the class" when, as here, "the materiality of an alleged misrepresentation is judged according to an objective standard." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)). A "representation is 'material' . . . if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013); *accord Krueger v. Wyeth, Inc.*, No. 03CV2496-JAH, 2016 WL 3981125, at *2 (S.D. Cal. Apr. 4, 2016) ("[M]ateriality is found where the omitted or misrepresented information would have been important to the decision-making process." (quotation omitted)). "Materiality measures the natural capacity to influence, not whether the statement actually influenced any decision." *U.S. v. Lindsey*, 850 F.3d 1009, 1017 (9th Cir. 2017). Materiality need not be proven by extrinsic evidence such as consumer surveys. *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 39-40 (E.D.N.Y. 2009). Materiality may be proven by showing that the misrepresentation related to an inherent characteristic of the product. *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001); *Nat'l Basketball Ass'n. v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997); *accord Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 278 (2d Cir. 1981).

Here, in line with the disputed evidence, Dr. Dennis' materiality survey overwhelmingly shows that the "orthodontic" descriptor was material to reasonable consumers. Dennis Report ¶ 66; Dennis Reply ¶ 7. Defendants misconstrue Dr. Dennis' deposition testimony on the issue. Mot. at 11. Asking survey respondents about whether they would have purchased NUK orthodontic pacifiers as Defendants suggest, is contrary to scientific principles on survey design and implementation. Rather, Dr. Dennis designed his survey according to scientific standards and appropriately presented survey respondents with an unbranded product to control for survey respondents' pre-existing attitudes and beliefs about Defendants' Products. Dennis Report ¶¶ 37, 44. These pre-conceptions typically develop over time starting when Defendants displayed the "orthodontic" descriptor on its products.

In addition, Defendants argue that "Dennis created a scenario that is completely divorced from a consumer's real-world shopping experience." Mot. at 12. However, this is simply not true. Dr. Dennis made extensive use of packaging images from the actual Products to replicate consumers' real-world experience and made modifications to prevent respondents from associating the survey images with the Defendants' Products. Dennis Report ¶ 44; Dennis Reply ¶¶ 53-55. For example, Dr. Dennis removed the "NUK" brand logo, and changed the color of the packaging. *Id*. Dr. Dennis included other attributes from the packaging of Defendants' Products including, but not limited to, the same shape of the packaging, design of the age descriptor, and a clear window showing the pacifiers. *Id*.

Furthermore, to ensure the reliability of his materiality survey, Dr. Dennis included a "don't know/not sure" control option. *Id*. ¶ 59; Dennis Reply ¶ 44. By including a "don't know/not sure" survey response option, respondents were afforded the opportunity to either select one of the fictious products in Dr. Dennis' survey or indicate that they did not have a preference. *Id*. This is critical because it does not force respondents to respond if they did not feel one of the two responses—excluding the control option—was adequate. *Id*. Failure to have a "don't know/not

sure" option was critical in the district courts' criticism of the surveys in *L & F Prod., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*, 845 F. Supp. 984, 998 (S.D.N.Y. 1994), *aff'd*, 45 F.3d 709 (2d Cir. 1995), and *Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*, No. 06 CIV. 0034 (PAC), 2006 WL 2588002, at *23 (S.D.N.Y. Sept. 6, 2006), because failing to have the "Don't know/not sure" option departed from generally accepted market research practices. While Defendants may not agree with the adequacy of Dr. Dennis' control question, its criticisms go to the weight of the survey, not its admissibility. *See Pinder*, 2020 WL 6081498, at *5.

Defendants' arguments with respect to focalism bias (Mot. at 13-14)—the tendency to place too much focus or emphasis on a single factor or piece of information when making judgments or predictions—go to the weight of the expert's opinion, not its admissibility. *See In re Scotts EZ Seed Litig.*, No. 12-CV-4727, 2017 WL 3396433, at *9-10 (S.D.N.Y. Aug. 8, 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 603 (N.D. Cal. 2018). Disputes over the strength of control questions likewise go to weight, not admissibility. *See, e.g.*, *Pinder*, 2020 WL 6081498, at *5 (adequacy of control questions "goes to the weight given the survey"); *Lucent Techs.*, 2011 WL 13101230, at *15 (declining to exclude survey when the parties disagreed whether survey employed proper control questions).

Defendants' reliance on *THOIP v. Walt Disney Co.,* 690 F. Supp. 2d 218, 241 (S.D.N.Y. 2010) is imprudent. *THOIP* was a trademark infringement action where the proffered survey sought to measure consumer confusion between two products. This case is not a trademark infringement case, and that distinction is of consequence. The issue here is not whether consumers can be confused by similar attributes of two competing products such that consumers could believe they originated from the same source. Here, Dr. Dennis' survey was a consumer perception survey based on widely accepted methodologies that would assist the trier of fact. The results of Dr. Dennis' consumer perception survey were compelling, as over 90% of consumers expected that Defendants' Products with the "orthodontic" descriptor would help promote healthy oral

development, and 91.5% of the consumers surveyed indicated that the "Orthodontic" descriptor was material in their purchasing decision and that only 5% of consumers would prefer to purchase the Products without the "Orthodontic" descriptor. Dennis Report ¶ 26.

### E. Dr. Dennis' Opinions Will Assist the Trier of Fact

Dr. Dennis' opinions will undoubtedly assist the trier of fact determine, *inter alia*, whether a reasonable consumer would be misled by Defendants' "orthodontic" representation. Dr. Dennis' analyses are helpful because he has provided evidence—supported by significant record evidence, including Plaintiffs' testimony, Defendants' own documents and testimony—that reasonable consumers understood the "orthodontic" descriptor on Defendants' Products to mean they promote healthy oral development or prevent jaw or teeth misalignment—both of which intrinsically relate to the promotion of babies' oral development—Defendants' stated mission for over 70 years. Dr. Dennis' survey will assist a jury in answering common questions as to Plaintiffs' case theory.

"The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Takeda Pharms. USA, Inc. v. Spireas*, No. CV 17-0452, 2019 WL 9596536, at *1 (E.D. Pa. Sept. 4, 2019) (citing *Kannankeril v. Terminix Int'l, Inc*., 128 F.3d 802, 806 (3d Cir. 1997) (citations omitted)). "As the Supreme Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id*. (citing *Daubert*, 509 U.S. at 595). The results of Dr. Dennis' survey establish that over 90% of survey respondents understood the "orthodontic" descriptor to mean the Products will promote healthy oral development or prevent teeth misalignment. Dennis Reply ¶ 6. The results of Dr. Dennis' consumer perception survey are significant and will assist the jury in determining whether or not reasonable consumers were deceived.

## IV. CONCLUSION

For the aforementioned reasons, the Court should deny Defendants' Motion in its entirety.

Dated: June 29, 2023

Respectfully submitted,

By: */s/ Melissa S. Weiner*
MELISSA S. WEINER
  *mweiner@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

EDWIN J. KILPELA, JR.
  *ekilpela@lcllp.com*
JAMES M. LAMARCA
  *james@lcllp.com*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

KATRINA CARROLL
  *kcarroll@lcllp.com*
**LYNCH CARPENTER LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265
Facsimile: (312) 750-1591

DANIEL L. WARSHAW
  *dwarshaw@pwfirm.com*
MICHAEL H. PEARSON
  *mpearson@pwfirm.com*
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

AMY KELLER
akeller@dicellolevitt.com
ADAM J. LEVITT
alevitt@dicellolevitt.com
CHRISTOPHER STOMBAUGH
cstombaugh@dicellolevitt.com
**DICELLO LEVITT LLC**
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
Telephone: (312) 214-7900

*Attorneys for Plaintiffs and the Certified Class*