**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLI, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>NEWELL BRANDS INC. and GRACO CHILDREN'S PRODUCTS INC.,<br><br>        Defendants. | Case No.: 1:19-cv-06836<br><br>The Honorable Nancy L. Maldonado<br><br>Magistrate Judge Young B. Kim |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE
TESTIMONY AND EXPERT REPORT OF PROFESSOR JEAN-PIERRE H. DUBÉ**

**[REDACTED VERSION FILED ON PUBLIC DOCKET]**

994690.3

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES .......................................................................................... ii

GLOSSARY OF TERMS .............................................................................................. v

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 1

    A.    The Term "Orthodontic" is Material to the Reasonable Consumer .................... 1

    B.    Dr. Dubé's Methodology is Well-Established and Scientifically Reliable ......................... 2

III.    ARGUMENT ....................................................................................................... 4

    A.    Legal Standard .................................................................................................... 4

    B.    Dr. Dubé is Qualified ......................................................................................... 4

    C.    Dr. Dubé's Conjoint Analysis is Scientifically Reliable ................................... 4

        1.    The Survey was Designed Pursuant to Best Practices ................................... 5

        2.    Dr. Dubé Reliably Measures Price Premium Damages ................................. 7

            (a)    Dr. Dubé executed on the promised methodology .................................. 8

            (b)    The magnitude of damages only reinforces the importance of the "orthodontic" feature. ................................................................................. 9

            (c)    Defendants' "negative prices" argument is an impossible hypothetical. .............. 9

        3.    Defendants' Supply Side Arguments Amount to a "Battle of the Experts" ................ 10

            (a)    Defendants' "market price" argument is really a difference in opinion among experts. .......................................................................................... 10

            (b)    Defendants' criticisms are veiled supply-side arguments ...................... 11

            (c)    Dr. Dubé appropriately accounted for the supply side. ......................... 11

            (d)    Defendants' Cited Cases are Distinguishable. ....................................... 13

    D.    Dr. Dubé's Opinions Will Assist the Trier of Fact: the Jury ............................ 14

    E.    New York Statutory Damages Can Be Reliably Calculated .............................. 15

IV.    CONCLUSION .................................................................................................. 15

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)....................................................................8

*Bailey v. Rite Aid Corp.*,
    338 F.R.D. 390 (N.D. Cal. 2021)..............................................................6

*Benson v. Newell Brands, Inc.*,
    No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)....................... *passim*

*Bielskis v. Louisville Ladder, Inc.*,
    663 F.3d 887 (7th Cir. 2011) ...................................................................4

*Cardenas v. Toyota Motor Corp.*,
    No. 18-22798, 2021 WL 5811741 (S.D. Fla. Dec. 6, 2021)......................5, 10, 11

*Colangelo v. Champion Petfoods USA, Inc.*,
    No. 6:18-CV-1228, 2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) .........................11

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..............................................................................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)...................................................................1, 4, 8, 15

*In re Emerson Elec. Co. Wet/Dry Vac Mktg. & Sales Litig.*,
    No. 4:12MD2382 HEA, 2021 WL 5003102 (E.D. Mo. Oct. 28, 2021) .................14

*In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    567 F. Supp. 3d 406 (W.D.N.Y. 2021) ......................................................11

*In re Gen. Motors LLC Ignition Switch Litig.*,
    427 F. Supp. 3d 374 (S.D.N.Y. 2019)........................................................14

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) .....................................................11

*Hawes v. Macy's Stores W., Inc.*,
    No. 1:17-cv-754, 2022 WL 194407 (S.D. Ohio Jan. 22, 2022).........................11

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) .......................................................14

*Kleen Prods. LLC v. Int'l Paper*,
 No. 10 C 5711, 2017 WL 2362567 (N.D. Ill. May 31, 2017) .........................................4, 5, 8

*Maldonado v. Apple, Inc.*,
 No. 16-cv-4067, 2021 WL 1947512 (N.D. Cal. May 14, 2021).................................................11

*McMorrow v. Mondelēz Int'l, Inc.*,
 No. 17-cv-2327, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ..................................................11

*Mednick v. Precor, Inc.*,
 320 F.R.D. 140 (N.D. Ill. 2017)...........................................................................................1, 15

*Milan v. Clif Bar & Co.*,
 340 F.R.D. 591 (N.D. Cal. Sep. 27, 2021)................................................................................11

*Mullins v. Direct Digital, LLC*,
 No. 13 CV 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014)...........................................15

*In re MyFord Touch Consumer Litig.*,
 291 F. Supp. 3d 936 (N.D. Cal. 2018) .................................................................11, 12, 13, 14

*In re NJOY, Inc. Consumer Litig.*,
 120 F. Supp. 3d 1050(C.D. Cal. 2015) ....................................................................................14

*Passman v. Peloton Interactive, Inc.*,
 No. 19-cv-11711 (LJL) 2023 WL 3195941 (S.D.N.Y. May 2, 2023) ....................................13

*Saavedra v. Eli Lilly & Co.*,
 No. 2:12-cv-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ...............................14

*Saltzman v. Pella Corp.*,
 606 F.3d 391 (7th Cir. 2010) ...................................................................................................15

*Sharpe v. A&W Concentrate Co.*,
 No. 19-cv-768, 2021 WL 3721392 (E.D.N.Y. July 23, 2021).................................................11

*Smith v. Ford Motor Co.*,
 215 F.3d 713 (7th Cir. 2000) .....................................................................................................4

*Sonneveldt v. Mazda Motor of Am., Inc.*,
 No. 8:19-CV-01298-JLS, 2022 WL 17357780 (C.D. Cal. Oct. 21, 2022) .........................5, 11

*Stevens v. Ford Motor Co.*,
 No. 2:18-CV-00456, 2022 WL 19978265 (S.D. Tex. Sept. 29, 2022) ...................................11

*Suchanek v. Sturm Foods, Inc.*,
 311 F.R.D. 239 (S.D. Ill. 2015) .................................................................................................2

*In re Takata Airbag Prod. Liab. Litig.*,
    No. 15-MD-02599, 2022 WL 3584510 (S.D. Fla. Aug. 16, 2022)....................................3, 11

*Takeda Pharms. USA, Inc. v. Spireas*,
    No. CV 17-0452, 2019 WL 9596536 (E.D. Pa. Sept. 4, 2019) ...............................................15

*Valelly v. Lynch*,
    No. 19-CV-7998 (VEC), 2023 WL 2918982 (S.D.N.Y. Apr. 12, 2023)...............................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    500 F. Supp. 3d 940 (N.D. Cal. 2020) .....................................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    MDL No. 2672 CRB, 2020 WL 13228418 (N.D. Cal. Feb. 21, 2020)...................................14

*Williams v. Illinois*,
    567 U.S. 50 (2012)...................................................................................................................11

*Zakaria v. Gerber Prods. Co.*,
    No. LA CV15-00200 JAK, 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) ..............................14

*Zarinebaf v. Champion Petfoods USA Inc.*,
    No. 18 C 6951, 2022 WL 910638 (N.D. Ill. Mar. 29, 2022) ..................................................11

## GLOSSARY OF TERMS

| TERM | DESCRIPTION |
|---|---|
| Plaintiffs | Plaintiffs Shelly Benson and Lisa Caparelli, collectively. |
| Defendants | Defendants Newell Brands Inc. and Graco Children's Products Inc., collectively. |
| Orthodontic Pacifiers or Products | Defendants' "orthodontic" pacifiers at issue are sold under the NUK brand name and include the following products, as well as any other NUK-branded "orthodontic" pacifiers: NUK Orthodontic Pacifiers, NUK Space™ Orthodontic Pacifiers, NUK Latex Orthodontic Pacifiers, NUK Sports Orthodontic Pacifiers, NUK Confetti Orthodontic Pacifiers, NUK Fashion Orthodontic Pacifiers, NUK Sensitive™ Orthodontic Pacifiers, and NUK Juicy Orthodontic Pacifiers. |
| Weiner Decl., Ex. | Declaration of Declaration of Melissa S. Weiner in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Oppositions to Defendants' Motions to Exclude the Testimony and Expert Reports of Professor Jean-Pierre H. Dubé, Dr. Jeffrey A. Dean, and J. Michael Dennis, Ph.D., filed concurrently herewith. Exhibits cited as "Ex. __". |
| Complaint | First Amended Complaint, ECF No. 31 (cited as "FAC ¶ __"). |
| Cert. Order | Memorandum Opinion and Order granting Plaintiffs' Motion for Class Certification, dated November 16, 2021 (ECF No. 126), *Benson v. Newell Brands, Inc*., No. 19 C 6836, 2021 WL 5321510, at *1 (N.D. Ill. Nov. 16, 2021). |
| Motion, Mot. | Defendants' Motion to Exclude Testimony and Expert Report of Professor Jean-Pierre H. Dubé (ECF No. 240) and Memorandum of Law (ECF No. 241). |
| Martin Merits Report | Expert Report of Denis Martin, Ph.D. (ECF No. 243-4). |
| Butler Merits Report | Expert Report of Sarah Butler (ECF No. 243-6). |
| Defendants' Experts | Denise Martin and Sarah Butler. |
| Martin Merits Dep. | Deposition of Denise Martin, Ph.D., dated January 10, 2023, attached as Ex. 2. |
| Dubé Cert. Report | Expert Report of Professor Jean-Pierre H. Dubé in support of Plaintiffs' Motion for Class Certification (ECF No. 108-2). |
| Dubé Cert. Response | Expert Report of Professor Jean-Pierre H. Dubé (Response) in support of Plaintiffs' Motion for Class Certification (ECF No. 108-6). |
| Dubé Merits Report | Expert Report of Professor Jean-Pierre H. Dubé (Merits) (ECF No. 243-5). |
| Dubé Merits Response | Expert Report of Professor Jean-Pierre H. Dubé (Merits Response), attached as Ex. 3. |
| Reports | Reports refers to the Dubé Cert. Report, Dubé Cert. Response, Dubé Merits Report, and Dubé Merits Response. |
| Dubé Merits Dep. | Deposition of Professor Jean-Pierre H. Dubé, dated December 8, 2022, attached as Ex. 7. |
| MSJ Opp. | Plaintiffs Opposition to Defendants Motion for Summary Judgment filed concurrently herewith. |

I. **INTRODUCTION**

Dr. Dubé, an indisputably qualified expert in conjoint analysis and econometrics, offered scientifically reliable opinions that match Plaintiffs' theory of liability and will assist the trier of fact. Defendants' challenges to Dr. Dubé's well-supported methodology go toward the weight that should be given to the opinions—a jury issue—rather than admissibility. Dr. Dubé's opinions clearly satisfy the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993), standard and must be admitted. *See also Benson v. Newell Brands, Inc*., No. 19 C 6836, 2021 WL 5321510, at *9 (N.D. Ill. Nov. 16, 2021) (citing *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014), and *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)).

II. **BACKGROUND**

This litigation concerns Defendants' deceptive labeling of pacifiers as "orthodontic," a false and misleading prominent descriptor, which caused reasonable consumers to suffer an economic injury insofar as they paid a price premium for Products that did not deliver as promised. FAC ¶ 2. Whether the Orthodontic Pacifiers are or are not orthodontic—or whether a reasonable consumer was misled—is of no consequence to the admissibility of Dr. Dubé's expert opinions.

A. **The Term "Orthodontic" is Material to the Reasonable Consumer**

████████████████████████████████████████████████████████████████

████████ *See* Dubé Merits Report ¶ 39 (citing Defendants' documents); Dubé Rebuttal Report at n.102; *see also* MSJ Opp. Section IV. The term "orthodontic" appears front and center on every Orthodontic Pacifier's packaging. *Id.* While the common evidence (and common sense) demonstrate the meaning of orthodontic, ultimately a jury will determine whether a reasonable consumer was misled by Defendants' "orthodontic" labeling as it relates to oral development (and not, as Defendants suggest, the "shape" of a pacifier nipple, which is somehow *disconnected* from oral development). *See Mednick v. Precor, Inc.*, 320 F.R.D. 140, 152 (N.D. Ill. 2017) (whether a reasonable person would find representations deceptive must be left to the factfinder); *see also*

*Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239 (S.D. Ill. 2015) (same).

What's more is that this issue has already been deemed a question for the jury by Judge Guzman: "the central issue in the case is whether defendants' packaging and marketing was likely to mislead a reasonable consumer." Cert Order at *5. The Court found materiality will naturally follow as "the claims of every class member will rise or fall on the resolution of the question of whether defendants' packaging was likely to deceive a reasonable consumer." *Id.* at *6.

**B.      Dr. Dubé's Methodology is Well-Established and Scientifically Reliable**

Dr. Dubé's use of conjoint analysis designed to isolate the portion of the payment attributable to a misrepresented product feature and to calculate price-premium damages has been widely accepted by courts. *See* Cert. Order at *5 (citing authority); *see also* Dubé Cert. Report ¶ 54 (citing authority); Dubé Merits Report ¶ 30. This analysis—upon which the Court granted class certification—is precisely what Dr. Dubé proposed at class certification, (*see* Dubé Cert. Report ¶ 14), and executed on in the merits phase (*see* Dubé Merits Report ¶ 16).

At class certification, Dr. Dubé clearly explained his assignment, Dubé Cert. Report ¶ 14, which included his anticipated methodology and reasoning as well as the assumptions that were subject to verification when the conjoint was actually performed. And he did just that. Dubé Merits Report ¶ 16. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████[1] This proposed—and executed—methodology met all generally accepted standards for "choice-based conjoint" analysis. *See* Dubé Cert. Report § V, App'x 4 (References); Dubé Merits Report § II.B, App'x C (Materials Relied Upon); *see also* Section III.C

---

[1] Defendants argue that the survey did not reflect real-world products. *See* Mot. at 12-14. However, there is no mandate in choice-based surveys, and it runs counter to the idea, that the products in the choice set exactly match real-world products only. A well-designed conjoint analysis will intentionally vary features, and thus not exactly match real-world products. And, in any event, the features considered are all reflected in real-world products. *See* Dubé Merits Report ¶¶ 75-77.
████████████████████████████████████████████████

below. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████            ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Dr. Dubé has used nearly the exact methodology in numerous cases across the country successfully. *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.*, No. 15-MD-02599, 2022 WL 3584510 (S.D. Fla. Aug. 16, 2022); *see also* Ex. 4 (*Takata* court granting class certification where

---

[2] While ultimately an issue of weight and *not* admissibility, ████████████████████

████████████████████████████████████████████████

Dr. Dubé actually ran the full conjoint analysis and marketplace simulation holding the volume of commerce fixed).

## III.    ARGUMENT

### A.    Legal Standard

There are three requirements for expert testimony admissibility: (1) the expert must be qualified, (2) his or her methodology(ies) must be scientifically reliable, and (3) the proffered testimony must "'assist the trier of fact to understand the evidence or to determine a fact in issue,'" an inquiry sometimes referred to as relevance or fit. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (citation omitted). Ultimately, "it is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

### B.    Dr. Dubé is Qualified

Plaintiffs contend, and Defendants do not argue to the contrary, that Dr. Dubé is qualified to opine with regard to common proof and calculation of damages on a class-wide basis. *See* Dubé Cert. Report ¶¶ 5-13 (citing his Curriculum Vitae); Dubé Merits Report ¶¶ 1-10 (same).

### C.    Dr. Dubé's Conjoint Analysis is Scientifically Reliable

Defendants' primary *Daubert* argument goes to the reliability of Dr. Dubé's analyses. A reliable expert opinion is "reasoned and founded on data [and] … utilize[s] the methods of the relevant discipline." *Bielskis*, 663 F.3d at 894. In examining reliability, courts generally consider a number of factors. *See Kleen Prods. LLC v. Int'l Paper*, No. 10 C 5711, 2017 WL 2362567, at *2 (N.D. Ill. May 31, 2017). "[T]he Court need not apply all the factors to all experts or in every case, and it may consider factors other than those listed" (*id.*, at *3 (internal citation omitted)), but the court must take care not to "'usurp[] the role of the jury, and therefore abuse[] its discretion, [by] unduly scrutiniz[ing] the quality of the expert's data and conclusions rather than the reliability

of the methodology the expert employed.'" *Id.*, at *4 (citing *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)).

Defendants offer an oversimplified and mischaracterized summary of the conjoint analysis conducted in this case. *See* Mot. at 4-5. As set forth in detail in the Dubé Merits Report (¶¶ 33-47, 62-88) and Rebuttal (¶¶ 34-61), the design and implementation of the conjoint survey and analysis utilized by Dr. Dubé are based on well-established principles and methodologies.

### 1.    The Survey was Designed Pursuant to Best Practices

The entirety of the design and implementation of Dr. Dubé's conjoint survey is 29 pages (Dubé Merits Report § II.B) and contains painstaking detail regarding the choice of features, brands, package size, distractor claims, the target survey population, and more in over 60 pages of appendices in addition to the also-detailed Merits Report.

; *see also* Cert. Order at *5, n.6. There is nothing novel about Dr. Dubé's execution of the conjoint survey in this consumer fraud action, which has become the most prevalent approach in the industry. *See* Dubé Report at n.26 (citing authority).

*First*, Defendants' contention that Dr. Dubé's survey failed to use actual product packaging is patently false and also seeks to hold Dr. Dubé to a standard that <u>is not</u> generally accepted.[3] Furthermore, issues relating to the design, including the many inputs, factors, and presentation, are all issues for a jury to contemplate *the amount of weight to give the opinions. See Cardenas v. Toyota Motor Corp.*, No. 18-22798, 2021 WL 5811741, at *5 (S.D. Fla. Dec. 6, 2021); *Sonneveldt*



[3]

Dube Merits Rebuttal ¶¶ 56-58. This challenge must fail.

*v. Mazda Motor of Am., Inc.*, No. 8:19-CV-01298-JLS, 2022 WL 17357780, at *16-17 (C.D. Cal. Oct. 21, 2022). ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████

███████████████████████████████████████████████████

██████████████████████████████████████████████ ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[4] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████

Defendants further criticize Dr. Dubé for not using common evidence of the material features (*see* Mot. at 12-14), but they have presented nothing to show that any of the features they claim matter are important (or more important) to consumers than the ones Dr. Dubé chose. *See* Dubé Rebuttal Report ¶¶ 49-50. In advancing this argument, Defendants conflate two concepts: 1) whether Dr. Dubé "controlled" for other features (he did) and 2) whether he "isolated" the effect of any feature other than "orthodontic," the Challenged Claim. ███████████████████████████████
████████████████████████████████████████████████ Further, Defendants' argument that Dr. Dubé failed to include "important" features is entirely self-serving—Defendants had the opportunity at <u>both</u> the class certification <u>and</u> merits phases to run their own survey as to which attributes are important to consumers or show that Dr. Dubé's or the descriptors (or lack thereof) were material. Because conjoint results can be evidence of materiality, *see Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 403-04 (N.D. Cal. 2021) and Defendants did nothing in rebuttal, these arguments should be discounted. *See* Cert. Order at n.6, *6 ("Again, it is not the Court's function to connect the dots for defendants. Their undeveloped criticism … **goes to its weight at the merits stage** and does not alter the Court's conclusion that plaintiffs can use common proof to establish materiality." (emphasis added)); *see also* Martin Merits Dep. 23:19-24:2, 32:14-19, 34:5-11; *see generally* ECF No. 221, Plaintiffs' Motion to Exclude the Expert Testimony of Defendants' Expert Denise Martin, Ph.D.
[6] Regarding the most important feature choice in this litigation—the term "orthodontic"—Defendants argue that Dr. Dubé's survey did not adequately represent or emphasize the term. *See*

*Third*, unable to attack credibly the acceptance of conjoint analysis to measure class-wide damages, Defendants make a scattershot argument that attacks Plaintiffs' theory of liability (that the use of "orthodontic" could possibly mislead the reasonable consumer). *See* Mot. at 2. But whether the jury ultimately finds for Plaintiffs will be answered by a trier of fact for the Class as a whole and is a matter *outside* of Dr. Dubé's purview.[7]

██████████████████████████████████████

██████████████████████████████████████

████████████████████████ Even assuming *arguendo* that Defendants' challenges to any aspect of the survey have merit, none of them render it inadmissible. *See* Section III.C.3 below.

### 2. Dr. Dubé Reliably Measures Price Premium Damages

Following the successful implementation of the survey, Dr. Dubé measured the price premium alleged by Plaintiffs and calculated classwide damages. *See* Dubé Merits Report ¶¶ 90-92. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████[8]

---

Mot. at 12. ████████████████████████

[7] And the Court has already ruled on this issue. Cert. Order at n.5.
[8] Defendants make two additional points in passing.

(a)     *Dr. Dubé executed on the promised methodology.*

As discussed above, Dr. Dubé conducted the survey and analysis just as he represented he would at class certification and calculated a price premium. Dubé Merits Rebuttal ¶¶ 19, 22, 23.

Defendants argue that Dr. Dubé made material changes to his methodology that warrant his disqualification. Mot. at 3-4. Not so. First, Dr. Dubé made minor adjustments to the variables, features, and constraints in the conjoint; none of which are so material that they would call into question the scientific basis and well-established methodology. "[A] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method does not itself require exclusion under *Daubert*; exclusion is only warranted if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). While the *Amorgianos* holding applies to expert modifications during the class certification phase, here the Court has *already approved* of Dr. Dubé's methodology, and thereby has deemed it to be reliable. Therefore, it follows that any slight, or nuance[9], modification to this already approved methodology should not prompt exclusion by the Court.



---

[9] While courts have not defined what constitutes a "material" change, a number of cases in this Circuit have addressed the issue. *See, e.g.*, *Kleen Prods.*, 2017 WL 2362567 at *4 (citing *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013)). In each instance, changes were deemed material when they had a significant impact on the methodology and results. Neither of which occurred here.

████████████████████████████████████████████████████

        (b)     *The magnitude of damages only reinforces the importance of the "orthodontic" feature.*

Defendants also critique Dr. Dubé's damages results on the basis that at face value they seem "absurd." Mot. at 1. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Section III.C.2(a) above.

        (c)     *Defendants' "negative prices" argument is an impossible hypothetical.*

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[REDACTED]

3. <u>Defendants' Supply Side Arguments Amount to a "Battle of the Experts"</u>

Knowing full well that Dr. Dubé is qualified, and his methodologies are scientifically reliable, Defendants attempt a stale Hail Mary argument—consistently rejected by the minority of courts—related to supply side consideration in a conjoint analysis. *See* Section III.C.3(d) below.

(a) *Defendants' "market price" argument is really a difference in opinion among experts.*

In an attempt to argue that Dr. Dubé failed to properly set and calculate the "market price" as promised or supposedly required by law, Mot. at § I, Defendants suggest there is some standardized, "one size fits all" definition of "price premium." Defendants far oversimplify and distort the law, which cannot possibly require the specificity that Defendants contend. *See* Mot. at 8. In fact, each of the definitions Defendants proffer are generally in line with the price premium Dr. Dubé calculated. *See* Dubé Cert. Report ¶ 21; Dubé Merits Report ¶ 24.

This point is underscored by Defendants plain restatement of the definition of "price premium" as utilized by Dr. Dubé: [REDACTED]

[REDACTED]

[REDACTED] As more fully discussed in Section III.C.3(b) below, Dr. Dubé properly calculated the price premium for this case. This argument by Defendants is merely a difference in expert opinion for the jury to weigh. *See Cardenas*, 2021 WL 5811741, at *5 ("A difference in opinion is not a basis for exclusion of an expert opinion under Daubert standards.").

(b)    *Defendants' criticisms are veiled supply-side arguments*

Dr. Dubé calculated the price premium using a scientifically reliable, well-established methodology. *See* Section III.C.2 above. Each of Defendants' criticisms are veiled supply-side arguments, and Dr. Dubé's model does account for supply-side factors in calculating the price premium. But such arguments go to the *weight* of the opinion, <u>not admissibility</u>. Indeed, courts across the country have consistently recognized that the trier of fact is entitled to weigh supply-side issues. *See Williams v. Illinois*, 567 U.S. 50, 57 (2012); *see also Sonneveldt*, 2022 WL 17357780, at *16-17; *Stevens v. Ford Motor Co.*, No. 2:18-CV-00456, 2022 WL 19978265, at *12 (S.D. Tex. Sept. 29, 2022) ("Ultimately, the Court finds that the supply-side arguments present in this case go toward the weight, rather than the admissibility…"); *Cardenas*, 2021 WL 5811741, at *5; *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018).

(c)    *Dr. Dubé appropriately accounted for the supply side.*

█████████████████████████████████████████████████████████████████████

███████ *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 910638, at *4 (N.D. Ill. Mar. 29, 2022) (denying exclusion where expert "adequately accounted for supply side factors … by using actual market prices" while "holding supply constant").[12] ███████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

[12] *See also Takata*, Ex. 4; *Colangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228, 2022 WL 991518, at *9 (N.D.N.Y. Mar. 31, 2022); *Hawes v. Macy's Stores W., Inc.*, No. 1:17-cv-754, 2022 WL 194407, at *6 (S.D. Ohio Jan. 22, 2022), *appeal pending sub nom. In re Macy's W. Stores, Inc.* (6th Cir.); *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs. & Prod. Liab. Litig.*, 567 F. Supp. 3d 406, 415 (W.D.N.Y. 2021); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 601 (N.D. Cal. Sep. 27, 2021); *Sharpe v. A&W Concentrate Co.*, No. 19-cv-768, 2021 WL 3721392, at *8 (E.D.N.Y. July 23, 2021); *Maldonado v. Apple, Inc.*, No. 16-cv-4067, 2021 WL 1947512, at *22 (N.D. Cal. May 14, 2021); *McMorrow v. Mondelēz Int'l, Inc.*, No. 17-cv-2327, 2021 WL 859137, at *4 (S.D. Cal. Mar. 8, 2021); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969-72 (N.D. Cal. 2018).

As discussed in Section III.C.3(a) above, regardless of who is right, this difference of opinion is an issue for the trier of fact and should not be for the Court to decide. *MyFord Touch*, 291 F. Supp. 3d at 970, 971 (holding that despite inconsistencies in plaintiffs' expert's analysis "[t]he jury is entitled to weigh the credibility of Mr. Boedeker's assumption, and Ford will have the opportunity

---

[13] *See, e.g.*, *MyFord Touch*, 291 F. Supp. 3d at 971.

to cross-examine him[]" because the impact is not "indisputably wrong." (citing *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)). In *MyFord Touch*, the court agreed with Dr. Dubé's reasoning in holding the volume of commerce fixed: "Assuming that fewer consumers were injured in the hypothetical world than were injured in the real world runs the risk of undercompensating the real-world injured consumers." 291 F. Supp. 3d at 971.[14] This is precisely what Defendants argue for—allowing the but-for quantities to adjust thereby allowing the defendant to profit from the misrepresentation in the as-is world. For the same reasons as in *MyFord Touch*, this argument should fail. *See* 291 F. Supp. 3d at 971.

        (d)    *Defendants' Cited Cases are Distinguishable.*

In *Passman v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LJL) 2023 WL 3195941 (S.D.N.Y. May 2, 2023), the court found fundamental flaws with the methodology utilized by plaintiffs' experts, not nuanced modifications to an otherwise reliable methodology. *Id.* at *20, *25. In *Passman* the "challenged claims" were hard to decipher since they do not refer to a feature of a product (like here), but instead refer to a feature of the other complementary good. Second, the court in *Passman* was unconvinced that many people actually saw the challenged claim. *Id.* at *20, *22. Here, there is little doubt that *everyone* saw the Challenged Claims as they are prominently displayed on the front label. Finally, competitor products were not considered in *Passman*. *Id.* at *29. Not so here. Dr. Dubé allowed competitors' prices to adjust on the supply side. Thus, the *Passman* decision is distinguishable and irrelevant.

Defendants cite several cases in support of their argument that "[c]ourts have rejected `fixed supply' simulations like Dubé's." Mot. at 11. ████████████████████ ████████████ *See* n.8, *infra*. Further, each of the cited cases are distinguishable:

---

[14] A defendant should not be permitted to profit on the basis that calculating damages may be theoretically challenging. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (noting that damages "[c]alculations need not be exact" so long as they "attempt" to "measure only those damages attributable to [plaintiffs'] theory").

- *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, 500 F. Supp. 3d 940 (N.D. Cal. 2020);[15] *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 383 (S.D.N.Y. 2019) – Both misinterpret the "willing seller" theory of economics in line with the "negative price" argument discussed and countered in Section III.C.2(c) above. Defendants would never *pay a customer* to take a pacifier; they would just dispose of them. Second, they reach the mysterious conclusion that experts must reduce damages (potentially to zero) to account for the fact that a defendant that knew in advance (in a but-for world) it deceived consumers and might have manufactured fewer products in the real (as-is) world. This is simply wrong. *See, e.g.*, *MyFord Touch*, 291 F. Supp. 3d at 971.[16]

- *In re NJOY, Inc. Consumer Litig.*, 120 F. Supp. 3d 1050, 1073-75(C.D. Cal. 2015) – The court there that held that the expert's choice-based conjoint analysis measuring consumer willingness-to-pay satisfied reliability requirements of Daubert. As discussed, there is no uniform conjoint methodology. Just because one methodology was used in one case (there), does not mean it works in another (here). *See* Section III.C.3(a) above. This decision has been distinguished by other courts. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 970 (N.D. Cal. 2022).

- *Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366-SVW, 2014 WL 7338930, **4-5 (C.D. Cal. Dec. 18, 2014) – This case is inapplicable because of the distinct product markets, which the court there even noted; "Unlike markets for ordinary consumer goods, the prescription drug market is heavily regulated and restricted." That, coupled with the complicating factor of what customers actually paid due to individualized insurance coverage, resulted in a less-than-reliable conjoint analysis. Here, neither of these fatal factors exist.

- *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK, 2017 WL 9512587, at *20-21 (C.D. Cal. Aug. 9, 2017), *aff'd* 755 Fed. App'x 623 (9th Cir. 2018) – There, plaintiffs expert failed to establish a reliable market value for the products because he "did not consider the actual prices paid by consumers for the product, or the preferences that consumers might have had for competing products that were available." Dr. Dubé considers each of these points and more. *See* Section III.C.1 above.

Based on the foregoing, Defendants' cases are unpersuasive and fall short of well-settled,

controlling precedent cited herein that largely support Dr. Dubé's methodology and opinions.

### D.    Dr. Dubé's Opinions Will Assist the Trier of Fact: the Jury

Dr. Dubé's opinions will undoubtedly assist the trier of fact in determining the outcome of

this litigation. At its core, this case is whether a reasonable consumer would be misled by

Defendants' "orthodontic" representation, and the value that it carries. Dr. Dubé's analyses are

---

[15] Defendant also cites to *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, MDL No. 2672 CRB, 2020 WL 13228418, at *1 (N.D. Cal. Feb. 21, 2020), which is an Order re: Jury Instructions and Stipulated Facts. This citation is meant to support their definition of "fair market value" (*see* Mot. at 9), but actually supports Plaintiffs' argument in opposition to the Motion because it plainly proves that it is an issue for the trier of fact (the jury) to decide.

[16] Defendants also cite *In re Emerson Elec. Co. Wet/Dry Vac Mktg. & Sales Litig.*, No. 4:12MD2382 HEA, 2021 WL 5003102, at *3 (E.D. Mo. Oct. 28, 2021), which grants exclusion without analysis in reliance on *Gen. Motors*.

helpful because he has calculated the basic measure of damages—the difference in value between what Plaintiffs were promised by Defendants and what Plaintiffs received from Defendants. "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Takeda Pharms. USA, Inc. v. Spireas*, No. CV 17-0452, 2019 WL 9596536, at *1 (E.D. Pa. Sept. 4, 2019) (citing *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citations omitted)).

### E. New York Statutory Damages Can Be Reliably Calculated

Defendants improperly raise an issue of standing with regard to New York statutory damages that was already addressed and resolved in Plaintiffs' favor at class certification. *See* Cert. Order at *2. Plaintiffs contend that this challenge must fail as it is improper for the Court to decide an issue of standing in the *Daubert* context.

Indeed, Courts in this Circuit have ruled on the standing issue brought by Defendants. *See e.g.*, *Mednick*, 320 F.R.D. at 157; *Mullins v. Direct Digital, LLC*, No. 13 CV 1829, 2014 WL 5461903, at *4 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015); *Saltzman v. Pella Corp.*, 606 F.3d 391 (7th Cir. 2010). Because Defendants take no issue with Dr. Dubé's calculation of New York statutory damages using basic arithmetic, Plaintiffs respectfully request that the Court deny Defendants' Motion as to this issue. *See Valelly v. Lynch*, No. 19-CV-7998 (VEC), 2023 WL 2918982, at *9 (S.D.N.Y. Apr. 12, 2023) (citing *FPP, LLC v. Xaxis US, LLC*, No. 14 CV 6172-LTS, 2017 WL 11456572, at *2 (S.D.N.Y. Feb. 13, 2017)).[17]

## IV. CONCLUSION

For the foregoing reasons, Dr. Dubé's testimony is admissible and reliable, and Defendants' overbroad motion to exclude his opinions should be denied.

---

[17] This issue was also raised in Defendants' Motions for Summary Judgement and to Decertify the Class. *See* ECF Nos. 230 at 30, and 245 at 15, respectively. Plaintiffs incorporate by reference any argument applicable to this issue in their respective oppositions.

Dated: June 29, 2023                    Respectfully submitted,

By: */s/ Melissa S. Weiner*
MELISSA S. WEINER
   *mweiner@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

EDWIN J. KILPELA, JR.
   *ekilpela@lcllp.com*
JAMES M. LAMARCA
   *james@lcllp.com*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

KATRINA CARROLL
   *kcarroll@lcllp.com*
**LYNCH CARPENTER LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265
Facsimile: (312) 750-1591

DANIEL L. WARSHAW
   *dwarshaw@pwfirm.com*
MICHAEL H. PEARSON
   *mpearson@pwfirm.com*
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

AMY KELLER
akeller@dicellolevitt.com
ADAM J. LEVITT
alevitt@dicellolevitt.com
CHRISTOPHER STOMBAUGH
cstombaugh@dicellolevitt.com
**DICELLO LEVITT LLC**
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
Telephone: (312) 214-7900

*Attorneys for Plaintiffs and the Certified Class*