**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLI, individually and on behalf of all others similarly situated, | Case No.: 1:19-cv-06836 |
| | The Honorable Nancy L. Maldonado |
| Plaintiffs, | Magistrate Judge Young B. Kim |
| vs. | |
| NEWELL BRANDS INC. and GRACO CHILDREN'S PRODUCTS INC., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY THE
MULTI-STATE CLASS**

**[REDACTED VERSION FILED PUBLICLY]**

995226 9

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 2

   A.   The Court Granted Class Certification in a Well-Reasoned Order .................................... 2

   B.   Plaintiffs' Theory of Liability Has Not Changed ............................................................. 2

   C.   Dr. Dubé Executed on His Proposed Methodology ........................................................... 2

   D.   Dr. Dean Opines On the Effect of Pacifiers on Oral Development ................................... 4

III. PLAINTIFFS CONTINUE TO MEET THE REQUIREMENTS OF RULE 23, AND NO CHANGED CIRCUMSTANCE OR LAW WARRANT DECERTIFICATION ................ 5

   A.   Defendants' Motion Improperly Argues Nearly Identical Arguments from Previous and Pending Briefing ........................................................................................................ 6

   B.   Plaintiffs' Continue to Satisfy the Requirements of Rule 23 ............................................. 6

   C.   Dr. Dubé's Calculation of Damages Satisfies Rule 23(b)(3), and His Executed Methodology Aligns with Plaintiffs' Theory of Liability .................................................. 7

      1.   Conjoint Analysis Coupled with a Marketplace Simulation—the Certified Methodology—Appropriately Measures Class-Wide Damages .................................... 7

      2.   Dr. Dubé's Methodology Aligns with Plaintiffs' Theory of Liability ........................... 8

      3.   Plaintiffs' Class-Wide Damages Model Satisfies *Comcast* ...................................... 9

   D.   Whether the Term "Orthodontic" is Misleading to a Reasonable Consumer is a Question that a Jury Will Decide on a Class-Wide Basis ................................................................ 11

   E.   Dr. Dean's Opinions Provide the Scientific Evidence Promised by Plaintiffs ................. 14

   F.   The Court has Already Certified the New York Class, and Defendants' Standing Arguments Do Not Warrant Decertification ................................................................... 14

IV. CONCLUSION ....................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)......................................................................7

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021).............................................................8

*Benson v. Newell Brands, Inc.*,
   No. 19 C 6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)........................ *passim*

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12–CV–01831–LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014), *aff'd*
   660 F. App'x 531 (9th Cir. 2016).............................................................11

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).........................................................................9, 10, 11

*de Lacour v. Colgate-Palmolive Co.*,
   338 F.R.D. 324 (S.D.N.Y. 2021).............................................................11

*Doyle v. Chrysler Grp., LLC*,
   663 F. App'x 576 (9th Cir. 2016).............................................................11

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
   No. 14 C 5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)................................10

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013).............................................................11

*Jones v. ConAgra Foods, Inc.*,
   No. C 12–01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ....................11

*Khasin v. R. C. Bigelow, Inc.*,
   No. 12-cv-02204-WHO, 2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) ...............11

*Kleen Prod. LLC v. Int'l Paper*,
   No. 10 C 5711, 2017 WL 2362567 (N.D. Ill. May 31, 2017) ................................7

*McMorrow v. Mondelez Int'l, Inc.*,
   No. 17 Civ. 2327, 2020 WL 1157191 (S.D. Cal. Mar. 9, 2020)..........................10

*Mednick v. Precor, Inc.*,
   320 F.R.D. 140 (N.D. Ill. 2017)................................................................12

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .................................................9, 13

*Montera v. Premier Nutrition Corp.*,
No. 16-CV-06980-RS, 2022 WL 1465044 (N.D. Cal. May 9, 2022).....................................14

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .................................................9

*Mullins v. Premier Nutrition Corp.*,
178 F.Supp.3d 867 (N.D. Cal. 2016) .................................................13

*Murrin v. Ford Motor Co.*,
303 A.D. 2d 475 (2d Dep't 2003).................................................15

*In re MyFord Touch Consumer Litig.*,
291 F.Supp.3d 936 (N.D. Cal. 2018).................................................8

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
923 F.3d 779 (10th Cir. 2019) .................................................9

*Opperman v. Kong Techs., Inc.*,
No. 13-cv-00453-JST, 2017 WL 3149295 (N.D. Cal. July 25, 2017)....................................11

*Outzen v. Kapsch Trafficcom USA, Inc.*,
No. 1:20-cv-01286-TWP, 2022 WL 4259675 (S.D. Ind. 2022) .................................................6

*Parish v. Sheriff of Cook County*,
No. 07 C 4369, 2016 WL 1270400 (N.D. Ill. Mar. 31, 2016) .................................................5

*Passman v. Peloton Interactive, Inc.*,
No. 19-CV-11711 (LJL), 2023 WL 3195941 (S.D.N.Y. May 2, 2023) .................................................10

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) .................................................15

*Philips v. Ford Motor Co.*,
No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) *aff'd*,
726 F. App'x 608 (9th Cir. 2018) .................................................11

*Price v. L'Oreal USA, Inc.*,
No. 17 CIV. 614 (LGS), 2021 WL 4459115 (S.D.N.Y. Sept. 29, 2021).................................................10

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) .................................................13, 15

*Sharpe v. A&W Concentrate Co.*,
No. 19-cv-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) .................................................11

*SimplexGrinnell LP v. Integrated Systems & Power, Inc.*,
   642 F.Supp.2d 167 (S.D.N.Y. 2009)........................................................15

*Singleton v. Fifth Generation, Inc.*,
   No. 5:15-CV-474-BKS, 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017)...................8

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ............................................................9, 14

*In re Sulfuric Acid Antitrust Litig.*,
   847 F.Supp.2d 1079 (N.D. Ill. 2011) .........................................................9

*In re Takata Airbag Prod. Liab. Litig.*,
   No. 15-MD-02599, 2022 WL 3584510 (S.D. Fla. Aug. 16, 2022).....................4, 8

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .....................................................................15

*Weaver v. Champion Petfoods USA Inc.*,
   3 F.4th 927 (7th Cir. 2021) ................................................................12

*Werdebaugh v. Blue Diamond Growers*,
   No. 12–CV–02724–LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ...............11

*Zakaria v. Gerber Prods. Co.*,
   755 F. App'x 623 (9th Cir. 2018) ..........................................................11

*Zarinebaf v. Champion Petfoods USA Inc.*,
   No. 18 C 6951, 2022 WL 980832 (N.D. Ill. Mar. 31, 2022) ............................13

**Statutes**

N.Y. Gen. Bus. Law §§ 349, *et seq.*........................................................14, 15

**Other Authorities**

3 Newberg and Rubenstein on Class Actions § 7:35 (6th ed.) ................................6

3 Newberg and Rubenstein on Class Actions § 7:38 (6th ed.) ................................5

3 Newberg and Rubenstein on Class Actions § 7:39 (6th ed.) ................................6

3 Newberg on Class Actions § 7:37 (5th ed.) ...............................................5

## GLOSSARY OF TERMS

| TERM | DESCRIPTION |
|---|---|
| Plaintiffs | Plaintiffs Shelly Benson and Lisa Caparelli, collectively. |
| Defendants | Defendants Newell Brands Inc. and Graco Children's Products Inc., collectively. |
| Orthodontic Pacifiers or Products | Defendants' "orthodontic" pacifiers at issue are sold under the NUK brand name and include the following products, as well as any other NUK-branded "orthodontic" pacifiers: NUK Orthodontic Pacifiers, NUK Space™ Orthodontic Pacifiers, NUK Latex Orthodontic Pacifiers, NUK Sports Orthodontic Pacifiers, NUK Confetti Orthodontic Pacifiers, NUK Fashion Orthodontic Pacifiers, NUK Sensitive™ Orthodontic Pacifiers, and NUK Juicy Orthodontic Pacifiers. |
| Complaint | First Amended Complaint, ECF No. 31 (cited as "FAC ¶ ___"). |
| Cert. Order | Memorandum Opinion and Order granting Plaintiffs' Motion for Class Certification, dated November 16, 2021 (ECF No. 126), *Benson v. Newell Brands, Inc*., No. 19 C 6836, 2021 WL 5321510, at *1 (N.D. Ill. Nov. 16, 2021). |
| Motion, Mot. | Defendants' Motion to Decertify the Multi-State Class (ECF No. 244) and Memorandum of Law (ECF No. 245). |
| Dean Opposition, Dean Opp. | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony and Expert Report of Dr. Jeffrey A. Dean (ECF No. 258). |
| Dennis Opposition, Dennis Opp. | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony and Expert Report of J. Michael Dennis, Ph.D. (ECF No. 260). |
| Dubé Opposition, Dubé Opp. | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony and Expert Report of Professor Jean-Pierre H. Dubé (ECF No. 262). |
| Dennis Report | Declaration and Expert Report of J. Michael Dennis, Ph.D. (ECF No. 235-1). |
| SAMF | Plaintiffs' (Nonmovant) Local Rule 56.1(a)(2) Statement of Additional Material Facts (ECF No. 257). |
| Dean Report | Expert Report Dr. Jeffrey Dean (ECF No. 239-1). |
| Dean Rebuttal | Expert Rebuttal Report of Dr. Jeffrey A. Dean (ECF No. 238-5). |
| DSMF | Statement of Material Facts in Support of Defendants' Motion for Summary Judgment (ECF No. 232). |
| Dubé Cert. Report | Expert Report of Professor Jean-Pierre H. Dubé in support of Plaintiffs' Motion for Class Certification (ECF No. 108-2). |
| Dubé Cert. Rebuttal | Expert Report of Professor Jean-Pierre H. Dubé (Response) in support of Plaintiffs' Motion for Class Certification (ECF No. 108-6). |
| Dubé Merits Report | Expert Report of Professor Jean-Pierre H. Dubé (Merits) (ECF No. 243-5). |
| Dubé Merits Rebuttal | Expert Report of Professor Jean-Pierre H. Dubé (Merits Response) (ECF No. 263-6). |
| Dubé Merits Dep. | Deposition transcript of Jean-Pierre H. Dubé dated March 7, 2023 attached as Ex. 1 to the Declaration of Melissa S. Weiner filed concurrently herewith. |
| Multi-State Class, | The Multi-State Class, as certified, is as follows: "All persons who |

| TERM | DESCRIPTION |
|---|---|
| Class | purchased in the State of Illinois, California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington any of the NUK-branded Orthodontic Pacifiers, within the applicable statute of limitations, until the date notice is disseminated." Cert. Order at *16. |
| Motion for Summary Judgement, MSJ | Defendants' Motion for Summary Judgment (ECF No. 229) and Memorandum of Law (ECF No. 230). |
| Plaintiffs' Opposition to Summary Judgment, MSJ Opp. | Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (ECF No. 254). |
| Chart | Dubé Methodology Comparative Chart, attached as Ex. 2 to the Declaration of Melissa S. Weiner filed concurrently herewith. |

## I. __INTRODUCTION__

The Court granted Plaintiffs' Motion for Class Certification in a thorough and well-reasoned Order. *See generally* Cert. Order; *see also* Sections II.A and III.B below. Since that time, Defendants have used every briefing opportunity to repackage the same arguments they made (and lost) at class certification.[1] This attempt is no different and should fare no better. Plaintiffs—for the exact reasons at class certification—continue to satisfy the elements of Rule 23, and no subsequent developments have altered that fact.

Defendants' Motion to decertify this matter is based on (1) Dr. Dubé's execution of his proposed damages methodology, and (2) Dr. Dean's expert opinion as to the impact of "orthodontic" pacifiers on children's oral development. Neither argument has merit. *First*, Dr. Dubé's proposed methodology (a conjoint analysis with a marketplace simulation) is exactly what he executed in the merits phase. Dr. Dubé's nuanced modifications to that methodology, rendered necessary due to the type and quality of the data with which he was presented, do not support decertification.[2] *Second*, Plaintiffs proffered the expert opinions of Dr. Dean, who opined that "[p]acifiers cannot be 'orthodontic' as they are not medical devices and they do not prevent or treat malocclusions or promote oral development."[3] Dean Report ¶ 35. Dr. Dean's report is utterly within his expertise and Defendant's arguments against it go to weight and not admissibility. *Third*, courts in this Circuit permit multi-state consumer fraud classes to proceed without a class representative from each state in which a subclass is certified.

Accordingly, having raised no arguments that call into question this Court's prior ruling

---

[1] Defendants have also regurgitated all of the arguments in this Motion from the pending Motion for Summary Judgment and *Daubert* Motions. *See* Section III.A below.

[2] The Parties stipulated to the decertification of the Multi-State *Subclass*, *see* ECF No. 212, however that agreement to decertify a subclass with a different damages number is irrelevant to the propriety of the certified Multi-State Class.

[3] Defendants make up their own theory of Plaintiffs' case, which the Court should ignore. *See* Mot. at 3 ("namely, that NUK pacifiers, with a uniquely shaped nipple designed to naturally fit a child's mouth, are no better than conventional pacifiers.").

certifying the Class in this matter, Defendants' Motion should be denied because the Multi-State Class continues to meet the requirements of Rule 23, and Defendants have failed to prove otherwise by the introduction of any changed circumstance since the Court's Order.

## II.    BACKGROUND

### A.    The Court Granted Class Certification in a Well-Reasoned Order

On November 16, 2021, Judge Guzman granted Plaintiffs' Motion for Class Certification in an Order that (1) analyzed the allegations and understood Plaintiffs' theory of liability, (2) conducted a rigorous analysis of each of the requirements under Rule 23; and (3) carefully examined the experts and their opinions. *See generally* Cert. Order. Defendants' Rule 23(f) petition was summarily denied by the Seventh Circuit less than one week after it was filed and before Plaintiffs' response was due. *See* ECF Nos. 127, 128.

### B.    Plaintiffs' Theory of Liability Has Not Changed

Plaintiffs' theory of liability is straightforward and has never changed: the term "orthodontic" on Defendants' Products is likely to mislead a reasonable consumer because pacifiers cause, and do not prevent, dental malocclusions. *See* Cert. Order at *8. Defendants' argument that "orthodontic" is not misleading because it refers to the "shape" of the pacifier has also remained consistent throughout this matter.[4] The Court rejected this argument (which remains a common question) on the same evidentiary record that exists here. *See* Cert. Order at *2. This argument should, yet again, be rejected as the question of *whether* Defendants' orthodontic labeling is likely to mislead a reasonable consumer (or not, as Defendants suggest) can and should be resolved on a class-wide basis.

### C.    Dr. Dubé Executed on His Proposed Methodology

---

[4] This argument is also subject to a *Daubert* motion as to Defendants' economic expert, Dr. Denise Martin, who is entirely unqualified to offer the opinion Defendants so boldly claim invalidates Dr. Dubé's opinion: that "orthodontic" has multiple meanings. *See* Plaintiffs' Motion to Exclude the Expert Testimony of Defendants' Expert Denise Martin, Ph.D., ECF No. 221, § IV.A.2.

As acknowledged by the Court when granting class certification, Dr. Dubé's use of conjoint analysis—designed to isolate the portion of the payment attributable to a misrepresented product feature and to calculate price-premium damages—has been widely accepted by courts. *See* Cert. Order at *5 (citing *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14 C 5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017)); *see also* Dubé Cert. Report ¶ 54 (citing authority); Dubé Merits Report ¶ 30. Dr. Dubé's proposed approach at class certification, (*see* Dubé Cert. Report ¶ 14), is precisely what was executed at the merits phase subsequent to this Court's order granting class certification (*see* Dubé Merits Report ¶ 16). *See* Chart.

At class certification, Dr. Dubé explained in detail his anticipated methodology and reasoning, including several assumptions that were subject to verification once the conjoint was *actually performed*. While the Court's Order relied upon Dr. Dubé's methodology, it was in no way "contingent" (Mot. at 2) on any specific aspect as Defendants contend. Rather, it was "contingent" on Dr. Dubé using a reliable methodology to <u>calculate class-wide damages that is tied to Plaintiffs' theory of liability</u> ("that NUK pacifiers are not actually orthodontic." Cert. Order at 5. This is exactly what he did.[5] In the merits phase, Dr. Dubé ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████; Dubé Cert. Rebuttal n.7. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[5] In fact, the Order accurately describes the price premium calculation that Dr. Dubé utilized in calculating class-wide damages. Defendants curiously take issue with the fact that it would have been scientifically *excessive* for Dr. Dubé to calculate willingness to pay damages, as the price premium alone adequately compensates consumers for their injuries.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████; *see also* Chart.

This proposed—and executed—methodology met all generally accepted standards for "choice-based conjoint" analysis, and it still does. *See* Dubé Cert. Report § V, Appendix 4 (References); Dubé Merits Report § II.B, Appendix C (Materials Relied Upon).

**D.** **Dr. Dean Opines On the Effect of Pacifiers on Oral Development**

Through the submission of Dr. Dean's expert opinions, Plaintiffs delivered on the instructions in the Court's class certification order: presenting scientific evidence "about the effects of pacifiers on oral development . . ." Cert. Order at *4; *see also* *10-11 ("Proving

---

[6] 

plaintiffs' allegations … will require expert testimony on the effect of pacifier use on children's oral development."). In his report, Dr. Dean examined numerous academic sources in concluding "that no pacifier is orthodontic because they do not promote oral development or prevent bite problems . . . ." Dean Report ¶ 3. Dr. Dean further concluded that "[p]acifiers cannot be 'orthodontic' as they are not medical devices and they do not prevent or treat malocclusions or promote oral development." *Id*. ¶ 35. Dr. Dean's Rebuttal Report was equally resolute— "prolonged pacifier use indisputably increases the rise of malocclusion in children, and, thus, they are not 'orthodontic.'" Dean Rebuttal ¶ 17; *see also* ¶¶ 43, 54. Dr. Dean concluded that "the use of the term 'orthodontic' in association with NUK pacifiers is unfounded, misleading, and inconsistent with everything known about the negative impact of pacifier use by children." *Id*. ¶ 58. These conclusions precisely match Plaintiffs' theory of deception.[7]

### III.  PLAINTIFFS CONTINUE TO MEET THE REQUIREMENTS OF RULE 23, AND NO CHANGED CIRCUMSTANCE OR LAW WARRANT DECERTIFICATION

"Decertification or modification of a class certification order is appropriate if, in the course of litigation, the existing class fails to meet the requirements of Rule 23." 3 Newberg and Rubenstein on Class Actions § 7:38 (6th ed.) (citing Rule 23(c)(1)(C)). "[A] court may modify or decertify" a previously certified class at any time, but "decertification is a 'drastic step,' not to be taken lightly." 3 Newberg on Class Actions § 7:37 (5th ed.). "In the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by . . . the opponent of the class...." *Parish v. Sheriff of Cook County*, No. 07 C 4369, 2016 WL 1270400, at *1 (N.D. Ill. Mar. 31, 2016) (citing Newberg on Class Actions § 7:47 (4th ed. 2011)). "[C]ourts are generally reluctant to reconsider and modify previous orders … in the class certification

---

[7] Dr. Dean relied on three systematic reviews that examined the health effects of both traditional and "orthodontic" pediatric pacifier use, various policy statements from leading healthcare organizations and his vast experience and expertise. *Id*. ¶¶ 20, 23-30, 53-57.

context, in part because of the law-of-the-case doctrine and to avoid costly delays to the proceedings." *Outzen v. Kapsch Trafficcom USA, Inc*., No. 1:20-cv-01286-TWP, 2022 WL 4259675, at *2 (S.D. Ind. 2022); *see also* 3 Newberg and Rubenstein on Class Actions § 7:35 (6th ed.). "A defendant seeking decertification or modification ought to be required to make some showing of **changed circumstances or law**, which would then trigger a plaintiffs' obligation to defend certification." 3 Newberg and Rubenstein on Class Actions § 7:39 (6th ed.) (emphasis added) (Decertification and modification of initial class certification decision—Burdens of proof).

### A. Defendants' Motion Improperly Argues Nearly Identical Arguments from Previous and Pending Briefing

In their Motion, Defendants merely reiterate the same arguments they placed before the Court at the initial certification stage (which were unsuccessful), and in their recently filed Motion for Summary Judgment and *Daubert* Motions (which Plaintiffs have vigorously opposed).[8]

For this reason alone, this Motion should be denied. Regardless, none of Defendants' arguments warrant decertification, because there have not been any substantive or material developments in the case that have impacted any of this Court's Rule 23 findings or rulings.

### B. Plaintiffs' Continue to Satisfy the Requirements of Rule 23

In determining that this lawsuit should proceed as a class action, Judge Guzman analyzed "each requirement of Rule 23(a) as well as one of the three requirements of Rule 23(b)." Cert. Order at *1 (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). Defendants only challenge Rule 23(b)(3) as to (1) Dr. Dubé's execution of his proposed methodology, and (2) Dr. Dean's expert opinion regarding the term "orthodontic."[9] As more fully

---

[8] Section I.A of the Motion re-argues Section II of the Motion for Summary Judgment; Section I.B of the Motion is a two sentence (one as a summary and the other as a conclusion) express reference to the Motion to Exclude Dr. Dubé; Section II of the Motion re-argues Sections II.B and III of the Motion for Summary Judgment; and Section III of the Motion re-argues Section VI.C of the Motion for Summary Judgment and Section IV of the Motion to Exclude Dr. Dubé.

[9] Defendants merely criticize Dr. Dennis insofar as Plaintiffs do not offer a *new* survey expert in the merits phase. First, as detailed in the Opposition to Summary Judgment, the record evidence establishes consumer understanding of "orthodontic" and its importance to consumers.

set forth below, Defendants' arguments fail.

      **C.**      **Dr. Dubé's Calculation of Damages Satisfies Rule 23(b)(3), and His Executed Methodology Aligns with Plaintiffs' Theory of Liability**

          1.      Conjoint Analysis Coupled with a Marketplace Simulation—the Certified Methodology—Appropriately Measures Class-Wide Damages

There is nothing novel about Dr. Dubé's execution of the conjoint survey in this consumer fraud action. ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Any minor adjustment to the variables, features, and constraints in the conjoint do not call into question the scientific basis and well-established methodology. *Amorgianos v. Nat'l R.R. Passenger Corp*., 303 F.3d 256, 267 (2d Cir. 2002) ("[A] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method does not itself require exclusion under *Daubert*; exclusion is only warranted if the flaw is large enough that the expert lacks good grounds for his or her conclusions."). *See* Chart.

While the *Amorgianos* holding applies to expert modifications during the class certification phase, here the Court has *already approved* of Dr. Dubé's methodology, and thereby has deemed it to be reliable. Therefore, it follows that any slight, or nuanced[10], modification to this already approved methodology should not prompt exclusion by the Court, and therefore decertification is not warranted. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

Furthermore, Plaintiffs never intended to submit additional survey evidence nor was it needed.
[10] While courts have not defined what constitutes a "material" change, a number of cases in this Circuit have addressed the issue. *See, e.g.*, *Kleen Prod. LLC v. Int'l Paper*, No. 10 C 5711, 2017 WL 2362567, at *4 (N.D. Ill. May 31, 2017). In each instance, changes were deemed material when they had a *significant* impact on the methodology and results. Neither of which occurred here—Dr. Dubé calculated class-wide damages as promised.

████████████████████████████████████████████████████████

Indeed, the standard for decertification is clear—more than a nuanced modification is required to trigger reconsideration or decertification of a prior order, it must be so material that it shifts the burden back to Plaintiffs to defend the at-issue Rule 23 requirement(s). *See* Section III above. No such materially altered circumstances are present here. With well-reasoned modifications, Dr. Dubé calculated price premium damages using a common methodology on a class-wide basis. *See, e.g.*, Dubé Report ¶ 102. Further, this methodology has been accepted by courts across the country. *See, e.g.*, *In re Takata*, 2022 WL 3584510; *see* also ECF No. 263-4 (*Takata* Order Granting Plaintiffs' Motion for Class Certification dated June 20, 2023). Regardless of which party is right, this is not a decertification issue, but rather one for a jury. *See In re MyFord Touch Consumer Litig.*, 291 F.Supp.3d 936, 971 (N.D. Cal. 2018) (holding that despite inconsistencies in plaintiffs' expert's analysis "[t]he jury is entitled to weigh the credibility of Mr. Boedeker's assumption, and Ford will have the opportunity to cross-examine him[]" because the impact is not "indisputably wrong." (citing *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996))).[11]

### 2. Dr. Dubé's Methodology Aligns with Plaintiffs' Theory of Liability

Dr. Dubé's calculation of the price premium is directly aligned with Plaintiffs' theory of liability, *i.e.*, how to compensate consumers based on a misleading "orthodontic" descriptor, and Dr. Dube's measurement continues to satisfy Rule 23. ████████████████████████

████████████████████████████████████████████████████

█ █████████████████████████████████████████

---

[11] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████.
Conjoint results can be evidence of materiality. *See Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 403-04 (N.D. Cal. 2021) (finding that a reliable conjoint analysis that calculates a premium paid is sufficient to show that a statement is material); *Singleton v. Fifth Generation, Inc.*, No. 5:15-

█████████████████████████████████████████

█████████████████████████████████████████ total

classwide economic damages for 2017–2022 period are $19.5 million.

████████████████

Plaintiffs must show that "damages are capable of measurement on a classwide basis." *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014). Individualized questions about damages do not defeat predominance. *Messner*, 669 F.3d at 815; *see also Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019). Damages must be fit to a plaintiff's theory of liability and be sufficiently reliable. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015). At class certification, an expert need not put forth a final damages analysis that would be admissible at trial. Rather, the question is whether the expert's testimony is helpful for determining whether the requirements of Rule 23 are met. *See In re Sulfuric Acid Antitrust Litig.*, 847 F.Supp.2d 1079, 1080 (N.D. Ill. 2011) (denying decertification and affirming that "at the class certification stage, Plaintiffs need only establish that they have 'realistic methodologies for establishing damages on a classwide basis.'").

Here, Dr. Dubé concluded that a choice-based conjoint analysis is appropriate to measure consumers' preferences for the Challenged Claims. *See* Dubé Cert. Report ¶ 14; Dubé Merits Report ¶ 16. And the Court agreed. *See* Cert. Order at *8. Dr. Dubé calculated a price premium, which measured the extent to which all Class members overpaid because of the "orthodontic" descriptor. Dubé Merits Report ¶ 16. This analysis readily satisfies the requirements of Rule 23.

3.     Plaintiffs' Class-Wide Damages Model Satisfies *Comcast*

Defendants contend that the Multi-State Class should be decertified, because Plaintiffs

---

CV-474-BKS, 2017 WL 5001444, at *18 (N.D.N.Y. Sept. 27, 2017).

have failed to establish that damages are capable of measurement on a class-wide basis under *Comcast*, in line with Plaintiffs' theory of liability, despite the fact that this Court already found them to be tied together. Defendants base their argument on multiple inapposite, out-of-circuit opinions. First, they cite *Price v. L'Oreal USA, Inc.*, No. 17 CIV. 614 (LGS), 2021 WL 4459115, at *4-6 (S.D.N.Y. Sept. 29, 2021), where the court decertified a class after finding that plaintiffs did not satisfy *Comcast* because their conjoint analysis tested the term "Keratindose Pro-Keratin + Silk" when plaintiffs were *not* challenging the "+ Silk" portion.[13] By contrast, here, there is *one* descriptor being tested in the conjoint survey, which is the only challenged statement in the case: "orthodontic." Further, the *Price* court held that there was insufficient evidence to support the conjoint survey and connect it to the theory of liability. *Id.* at *5, 6. Here, aside from the indisputable fact that the price premium is directly tied to the theory of liability, there is a mountain of applicable extrinsic evidence (which was not present in *Price*). *See* Section III.D below; *see also* MSJ Opp. § VII.A.2. Thus, *Price* is inapposite.

Second, in *Passman v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2023 WL 3195941, at *28 (S.D.N.Y. May 2, 2023), the court concluded that plaintiffs' damages model ran afoul of *Comcast*, because in the court's view the conjoint analysis of the challenged phrase "ever-growing library of classes" improperly measured the value of the descriptor "ever-growing" and also the value of "library of classes." Ironically, Defendants here criticize Plaintiffs' experts for not measuring "orthodontic shape" or "orthodontic pacifier," which arguably would present the same issue that the *Passman* court found problematic. For that reason, *Passman* does not help Defendants. Third, Defendants cite a string of additional, almost exclusively out-of-circuit opinions that found similar issues as those in *Price* and *Passman*, which do not exist in this case.[14]

---

[13] *Price* also discussed *McMorrow v. Mondelez Int'l, Inc.*, No. 17 Civ. 2327, 2020 WL 1157191, at *8-9 (S.D. Cal. Mar. 9, 2020) (involving two descriptors in the challenged phrase—"nutritious" and "steady energy"—only one of which was allegedly misleading).

[14] *In re Fluidmaster*, 2017 WL 1196990, at *57 (defective product case; finding that plaintiffs'

Surveys like the one conducted by Plaintiffs' experts here are routinely accepted by district courts across the country as a reliable methodology.[15] There is no reason to disturb the Court's prior conclusion that Plaintiffs' experts' conjoint analysis is "tied to plaintiffs' theory of liability."

### D. Whether the Term "Orthodontic" is Misleading to a Reasonable Consumer is a Question that a Jury Will Decide on a Class-Wide Basis

Just as they did in their Motion for Summary Judgment, Defendants misunderstand Plaintiffs' theory and the law and suggest Plaintiffs must prove their case by "provid[ing] [] admissible evidence of a reasonable consumer's understanding of "orthodontic." Mot. at 14. As detailed in Plaintiffs' Opposition to Summary Judgment, the key question for the jury, as confirmed by Judge Guzman, is whether Defendants' uniformly presented claim that their pacifiers are "orthodontic" was likely to mislead the reasonable consumer. *See* Cert. Order at *9, *11

---

measurement of a consumer's preference for a ten-year warranty or a "No Burst" representation is insufficiently connected to defendant's failure to disclose its product's propensity to fail); *Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724–LHK, 2014 WL 7148923, at *11-14 (N.D. Cal. Dec. 15, 2014) (damages model could not isolate the price premium attributable only to the labeling claims, because it measured the *combined* effect of the Blue Diamond "brand" value and the at-issue "evaporated cane juice" and/or "All Natural" label statements, rather than just the latter); *Brazil v. Dole Packaged Foods, LLC*, No. 12–CV–01831–LHK, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014), *aff'd* 660 F. App'x 531 (9th Cir. 2016) (finding, among other problems, the damages model used a study evaluating the "All Natural" label on yogurt for his damages estimate about packaged fruit); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 592 (S.D.N.Y. 2013) (FLSA case about overtime compensation; certifying class for liability but not damages due to variety of employment statuses and pay rates); *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624-25 (9th Cir. 2018) (concluding that the conjoint analysis "did not reflect market realities and prices for infant formula products" and did not contain evidence that a higher price was actually paid); *Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB, 2014 WL 2702726, at *19-20 (N.D. Cal. June 13, 2014) (finding flawed approach to use a single comparator for a variety of products including generic and market leading brands); *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016) (auto defect case; finding failure to determine what percentage of the purchase price should be reimbursed under a "partial reimbursement approach to calculating damages"); *Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016) (rejecting restitution calculation, because the "full refund" method has been rejected in the N.D. Cal.); *Opperman v. Kong Techs., Inc.*, No. 13-cv-00453-JST, 2017 WL 3149295, at *12 (N.D. Cal. July 25, 2017) (concluding that the proposed methodology would measure the value consumers attribute to security *broadly*, despite the focus of plaintiffs' theory of liability on only two failed security features); *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *22 (N.D. Cal. Dec. 22, 2016) (concluding that expert stated what a proper damages model would look like but offered a different model that did not show how consumers value the vehicle system with and without the alleged auto defect) *aff'd*, 726 F. App'x 608 (9th Cir. 2018).

[15] *See, e.g.*, *Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), 2021 WL 3721392, at *5-6 (E.D.N.Y. July 23, 2021) (finding Dr. Dennis's conjoint survey reliable and that it satisfied *Comcast*); *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 344 (S.D.N.Y. 2021) (same).

(quoting *Suchanek*, 764 F.3d at 758). Contrary to Defendants' representations, there is no requirement that a plaintiff in a false advertising case such as this both *define* a reasonable consumer's understanding of a term and, then, *prove* the alleged deception. Thus, a jury will only need to determine whether Defendants' claim that their pacifiers are "orthodontic" was misleading to a "reasonable consumer," which is defined as "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances …" *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (citing *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020), and *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

As detailed in Section VII.B of Plaintiffs' Opposition to Summary Judgment, there is significant disputed evidence in the record for a jury to conclude that Defendants' uniform "orthodontic" descriptor was likely to mislead the reasonable consumer. *See* MSJ Opp. § VII.B. However, even if Defendants are correct that Plaintiffs must present the existence of disputed evidence on the *objective definition* of "orthodontic" to survive summary judgment (they are not), the record contains substantial evidence—outside of, and including, Dr. Dennis' survey—demonstrating the common understanding of "orthodontic" by reasonable consumers.[16]

There is sufficient common (and disputed) evidence that a reasonable consumer interprets the NUK product packaging to communicate that the Products will promote healthy oral development and that Defendants' "orthodontic" claim is material to consumers' decisions to purchase NUK branded pacifiers. Aside from conclusory statements, Defendants have presented no evidence whatsoever to rebut the scientific fact (undisputed in the medical literature evidence

---

[16] Defendants argue that because there is no FDA-approved definition of "orthodontic" it somehow makes it impossible for Plaintiffs to prove the understanding of a reasonable consumer, but this makes no sense. The fact that there is no definition actually creates a genuine issue of material fact that only a jury can resolve. *See Mednick v. Precor, Inc.*, 320 F.R.D. 140, 152 (N.D. Ill. 2017) (citing *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239 (S.D. Ill. 2015)). Defendants cannot have their cake and eat it too—they cannot claim that there is no generally accepted meaning of the term "orthodontic" to escape liability in court (Mot. at 12), but also have numerous consumer perception studies and materials that all point to a scientific term that creates a very specific end result, more pacifier sales and higher revenues. *See, e.g.*, SAMF 7-12, 25-30.

since the 1870s and confirmed through the present) that Defendants' Orthodontic Pacifiers fail to promote healthy oral development or prevent dental malocclusion.

Defendants argue that "Plaintiffs have no common evidence that NUK packaging is false or deceptive." Mot. at 14. This merits-based evidence question is also raised in Defendants' pending Motion for Summary Judgment. By making this argument, Defendants have essentially admitted that the issue can be resolved on a class-wide basis. *See* Cert. Order at *10. Moreover, the law is clear that Plaintiffs are <u>not</u> required to *prove* the claim at the class certification stage, that is for a jury. *See Messner*, 669 F.3d at 818; *see also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010). Nonetheless, Plaintiffs have presented substantial common evidence that support their allegations for <u>class certification</u>, which has not changed.

- <u>Publicly Available Information</u>: Plaintiffs have offered the etymology (SAMF 1) of the term "orthodontic," as well as the dictionary definition (SAMF 2) in support of the meaning of "orthodontic" to a reasonable consumer.[17] *See* MSJ Opp. § VII.A.2.(a).
- <u>Plaintiffs' Testimony</u>: Plaintiffs confirm that Defendants' labeling was a material driver influencing purchase behavior and was likely to mislead a reasonable consumer. SAMF 15-22. Plaintiffs' testimony as Class Representatives of the Certified Class is indicative and representative of "what a reasonable consumer would actually understand." *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 980832, at *8 (N.D. Ill. Mar. 31, 2022); *see* MSJ Opp. § VII.A.2.(b).
- <u>Defendants' Documents and Testimony</u>:  *See* MSJ Opp. §§ VII.A.2.(c)-(d).
- <u>Dr. Dennis' Consumer Surveys</u>: Dr. Dennis' consumer perception survey evaluates a reasonable consumer's perception of Defendants' orthodontic descriptor.[18] *See generally* Dennis Opp.; *see also* MSJ Opp. § VII.A.2.(f).

---

[17] *See* Cert. Order at *11 n.8 ("plaintiffs' claims in the instant case are straightforward—that **defendants' representations are misleading on their face**—and based on specific uniform product labeling that NUK pacifiers are "orthodontic" and suitable for the age range stated on the packaging." (emphasis added)).

[18] While Plaintiffs have produced evidence in the form of a consumer survey, Plaintiffs do not need survey evidence to demonstrate a reasonable consumer may be misled. *See Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 890 (N.D. Cal. 2016).

- <u>Dr. Dean's Scientific Opinions</u>: Dr. Dean's expert opinions provide the final link between the record factual evidence and the fact that, in his expert opinion, the Products are not "orthodontic." *See* SAMF 23 (Dr. Dean concluded that "the use of the word "orthodontic" is inappropriate and misleading on the packaging and advertising of NUK Orthodontic pacifiers" because "(p)acifiers cannot be "orthodontic" as they are not medical devices and they do not prevent or treat malocclusions or promote oral development."). *See generally* Dean Opposition; *see also* MSJ Opp. § VII.A.2.(e).

Based on the foregoing, Plaintiffs have alleged and presented common questions of law and fact to support the Court's previous finding under the commonality requirement of Rule 23. *Suchanek*, 764 F.3d at 756.

### E. Dr. Dean's Opinions Provide the Scientific Evidence Promised by Plaintiffs

As discussed in Section II.D above, Plaintiffs have submitted common scientific evidence in the form of the expert opinions of Dr. Dean that supports their theory of liability – whether NUK pacifiers are "orthodontic" as represented by Defendants. Defendants' evidentiary arguments are not appropriate for consideration at the class certification stage and do not warrant reconsideration or decertification of the Class Certification Order.

### F. The Court has Already Certified the New York Class, and Defendants' Standing Arguments Do Not Warrant Decertification

Defendants repeat arguments from their pending Motion for Summary Judgment with regard to New York statutory damages. *See* MSJ at 36; MSJ Opp. at 28-30. Defendants' regurgitated arguments should be rejected for several reasons.

*First*, Plaintiffs have not waived their right to New York statutory damages under N.Y. Gen. Bus. Law §§ 349, *et seq*. ("Section 349"), because they did not limit the relief they sought under any of the state consumer protection statutes in the initial or operative complaints (*see* FAC ¶ 154; *see also* Compl., ECF No. 1, ¶ 148), and Defendants are aware of that reality (*see* ECF No. 115-14). Plaintiffs are entitled to statutory relief because the actual damages are less than the fifty-dollars relief provided by Section 349. *See Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1465044, at *2 (N.D. Cal. May 9, 2022) ("As a threshold matter, Plaintiff is required to prove actual damages **at trial** . . . . A determination of the amount of actual damages is necessary

to ensure that the amount of statutory damages is indeed higher." (emphasis added)).

*Second*, this Court previously certified a Multi-State Class that included New York consumers (*see* Cert. Order at *4-5, 16), and this Circuit permits multi-state consumer fraud classes to proceed, even without a class representative from each state in which a subclass is certified.(plaintiffs alleged claims similar to Plaintiffs here, including "Substantially Similar Laws of Certain Other states" which included New York). Even without a plaintiff from New York, the district court held certification was appropriate (and the Seventh Circuit affirmed) because the consumer protection acts of the six states, including Section 349, had nearly identical elements. *Pella Corp. v. Saltzman*, 606 F.3d 391, 392, 396 (7th Cir. 2010). The same applies here. *See* Cert. Order at *15.

*Third*, the cases cited by Defendants are distinguishable. *SimplexGrinnell LP v. Integrated Systems & Power, Inc.*, involved violations of the Lanham Act for false advertising, which were "not broadly made" and only reached "a single potential customer in New Jersey." 642 F.Supp.2d 167, 203 (S.D.N.Y. 2009). *Murrin v. Ford Motor Co.*, stemmed from a single plaintiff's injury who failed to allege the deceptive acts took place within the State of New York. *See* 303 A.D. 2d 475, 477 (2d Dep't 2003). Here the deceptive conduct took place uniformly in the class states, including New York. In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021), the standing issue dealt with whether plaintiffs suffered a concrete harm, not whether multi-state consumer fraud classes can proceed, even without a class representative from each state in which a subclass is certified. *TransUnion* does not cite, let alone overrule, *Saltzman*.

For the foregoing reasons, Plaintiffs can properly pursue New York statutory damages.

## IV.   **CONCLUSION**

For the reasons set forth herein, as well as in the pending oppositions to Defendants' Motion for Summary Judgment and *Daubert* Motions, Plaintiffs respectfully request that the instant Motion be denied in its entirety.

Dated: July 20, 2023

Respectfully submitted,

By: */s/ Melissa S. Weiner*
MELISSA S. WEINER
  *mweiner@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

EDWIN J. KILPELA, JR.
  *ekilpela@lcllp.com*
JAMES M. LAMARCA
  *james@lcllp.com*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

KATRINA CARROLL
  *kcarroll@lcllp.com*
**LYNCH CARPENTER LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265
Facsimile: (312) 750-1591

DANIEL L. WARSHAW
  *dwarshaw@pwfirm.com*
MICHAEL H. PEARSON
  *mpearson@pwfirm.com*
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

AMY KELLER
  *akeller@dicellolevitt.com*
CHRISTOPHER D. STOMBAUGH
  *cstombaugh@dicellolevitt.com*
ADAM PROM
  *aprom@dicellolevitt.com*
MICHELLE LOCASCIO
  *mlocascio@dicellolevitt.com*
**DICELLO LEVITT LLP**
10 North Dearborn Street, 6th Floor

Chicago, Illinois 60602
Telephone: (312) 214-7900

*Attorneys for Plaintiffs and the Certified Class*

17