IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELLY BENSON and LISA CAPARELLI, individually and on behalf of all others similarly situated, Plaintiffs, v. NEWELL BRANDS INC. and GRACO CHILDREN'S PRODUCTS INC., Defendants. | Case No. 19 C 6836<br>Chicago, Illinois<br>March 10, 2026<br>10:49 a.m. |

TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING
BEFORE THE HONORABLE ANDREA R. WOOD

APPEARANCES:

For the Plaintiffs: PEARSON WARSHAW, LLP
BY: MS. MELISSA S. WEINER
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391

DiCELLO LEVITT GUTZLER LLC
BY: MS. AMY E. KELLER
10 North Dearborn Street, 6th Floor
Chicago, Illinois 60602

DiCELLO LEVITT LLP
BY: MR. KENNETH P. ABBARNO
8160 Norton Parkway, 3rd Floor
Mentor, Ohio 44060

Court Reporter: BRENDA S. VARNEY, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Suite 2342
Chicago, Illinois 60604
(312) 554-8931
*brenda_varney@ilnd.uscourts.gov*

APPEARANCES: (Continued)

For the Defendants: ARENT FOX SCHIFF LLP
BY: MR. MIR Y. ALI
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606

* * * * * * * * * * * * * * * * *

PROCEEDINGS RECORDED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard via telephone:)

THE COURT: Good morning. This is Judge Wood joining the line. I believe we're ready to call the next case, so the courtroom deputy will do that, and then I will get appearances.

Laritza.

THE CLERK: Calling case 19 CV 6836, Benson, et al. versus Newell Brands, et al., for status.

THE COURT: Do we have Plaintiffs' counsel?

MS. KELLER: Yes, Your Honor. On the line is Amy Keller on behalf of the plaintiffs. I'm also joined by several of my colleagues who will also introduce themselves.

MS. WEINER: Good morning, Your Honor. Melissa Weiner also here on behalf of the plaintiffs this morning.

MR. ABBARNO: Ken Abbarno also on behalf of the plaintiffs. Good morning, Your Honor.

THE COURT: Okay. Seems like that's everyone on the plaintiffs' side.

Who do we have for the defendant?

MR. ALI: Good morning, Your Honor. Mir Ali from Arent Fox Schiff on behalf of Defendants Newell Brands and Graco Products. And I am the only one appearing today on behalf of Defendants.

THE COURT: Okay. So let's start by revisiting the issue of the notice because I did receive from the parties, I guess, the revised notice that narrows down the issue to, I

think, just the plaintiffs' -- well, Defendants' desire to have a sentence included in a couple of places that states there is no claim that Nuk orthodontic pacifiers caused any physical injuries or posed a safety hazard to children, and the plaintiffs do not want to have that statement.

At the in-court hearing where we discussed the notice in great detail, I believe Plaintiffs raised the concern that they may, in fact, have some witnesses and there may be even a class representative who does claim that they suffered physical injuries as a result of using the pacifier. And I think that was one of the main reasons given for why Plaintiffs were uncomfortable with language along the lines of what I just read.

Is that the gist of the plaintiffs' current objection, or in the course of your discussions with defense counsel, have there been other issues that have come up?

MS. WEINER: Hi, Judge. This is Melissa Weiner. I'm happy to speak about the notice.

I think Your Honor summarized it quite well. We, one, have allegations in the complaint that the reason that the orthodontic language is false and misleading to the reasonable consumer is because it has the propensity to, one, not only not promote healthy oral development but actually cause dental malocclusions.

Now, this is a case -- and we added the sentence

before. We spared Your Honor from all of the back and forth and red lining and we tried to submit this in a succinct way.

THE COURT: Thank you.

MS. WEINER: But we did work really hard and we tried to come to agreement. We did add the sentence before that says, "Plaintiffs are seeking recovery for alleged advertising-related economic losses" to make it very clear because we did hear Your Honor at the last conference, your concerns that we want to make sure we say what this case is about. And we think that that sentence, that it is advertising-related economic losses and not personal injuries, if you will, but using that language or discussing physical injuries, one, we didn't feel comfortable putting that in the notice which, you know, could potentially be used at some point during the course of trial submissions when this case really is about advertising injuries related to a failure to either tell people that this causes injuries or affirmatively suggest that it will help or prevent physical injury.

So we don't think that language is accurate, and we think that it's confusing and it could mislead consumers which is obviously not the purpose of the notice.

So we tried again. That sentence that comes immediately before was the result of a compromise, and we had suggested that. We think that does the trick and that the next sentence is it's our case, there is no claim. We think that is

actually not entirely accurate, so we don't think that sentence is necessary nor clear.

THE COURT: And let me hear then from defense counsel.

Given that there is now a sentence before that saying Plaintiffs are seeking recovery for alleged advertising-related economic losses, why do you feel that the notice should go further and include the additional sentence?

MR. ALI: Sure, Your Honor.

And just going back to give you a little bit of history on this, so this was an issue during discovery early in the case where we sought Plaintiffs' dental records. And Plaintiffs objected and didn't provide any records and said this case isn't about actual injuries that Plaintiffs sustained; it's only about the advertising, and there's no claims based on the record actual physical injury, there's no damages that are being sought based on personal injuries.

And, more importantly, for notice going out, whether or not there were supposed malocclusions suffered from the public based on use of the pacifiers is completely irrelevant. It doesn't matter. The only thing that matters is whether the potential class purchased these pacifiers.

And Your Honor recognized during the last status hearing that we need to be very clear with the public on what this case is about and also what it's not about. And when you use terms like "alleged advertising-related economic losses,"

that may make perfect sense for Your Honor, it may make perfect sense for counsel on the call, but to the public, they need to understand that, you know, "Hey, I think my child had a malocclusion," just like Counsel is saying now about one of their named plaintiffs, that "We suffered a malocclusion because we used this pacifier for several months" or whatever the case may be, well, that's not what this case is about. You're not going to recover any money because of that fact. It's whether you purchased the pacifier. It's as simple as that.

And we just want to make clear to the public that this isn't about whether something happened to your child's teeth, this isn't about choking, this isn't about, like, toxicity from the pacifiers, that this is -- and we want to make sure that that is abundantly clear.

And Your Honor had also recognized that during the last status hearing and recommended that we include a statement that specifically calls out physical injuries, and we want to make sure that safety hazard is also addressed as well.

THE COURT: What if -- well, I don't know that this addresses the last point that Mr. Ali was making; however, my initial thought on this had been perhaps a slight tweaking of the preceding sentence in the long-form notice to state: "Plaintiffs are seeking recovery only for alleged advertising-related economic losses. Defendants contend that

the labeling," et cetera, et cetera.

Perhaps that addition of the short word "only" to make clear that this is an action with a limited scope without raising the specter of physical injuries or safety hazards one way or the other might provide a middle ground. And I appreciate that that might not address the latter concern raised by defense counsel, but I'm curious whether it might, Mr. Ali.

MR. ALI: That's something we can certainly take back to our client, Your Honor. You know, I think, you know, the response that we're going to get is "We want an affirmative statement regarding physical injuries and safety." That's very important to the client that it's out there that this isn't about some type of physical injury or safety risk from use of the pacifier.

THE COURT: Let me go back to the plaintiffs' side then just very briefly.

Is it accurate to say Plaintiffs are not seeking to recover in this case for any claim based on physical injuries or a safety hazard to children?

MS. WEINER: So I don't want to be a broken record, Your Honor, but -- and we actually did discuss with defense counsel a proposal, if they would agree that we would consider language to this end if they would agree to stipulate that this in no way would limit our ability to bring in evidence later.

There was not an appetite to discuss any sort of limitation to that end at this juncture.

Again, there is evidence by way of allegations in the complaint and through our scientific medical expert that these pacifiers are not safe for at least certain ages of children to use and/or for prolonged use.

So I understand we're talking, like, layman's person understanding of language, but we think "safety hazard" has the ability to mislead in the wrong direction. And it is important that we get the message out, yes, that this is seeking economic losses and we aren't -- you know, what we are seeking damages for, advertising injury, we think is really clear. And then we don't have to go down the slippery slope of what is a physical injury.

We are not -- we can sit here on this call in the same way that Mr. Ali just described and say, "No, we're not seeking money for medical bills," but when we put that in one sentence in a notice, people could have children who ended up with the issues that we've described in our complaint that related to dental malocclusions because they thought they were buying an orthodontic pacifier. And that might make them upset enough that they want to get their money back.

So we think it's still confusing and misleading and frankly not necessary given the sentence that immediately proceeds.

I think Your Honor's suggestion of "only" is helpful.

We also at some point just want to get -- I think we had a deadline by which we just want to be able to issue the notice because the more time that we lose, the longer this gets away from the class period is prejudicial to the plaintiffs.

THE COURT: So I take it you don't have any objection to introducing the word "only," "Plaintiffs are seeking recovery only for alleged advertising-related economic losses"?

MS. KELLER: We do not.

And again, I understand the defendants' interest in the notice, but we have a certified class, and we are giving notice of what is certified, and I think introducing the word "only" does put a bound around what it is seeking. And we think that that addition I do like, Your Honor.

MR. ALI: Your Honor, if I may --

THE COURT: I'm sorry. I think I may have lost -- is Plaintiff saying yes, that addition is okay or no, that addition is not okay?

MS. KELLER: Yes, yes, and I think it is a helpful addition.

THE COURT: Okay. Mr. Ali?

MR. ALI: Yes, I think what you said is really helpful, and I think it's something our client would probably agree to as well with the second sentence.

I understand what Plaintiffs are saying, you know,

where, you know, that the case, you know, includes allegations involving, you know, alleged malocclusions. And, you know, there's some gray area whether that's considered a physical injury or not.

And then safety hazard, I think Plaintiffs dropped their omission claim which was related to a safety hazard, so I think that's completely out of the case, but I understand there's some gray area there. When we're saying "safety," we're talking about toxicity or choking. That's not part of the case.

If you're going to extend the scope of the word "safety" to include malocclusions, then I understand we're getting into, like, a gray area. But I did like what Your Honor said with the second sentence, instead of saying there's no claim, instead of saying that Plaintiffs are not seeking to recover -- you know, are not seeking recovery for any alleged physical injuries or safety hazard to children. I think that's something our client would probably agree to, and then hopefully that addresses Plaintiffs' concern that even though that's an allegation in the case, that's something that they're not seeking recovery for.

THE COURT: I think what I heard from Ms. Weiner a moment ago is they would still object.

MS. WEINER: Sorry. Yes, Your Honor.

I think we may be cross-wired here. I think the

addition of "only" is a good addition that puts specific bounds around this is only advertising-related losses.

The second sentence, I lost where Mr. Ali was going. We did not agree to something related to the second sentence, and I'm not exactly sure where --

THE COURT: I understand.

So while I certainly would prefer to have agreement from the parties on the language of the notice, sometimes that's just not possible. And that may not be possible with respect to this last bit, so I'm just going to make a ruling on what I think is appropriate and necessary for class members.

I am not going to require the notice to include the language that there is no claim that Nuk orthodontic pacifiers caused any physical injuries or posed a safety hazard to children. That will be left out of the notice.

I am going to direct that the parties add the word "only." And you may place it either after the word "recovery," "Plaintiffs are seeking recovery only for alleged advertising economic losses," or you may place it at the end of the sentence: "Plaintiffs are seeking recovery for alleged advertising-related economic losses only."

I think "seeking recovery only," placing it in the middle of the sentence, is probably better for layperson understanding, honestly, so I'm going to suggest that it go there. I think that strikes an appropriate balance here.

I am worried about trying to use the notice as, you know, getting into evidentiary issues or what might be appropriate for motion in limine practice, what the scope of the trial is actually going to be.

I think the main thing is just for class members to understand that this is a case that is limited in scope to advertising-related economic losses and that whether it's physical injuries or other types of injuries that somebody might want to bring a different lawsuit about, you know, that's not going to be covered here.

While I appreciate the defendants' concern about people getting the wrong impression here, there's only so much that can be done before it crosses a line between being informative to being more argumentative or more of an advocacy or getting to the merits of the case one way or the other.

I think specifying that Plaintiffs are seeking recovery only for alleged advertising-related economic losses and then the following sentence making clear that the defendants disagree with the plaintiffs' view of the advertising that's on the box, which is how this is phrased, is appropriate here. So, with respect to the class notice, that's going to be my ruling.

For the proposed class notice that was sent in February, I think there are two places on the longer form and the short form where the contested language appears. That will

be omitted, and the language before will have the word "only" added in to try to be clear that this is a limited-in-scope case as to the merits.

And with that, I believe the plan for notice is otherwise acceptable to the Court and may proceed.

Are there any questions from the plaintiffs' side?

MS. WEINER: None for Plaintiffs, Your Honor.

THE COURT: Okay. From the defense?

MR. ALI: Thank you, Your Honor. I think we're clear on the notice.

During the last status, we were still discussing, you know, email versus hard mail and how the notice was going to go out. I don't think we have resolution on that.

And then the second issue that we discussed during the last status was the website itself. We have not seen a draft of the website yet.

THE COURT: So, on the email notice, I think where we left it is that the administrator who's experienced in these areas had made the case for why the mailed notice would be the best way, I believe, to go forward.

I think there was concern that it just would not be feasible to do it through email. Perhaps Counsel can remind me about the concern regarding email notice. I guess we had discussed the fact that there had been other cases where the administrator had done a hybrid approach.

MS. WEINER: Your Honor, this is Melissa Weiner.

That is my recollection of the discussion as well, and we think it makes sense to leave it as is.

As to the website, I believe what I had stated at the hearing is that the website hasn't been constructed yet because we didn't have the green light, and now the website will be essentially verbatim the long-form notice.

And if there are FAQs and things that are born of the long-form notice, it will go to counsel for both parties to just ensure its accuracy with the notice, and there will just be approval.

That's typically the way we do this even in the settlement context, that if there's anything additional, it will look as these things typically do, and Mr. Ali will get to review it and approve it. I'd hope we wouldn't have any issues to bring to the Court now that we have the long-form notice approved.

THE COURT: And I think the agreement was that the mock up of the website would be available for defense counsel to review before it goes live, correct?

MS. WEINER: Yes, of course.

MR. ALI: And that's before the notice goes out as well, correct?

We don't want the notice going out and we haven't seen the website yet.

MS. WEINER: Of course. The website -- we'll get a draft of the website before the notice goes "out." And everything related to the notice, all of the ads and things that go out to the media universe, will drive everybody back to the website so we can't commence the "notice program" without having the website finalized. So it's a necessary step in the process.

MR. ALI: Okay. Understood.

THE COURT: Okay. I'm going to ask Counsel to give me just a moment. My computer is moving slowly.

(Brief pause.)

THE COURT: Okay. So regarding the sort of plan for class notice, you know, I had asked some questions about the approach that was laid out in connection with the motion. I believe both sides in the case were supportive or at least not objecting to what's been proposed.

And notwithstanding the questions that I had, I think the goal here is not to have perfect notice, but we're looking for more of what's the best possible notice that we can do here and what's going to comport with the requirements of Rule 23 as well as due process issues. And I'm satisfied enough, I think, that the class notice program that's been proposed by Epiq will get us, you know, an appropriate result here in enabling class members to get the information and then to be able to, you know, also respond effectively.

And I appreciate the points that were made about -- I think it was described as fraud prevention and the concerns that are raised there. So I think I give weight to the experience and expertise of our administrator here and will go ahead and approve the class notice program as it has been proposed, obviously with the modified notice itself.

So I think that addresses the notice issue, the email, and the website.

Were there other particular issues that the parties wanted to address this morning or any other open items from the last hearing that you wanted to make sure were addressed?

MR. ABBARNO: Your Honor, from Plaintiffs, this is Ken Abbarno.

Just to make sure we know what your pace and cadence will be with various filings leading up to trial, jury instructions and the like, I didn't know if you would put an order out to that effect. We had filed our joint request, but I just wanted to see what your preference was going to be as these additional dates kind of fall into our laps.

THE COURT: Yes. So I will be frank with the parties that I do have some lingering concerns about the November 30th trial date that we penciled in at the last hearing and whether it is going to be feasible to accomplish everything that the trial is going to require. And I mean not the prep because we're plenty of months out but during the trial itself because

we need to break for the end of the year.

And I think we had just touched on this at the last hearing, that in the status report, the parties had estimated no more than 40 hours per side excluding voir dire and jury selection which I think, for a case of this nature, I would probably allow an additional two days for jury selection. And then you have to add an extra day on the end for jury deliberations, perhaps more. And so I wanted to kind of circle back to that issue.

I think there was some discussion at the last hearing that perhaps the parties didn't really think that this was going to be a 16-to-17-day trial excluding jury selection and jury deliberations. So before we get all of our interim dates firm on the calendar which I would like to do, I wanted to come back to that issue and to see what your current thinking is.

Is it the 40 hours per side that was suggested in the status report, or do you think actually something a little bit less than that?

MR. ABBARNO: From the plaintiffs' perspective, we believe it would be less than that. We're continuing to hone in on making it a shorter trial, so we don't believe it would be 40. I'd like to say we can get this case done in two weeks.

And from knowing what you had said about how much time we're getting in trial each day, that may, at least from the plaintiffs' side -- I don't know what defense believes, but it

made us from our side be optimistic about being able to get the evidence in in two weeks collectively.

THE COURT: Ms. Weiner, is this an issue for you or someone else?

MS. WEINER: Your Honor, I think that was Ken Abbarno, my colleague.

THE COURT: Sorry. My apologies. So, Mr. Ali then.

MR. ABBARNO: I'm sorry. I should have announced.

MR. ALI: Yes, Your Honor, I do think that we can shorten what we had approximated before. Obviously, it would depend on who all Plaintiffs call in their case, but I think we can probably get it done in two weeks.

THE COURT: Okay. So, with that timeline -- and, to be clear, that's 10 trial days.

Again, I do think sometimes in trial planning, we all forget that the jurors need time to deliberate as well. And, in a case where they're going to be sifting through expert testimony and some complicated issues, it may just take a little while, so I would want to make sure that we allow time on the front end and the back end.

If the parties are saying that this is a 10-trial-day case, allowing a couple of days for jury selection and a couple of days for deliberations, we're still sufficiently ahead of the week of Christmas that I'm okay with that. So, with that in mind; however, I may be inclined to set some time limits for

testimony or something along those lines to help focus the parties.

Here's what I'll do. Based on the November 30th trial date and the parties' proposed schedule from the status report, I'd like to have a scheduling order. And I'm going to ask the parties to use your proposed timeline and to put together a proposed order to email to the proposed order email box putting dates for the event that you have identified.

I will take that proposal. I might make some adjustments based on timing of a final pretrial conference. I think, as I indicated to the parties last time, I would be inclined to have a bit of a two-part pretrial conference, one about where the parties have set it that would also be a hearing on motions in limine but also a second final, final pretrial conference a little bit closer to trial to deal with lingering issues and logistical matters.

But if the parties put together a draft proposed scheduling order keyed off of jury selection, I think the parties had suggested maybe to start December 1st which may be okay, but assume that you would likely have to be at the courthouse November 30th if not for jury selection, for final trial prep.

So would the parties be able to submit a proposed pretrial scheduling order by the end of the week?

Email it in to the proposed order email box, and we

can get that pulled together on the docket.

MR. ABBARNO: This is Ken Abbarno for the plaintiffs.

I believe we can, yes.

MR. ALI: Yes, Your Honor, we can do that.

THE COURT: The deadline that the parties proposed by which class notice would need to go out was 150 days before trial. With the November 30th date, that would place the deadline at the beginning of July, I believe; however, I think the intent was to get the notice pulled together well in advance of that latest date.

Am I recalling that correctly?

MS. WEINER: Your Honor, this is Melissa Weiner.

That is correct. And when we receive the Court's final order with the notice -- I've already made the notes that Your Honor said will be forthcoming in the order -- I will reach out to Epiq and get the ball rolling on the website construction and draft so that we can be well ahead of that July deadline.

THE COURT: How long do you expect it will take to construct the website?

MS. WEINER: Just based on my experience in other cases, I can't imagine that if I were to email them tomorrow they would probably get me a draft of the website -- this is very basic because we don't have claim submissions and dropdowns and all sorts of things like we would have on a

judgment or a settlement, so I can't imagine it would take more than a week to get a draft.

THE COURT: Okay. And then is the intention to provide that to defense counsel -- let's say we add a week or two to get everything finalized. And then it's going to go live potentially within a month?

MS. WEINER: Yes. When Mr. Ali and I were discussing the overall timeline, I recall from the date that the website is finalized, I think that Epiq needs a couple of weeks to get all of the ads and things ready to go. I think they need just a couple of weeks, and then the ads will commence. So I think that should be right.

We have spring break and some things coming up in the next couple of weeks. I can't imagine it will take extraordinarily key personnel completely out of play here, but I can't imagine that we would need, if the order is issued this week, more than 30 to 45 days to get the whole thing including the website draft, revisions, the website up and running and the notice to commence. I think it was something like from the date of the order, I think we needed something like 45 days. Again, I don't envision any significant hurdles with the website draft and agreement.

THE COURT: Okay. Does that all sound reasonable to you, Mr. Ali?

MR. ALI: Yes, it does. I was just looking at my

calendar, though. For the proposed order, depending on when we get it, if we could have until maybe the 18th, middle of next week, to get back instead of the end of this week, that would be helpful for me.

THE COURT: That's fine. And I would ask you to send it to the proposed order email box and cc Laritza Arcos' individual email as well. That will make sure that it gets to me as quickly as possible so that we can get that addressed.

On my end, in the meantime, I think once we see how all these other dates fall in line, we'll propose, as I said, a date for a final pretrial conference for motion in limine and other arguments, so the substantive hearing and then the procedural hearing. And I'll ask Laritza to email the parties with those proposed dates before we set them on the calendar to make sure that everybody's available then.

I think, in the short term, the next thing I'd like from the parties is a status report probably in about 60 days to confirm that the website is up, the status of the class notice program and any other developments -- I don't know that we need to have a hearing in the short term.

I will be most interested in having a chance -- I may set a separate hearing apart from the final pretrial conference once the parties have worked on your proposed jury instructions. It may be that I set a separate time because I think this is a case where I'd like to try to get the jury

instructions in a good, solid draft form a little earlier in the process than I might for some other cases.

So just a heads up that there may be a preliminary hearing to discuss jury instructions that I might set apart from our discussion on motions in limine and then the final hearing. But, for present purposes, I think a 60-day written status report which at this point will largely focus on the status of the class notice program will be our next status date. And that would take us to -- just to make it easy, I'll say May 11th for that written status report.

What else for today? From the plaintiffs' side?

MS. WEINER: This is Melissa Weiner.

Nothing further, Your Honor, from me. I'll let Mr. Abbarno speak up as to any trial issues.

MR. ABBARNO: This is Ken Abbarno.

Nothing else on the trial side. Thank you, Your Honor.

MR. ALI: This is Mir Ali.

Nothing else from Defendants. Thank you, Your Honor.

THE COURT: Okay. Good.

Thank you, Counsel, and I'll look forward to getting the scheduling order so that we can get solid dates in consistent with your proposal. Have a great day.

MS. WEINER: Thanks, Your Honor.

MR. ALI: Thank you.

(Concluded at 11:31 a.m.)

* * * * * *

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ Brenda S. Varney* April 28, 2026
Brenda S. Varney, CSR, RDR, CRR
Official Court Reporter